UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 22-CR-20191-KMW

UNITED STATES OF AMERICA


        vs.

ANDREW ALTURO FAHIE

_____

HEARING HELD 1-8-2024
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE
_____

APPEARANCES:

FOR THE UNITED STATES:     **Kevin Gerarde, A.U.S.A.**
                           **Sean McLaughlin, A.U.S.A.**


FOR THE DEFENDANT:         Theresa M. Van Vliet, ESQ.
                           **Joyce Delgado, ESQ.**


REPORTED BY:               PATRICIA SANDERS, RPR
                           United States Court Reporter
                           400 North Miami Avenue, Suite 11-3
                           Miami, FL  33128
                           T: 305.523.5528
                           Patricia_sanders@flsd.uscourts.gov.

```
 1              THE COURTROOM DEPUTY: Calling Case No. 22-CR-20191;
 2   United States of America versus Andrew Alturo Fahie.
 3              Counsel, please state your appearances.
 4         MR. GERARDE:  Good morning, Your Honor, Kevin
 5   Gerarde along with Sean McLaughlin on behalf of the
 6   Government.
 7              Present at Counsel's table is DEA Special Agent
 8   Brian Witek.
 9         MS. VAN VLIET:  Good morning, Your Honor, Theresa
10   Van Vliet and Joyce Delgado on behalf of the defendant Andrew
11   Fahie; who is present in court.
12         THE COURT:  Good morning, counsel.
13         Good morning, Mr. Fahie.
14          THE defendant:  Good morning, Your Honor.
15         THE COURT:  Everyone may be seated.  All right.  We
16   are here today to address the outstanding issues -- those that
17   remain -- before we begin trial.
18              As I understand it, Mr. Gerarde, you have the expert
19   from the UK standing by on Zoom.
20         MR. GERARDE:  Your Honor, I spoke with Ms. Van Vliet
21   before we came in.  I think we're in agreement that we will try
22   to come to an agreement amongst ourselves as to any expert
23   testimony -- in terms of it being presented -- and asking the
24   Court to make the final decision.
25
```

```
1              THE COURT:  Ms. Van Vliet.

2              MS. VAN VLIET:  That is correct -- mostly correct --

3    since we did not get Ms. Hollis' summary until yesterday

4    afternoon I have been unable to meaningfully consult with the

5    two experts that we're hoping to retain.

6              THE COURT:  Okay.

7              MS. VAN VLIET:  They may well agree with much or all

8    of what she says; in which case it would assist in moving

9    things along.

10             And so with that being said, Judge, I do not believe

11   that we need to hear from Ms. Hollis today.

12             THE COURT:  All right.

13             MS. VAN VLIET:  Just for the record, though, I am not

14   waiving any previously made objections as to the timeliness of

15   or the sufficiency of the notice.

16             THE COURT:   Of course. Is it okay then for Ms.

17   Hollis to leave the Zoom?

18             MS. VAN VLIET:  Yes, Your Honor.

19             MR. GERARDE:  Government agrees.

20             THE COURT:  Good morning, Ms. Hollis, this is Judge

21   Williams; and we've been talking for a few moments about

22   whether it would be necessary for you to participate in the

23   hearing today.  The consensus of the lawyers is no.

24             MS. HOLLIS:  Oh, okay.

25
```

4

```
 1          THE COURT:  Your summary has been provided to Mr.
 2   Fahie's counsel, but they need time to digest and review its
 3   content.  So we may be asking you in the next two weeks to make
 4   yourself available.
 5          Mr. Gerarde or Mr. McLaughlin will coordinate that with
 6   you; but for today you are excused, and you may go about your
 7   business. We appreciate your making yourself available to us
 8   here today.
 9          MS. HOLLIS:  Thank you very much, Your Honor.  I
10   appreciate that.  And I will be available as long as I have,
11   let's say, 24 hours' notice.
12          THE COURT:  Thank you so much.  Have a good day.
13          MS. HOLLIS:  Thank you.
14          THE COURT:  All right.  So, let's begin with the
15   production.  Where are we on the phone data?  Have you been
16   provided, Ms. Van Vliet, with the rest of the phone data? Is
17   there anything that is outstanding?
18          MS. VAN VLIET:  Let me say this -- Mr. Gerarde and
19   Mr. McLaughlin have been as helpful as humanly possible in
20   terms of accelerating things -- but there have been, frankly,
21   these software issues.
22          We are still in the process of reviewing it, but I am
23   not really worried about being able to be in a position to go
24   forward on the 22nd.
25
```

```
 1              THE COURT:  Okay.

 2              MS. VAN VLIET:  If some additional software glitch

 3     comes up -- because we did lose about a day and a half dealing

 4     with those -- then I will raise my hand right away to alert

 5     Your Honor and the Government.

 6              THE COURT:  And Mr. Gerarde, Mr. McLaughlin, no more

 7     data is coming?

 8              MR. GERARDE:  That's correct, Judge.

 9              THE COURT:  All right.  Then we can check that off.

10     There have been numerous motions in limine filed, but I think

11     that there are at least two which I can take care of because

12     Ms. Van Vliet had indicated that she and Ms. Delgado have no

13     intention of adducing this evidence.

14              So the first is Docket Entry 160; the United States'

15     motion to preclude defendant Fahie from admitting his own

16     exculpatory hearsay statements.

17              I'll deny that as moot in that the Defense has

18     indicated they are not endeavoring to admit any post-arrest

19     statements made by Mr. Fahie.

20              Then there's the motion in limine as to Mr. Fahie not

21     raising an entrapment defense.  Ms. Van Vliet says she doesn't

22     intend to raise that; and so I am denying that as well.

23              All right. The Government has filed a motion to

24     preclude cross-examination into sensitive investigative

25     techniques.
```

1          I want to be clear on what this does and does not

2    address.  So the Government does not feel it appropriate that

3    the Defense asks about the particular technology  used.

4          So you used X recording device that is run off of Y

5    platform, and it's something that law enforcement uses, and so

6    you do not want to make known to the world -- the actual

7    technological proprietary as it were -- you don't feel that is

8    an appropriate area of inquiry, is that basically the United

9    States' position?

10          MR. GERARDE:  Yes, Your Honor.  So it is as to the

11    technological and the proprietary aspect as well as the -- like

12    the physical appearance and what it looks like -- and where it

13    was hidden or where it was concealed on the person.

14          That is what we're seeking to preclude.  I believe

15    Ms. Van Vliet has said that she doesn't intend to inquire on

16    any of those issues.

17          THE COURT:  I will deny that as moot as well.

18          All right.  There is the motion in limine as to the

19    admission of the co-conspirator's statements -- and I don't

20    have the docket entry handy -- but at least one of the

21    co-conspirators will be testifying and admitting that is my

22    voice and that is Mr. Fahie's voice.

23          So, Mr. Gerarde.

24          MR. GERARDE:  So, Your Honor, it's the substance of

25    the recordings where Ms. Maynard will be testifying.

7

1          Where she will be identifying her voice as well as

2     Mr. Fahie's voice.  She's also going to be identifying her

3     son's voice, Kadeem Maynard's voice.

4          The Government does not intend to call Kadeem

5     Maynard -- so this motion focuses more on his statements made

6     during the conspiracy -- and those statements made through the

7     audio recordings as well as through text messages that we will

8     be presenting.

9          And so the Government will authenticate the messages

10    through a chain of custody of the devices -- as well as the

11    testimony -- about the extraction of the messages from that

12    device.  And then they will be put into context through the

13    testimony of Ms. Maynard.

14          THE COURT:  Okay.

15          MR. GERARDE:  I left out one part.  So the

16    co-conspirator statements are the recordings, the text

17    messages, but then also any conversations that Ms. Maynard had

18    with her son that were not in the text messages or the

19    recordings or with the defendant.

20          And so the Government's position is that because Ms.

21    Maynard personally had these conversations with co-conspirators

22    and this was during the conspiracy -- so those statements made

23    by Kadeem or by the defendant are admissible as co-conspirator

24    statements or in the context of the defendant a statement by a

25    party opponent.

1

2          THE COURT:  Well, that might be -- and it's certainly

3    something that will be resolved at trial -- so I am going to

4    reserve on that for the time being.

5          MS. VAN VLIET:  May I just raise one thing on the

6    exculpatory statement motion.

7          THE COURT:   Yes.

8          MS. VAN VLIET:  Understanding the Court denied the

9    portion of the motion that dealt with post-arrest statements by

10   Mr. Fahie -- and we are not intending to introduce them -- but

11   there is an issue that I think the Court is going to need to

12   address.

13         In the flurry of motions filed -- there was a request

14   from the Government to exclude statements made by an individual

15   with the initials, RS, whose name is Roxanne Sylvester.

16         You will hear about her on the tape. You will hear

17   that Mr. Fahie told Ms. Sylvester to advise Ms. Maynard that he

18   was going to have the money that was flashed -- the $700,000 --

19   flashed in Miami, which was to be brought down to Tortola in

20   the custody of Ms. Maynard and Ms. Sylvester.

21         And that he, Mr. Fahie, was instructing that that

22   money be seized and that the CS be arrested upon return to

23   Tortola.  The Government seeks to exclude that. I am happy to

24   make a proffer in camera about why it's relevant or let it play

25   out for the Court.

1          But our theory of admissibility is not so much for

2    the truth of the matter asserted -- because obviously the money

3    isn't going to be seized -- first of all, there was no money.

4    They'd never left Miami, so it wasn't going to be seized in

5    Tortola, nor was the CS going to be arrested.

6          It goes rather to the fact that that statement was

7    made.  And, again, I am happy to discuss it further ex-parte

8    with the Court.

9          But that's one of those things I think you need to

10   reserve ruling on until you hear a little bit more about how it

11   is -- the evidence starts to play out in the case from the

12   first set of recordings forward to the end.

13          THE COURT:  All right. If you would like to submit an

14   ex parte, two-page proffer, as to why you believe that is

15   appropriate then I think you should do that this week; so I at

16   least have a preview of what's to come.

17          MS. VAN VLIET:  Thank you, Your Honor.

18          THE COURT:  All right.  We're going to take up the

19   matter of the Government's intention to call Agent Witek as an

20   expert at trial.

21          So, for this limited purpose, the identity of the CI

22   -- not the name but the fact of the CI -- needs to be revealed

23   to Ms. Van Vliet for purposes of cross-examination.

24          You are putting the agent on the stand, not only as a

25   case agent but as an expert in international narco-trafficking.

```
 1              So his credibility is at issue, and it's certainly a
 2      matter that I think is appropriate for cross, but I thought I
 3      would give you a heads- up before I made the ruling in open
 4      court.
 5              MR. GERARDE:  Your Honor, after consulting with my
 6      co-counsel, we are going to withdraw our notice of Special
 7      Agent Witek as an expert.  We will not seek to present him as
 8      an expert at trial, and we are not going to present any
 9      substitute witness of that same nature of expert testimony at
10      trial.
11              THE COURT:  All right.
12              MS. VAN VLIET:  Is Special Agent Witek still going to
13      be called at trial?
14              MR. GERARDE:  Yes, just not as an expert witness.
15              THE COURT:  Right.  I still must evaluate whether or
16      not the matter is appropriate or not in terms of the CI's
17      credibility.
18              MS. VAN VLIET:  I believe that you do, Your Honor.
19              THE COURT:  Obviously as to the matter that you have
20      pointed out in your pleadings about the CI -- I have denied and
21      I will continue to deny the Defendant's request with regard to
22      dismissing the indictment -- because the CI was never revealed
23      and/or if it was this person's past transgressions were not
24      revealed.
25
```

1          And so in your motion, you pointed out that during

2     the bond hearing, Special Agent Witek essentially said, I have

3     no reason to think that this person is not credible.   And I

4     took that up with the Government because I was concerned about

5     that; depending on who the CI was.

6          And I was given -- without going into detail -- I was

7     given a proffer that Agent Witek was unaware of any foreign

8     findings about a certain person and therefore his testimony was

9     not perjury or false, it was mistaken, and so there you go.

10          And so when I learned that he would be an expert in

11     narco trafficking, I thought, well, okay, that takes this to a

12     different dimension.

13          However, if the special agent is not going to testify

14     about the CI, then I don't know that this area is appropriate

15     on cross.

16          So let me ask you, Mr. Gerarde, he is not going to be

17     testifying about the CI, is he?

18          MR. GERARDE:  So, Your Honor, the scope of the

19     testimony that we anticipate eliciting from Special Agent Witek

20     or Special Agent Aschleman, who were the co-case agents in the

21     case, is the following:

22          The testimony from Special Agent Witek will be

23     elicited to lay the chain of custody and authentication of the

24     recordings that the informant made.

25

1          And so I expect there will be testimony that Special

2  Agent Witek has used the particular recording device with this

3  particular informant in the past, and that the informant knows

4  how to operate the recording device correctly.

5          THE COURT:  Okay.

6          MR. GERARDE:  And so I think that will touch on the

7  informant.  Separate from authenticating the recordings and the

8  chain of custody of any evidence, we expect to ask the case

9  agents why they took certain steps in this investigation; and

10 that's because of the nature of the case.

11         This is a sting operation where the agents are

12 essentially driving the boat and they make certain decisions

13 through the case based on what happens in a particular meeting.

14 So in this case, the first meeting with Ms. Maynard was on

15 March 20th, 2022.

16         And Ms. Maynard said she would talk to the defendant

17 and then she did that two days later and called back the

18 informant and said, I talked to him, he's very interested.  And

19 then the agents directed the case towards setting up a meeting.

20         And there were some back and forth discussions

21 between the informant and Ms. Maynard and her son.  There was a

22 phone call between the informant and Ms. Maynard and her son

23 and the defendant on April 1.

24         And at that time, they all decided that April 7th

25 would be the date for an in-person meeting.

1          So basically a week later.  That meeting would be in

2   Tortola.  And so the case agents -- they get this information

3   and then they decide to continue to pursue the investigation in

4   a particular manner.

5          And so that's just a preview of the testimony that we

6   expect to get from the case agents; why they chose to do or why

7   they took the path that they took in this case in directing the

8   investigation.

9          And I think that's also important to show that the

10  informant was not unilaterally making these decisions about

11  when he was going to meet with these people and how he was

12  going to meet with them.  We're going to show that it was the

13  case agents who were directing the case.

14          THE COURT:  Ms. Van Vliet.

15          MS. VAN VLIET:  So, I do have one additional issue,

16  Judge -- and, look, I take no joy in raising these issues

17  regarding Special Agent Witek.

18          But I am advised that he and the other co-case agent

19  were the case agents in the case of United States v. Lampeck,

20  which was a case -- it was in 2018 -- and I am not sure the

21  Judge it was before.

22          This is in one of my filings -- I have not been able

23  to log onto the Court's wifi this morning and so I was not able

24  to locate it.

25

```
 1              However, there was a proceeding where this very CS's

 2     past was described in a public filing, which I believe included

 3     his name.  And also the fact that he had been found to lack

 4     credibility in open court -- in a court proceeding -- and so

 5     that is an issue because they were the case agents in that

 6     case.

 7              I am having a hard time understanding how -- if that

 8     was in a public filing in their case in 2018 -- how that was

 9     not made aware --- how that was not at least communicated to

10     the Assistant United States Attorney in that case.

11              THE COURT:  Well, that's a problem, Mr. Gerarde; it

12     really is.

13              MR. GERARDE:  And, Judge, the Government would like

14     the opportunity to be able to present its case agents in camera

15     for whatever query you believe is necessary -- should the Court

16     desire.

17              I would also like to provide the submission that Ms.

18     Van Vliet is referencing in the Lampeck case -- which was a

19     sentencing memorandum -- just to give a full context for what

20     the agents were aware of and what was contained in the public

21     filing.

22              THE COURT:  All right.

23              MR. GERARDE:  I just don't want to jump to any

24     conclusions until we have the full picture.

25
```

1          THE COURT:  All right.  I will give you a chance to

2    supplement.  But I have a letter and I have another submission

3    by the United States, which I thought was pretty clear, and so

4    if it is unclear then I would like that addressed within the

5    next -- today is Monday -- so let's say by end of the day on

6    Wednesday.

7          This seems to be a never-ending issue, which I would

8    like to put it to rest once and for all.

9          MR. GERARDE:  We would as well, Judge,

10         THE COURT:  All right. Let's talk about timing.  The

11   Government has potentially seven witnesses.  Do you still think

12   it is going to go most of two weeks?

13         MR. GERARDE:  Maybe a little less. I think that it

14   will go maybe into the second week -- halfway through the

15   second week.

16         MS. VAN VLIET:  That sounds about right.

17         THE COURT:  All right.  I reviewed both parties'

18   proposed voir dire.  And lot of what you have is covered by my

19   standard voir dire questions.

20         I believe that Mr. Santorufo sent the parties copies

21   of my standard questions so that you know in advance what I

22   will be asking the jurors.

23         As to the one topic that both sides have indicated

24   they want addressed, that is as to the use of a confidential

25   informant, I will pose the question in the following way:

1      I will say that this case involves a confidential

2  informant; is there anybody who has an issue with that, and if

3  so why?

4      And then if you all want to do some follow up you may

5  do so.  Is there anything else -- anything in particular --

6  either side believes the Court should take up with the

7  prospective jurors?

8      MR. GERARDE:  From the Government's perspective, we

9  also think it is important to get the juror's attitudes towards

10  the fact that this was a sting case.

11      The fact that the agents were the driving force

12  behind the case rather than the defendant already engaged in

13  some conspiracy that law enforcement caught wind of.  I think

14  that's important to get into.

15      THE COURT:  All right. Let me think about that one. I

16  am not inclined to go into that level of detail about the case

17  but let me think about it and I will let you know.

18      MS. VAN VLIET:  Your Honor, the only other area the

19  defense would ask the Court to maybe expound -- understanding

20  you question them about their experience with law enforcement

21  or having someone in their family who works for law enforcement

22  or with the Government -- in this case because of the nature of

23  Mr. Fahie's prior occupation as well as Ms. Maynard's prior

24  occupation this being sort of a multinational Governmental

25  involvement here.

1          I would just ask that you expand that to any foreign

2    country -- working or living in any foreign country -- because

3    let's face it, we have a pretty diverse community here.

4          THE COURT:  All right. I will formulate a question

5    that addresses that issue.

6          MS. VAN VLIET:  Thank you, Your Honor.

7          THE COURT:  All right. We are going to need to have a

8    charge conference at some point.  I am going to ask the parties

9    to speak to each other and get me one document to work off of

10   initially; and then if there are any proposed defense

11   instructions that can be provided to the Court separately.

12         MS. VAN VLIET: Yes, Your Honor.

13         MR. GERARDE: That's fine.

14         THE COURT:  All right. I believe that is all I wanted

15   to address -- let me take a look at my notes -- yes, I think I

16   have taken care of what I wanted to address today.

17         Is there anything further either side would like to

18   address before we recess?

19         MS. VAN VLIET:  No, Your Honor, not on behalf of the

20   defense.

21         MR. GERARDE:  Nothing further from the Government.

22         THE COURT:  All right.  Thank you all for being here.

23   Be on the lookout for an e-mail as to when we will get together

24   again to, hopefully, have our final discussion on these issues.

25                        HEARING CONCLUDED

```
1                          -   -   -

2                    C E R T I F I C A T E

3          I hereby certify that the foregoing is an accurate

4     transcription of proceedings in the above-entitled matter.

5

6                                    /S/PATRICIA SANDERS

7     _____                 _____

8     DATE FILED                 PATRICIA SANDERS, RPR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**$**

**$700,000** [1] - 8:18

**/**

**/S/PATRICIA** [1] - 18:6

**1**

**1** [1] - 12:23
**1-8-2024** [1] - 1:9
**11-3** [1] - 1:18
**160** [1] - 5:14

**2**

**2018** [2] - 13:20, 14:8
**2022** [1] - 12:15
**20th** [1] - 12:15
**22-CR-20191** [1] - 2:1
**22-CR-20191-KMW** [1]
 - 1:3
**22nd** [1] - 4:24
**24** [1] - 4:11

**3**

**305.523.5528** [1] -
 1:19
**33128** [1] - 1:18

**4**

**400** [1] - 1:18

**7**

**7th** [1] - 12:24

**A**

**A.U.S.A** [2] - 1:13,
 1:13
**able** [4] - 4:23, 13:22,
 13:23, 14:14
**above-entitled** [1] -
 18:4
**accelerating** [1] - 4:20
**accurate** [1] - 18:3
**actual** [1] - 6:6
**additional** [2] - 5:2,
 13:15
**address** [6] - 2:16,
 6:2, 8:12, 17:15,
 17:16, 17:18
**addressed** [2] - 15:4,
 15:24
**addresses** [1] - 17:5
**adducing** [1] - 5:13

**admissibility** [1] - 9:1
**admissible** [1] - 7:23
**admission** [1] - 6:19
**admit** [1] - 5:18
**admitting** [2] - 5:15,
 6:21
**advance** [1] - 15:21
**advise** [1] - 8:17
**advised** [1] - 13:18
**afternoon** [1] - 3:4
**agent** [4] - 9:24, 9:25,
 11:13, 13:18
**Agent** [11] - 2:7, 9:19,
 10:7, 10:12, 11:2,
 11:7, 11:19, 11:20,
 11:22, 12:2, 13:17
**agents** [12] - 11:20,
 12:9, 12:11, 12:19,
 13:2, 13:6, 13:13,
 13:19, 14:5, 14:14,
 14:20, 16:11
**agree** [1] - 3:7
**agreement** [2] - 2:21,
 2:22
**agrees** [1] - 3:19
**alert** [1] - 5:4
**Alturo** [1] - 2:2
**ALTURO** [1] - 1:6
**AMERICA** [1] - 1:4
**America** [1] - 2:2
**Andrew** [2] - 2:2, 2:10
**ANDREW** [1] - 1:6
**anticipate** [1] - 11:19
**appearance** [1] - 6:12
**appearances** [2] -
 1:12, 2:13
**appreciate** [2] - 4:7,
 4:10
**appropriate** [6] - 6:2,
 6:8, 9:15, 10:2,
 10:16, 11:14
**April** [2] - 12:23, 12:24
**area** [3] - 6:8, 11:14,
 16:18
**arrest** [2] - 5:18, 8:9
**arrested** [2] - 8:22, 9:5
**Aschleman** [1] - 11:20
**aspect** [1] - 6:11
**asserted** [1] - 9:2
**assist** [1] - 3:8
**Assistant** [1] - 14:10
**attitudes** [1] - 16:9
**Attorney** [1] - 14:10
**audio** [1] - 7:7
**authenticate** [1] - 7:9
**authenticating** [1] -
 12:7
**authentication** [1] -
 11:23

**available** [3] - 4:4, 4:7,
 4:10
**Avenue** [1] - 1:18
**aware** [2] - 14:9, 14:20

**B**

**based** [2] - 12:13
**begin** [2] - 2:17, 4:14
**behalf** [3] - 2:5, 2:10,
 17:19
**behind** [1] - 16:12
**believes** [1] - 16:6
**between** [2] - 12:21,
 12:22
**bit** [1] - 9:10
**boat** [1] - 12:12
**bond** [1] - 11:2
**Brian** [1] - 2:8
**brought** [1] - 8:19
**business** [1] - 4:7
**BY** [1] - 1:17

**C**

**camera** [2] - 8:24,
 14:14
**care** [2] - 5:11, 17:16
**case** [31] - 1:3, 3:8,
 9:11, 9:25, 11:20,
 11:21, 12:8, 12:10,
 12:13, 12:14, 12:19,
 13:2, 13:6, 13:7,
 13:13, 13:18, 13:19,
 13:20, 14:5, 14:6,
 14:8, 14:10, 14:14,
 14:18, 16:1, 16:10,
 16:12, 16:16, 16:22
**Case** [1] - 2:1
**caught** [1] - 16:13
**certain** [3] - 11:8,
 12:9, 12:12
**certainly** [2] - 8:2,
 10:1
**certify** [1] - 18:3
**chain** [3] - 7:10, 11:23,
 12:8
**chance** [1] - 15:1
**charge** [1] - 17:8
**check** [1] - 5:9
**chose** [1] - 13:6
**CI** [7] - 9:21, 9:22,
 10:20, 10:22, 11:5,
 11:14, 11:17
**CI's** [1] - 10:16
**clear** [2] - 6:1, 15:3
**co** [8] - 6:19, 6:21,
 7:16, 7:21, 7:23,
 10:6, 11:20, 13:18
**co-case** [2] - 11:20,

13:18
**co-conspirator** [2] -
 7:16, 7:23
**co-conspirator's** [1] -
 6:19
**co-conspirators** [2] -
 6:21, 7:21
**co-counsel** [1] - 10:6
**coming** [1] - 5:7
**communicated** [1] -
 14:9
**community** [1] - 17:3
**concealed** [1] - 6:13
**concerned** [1] - 11:4
**CONCLUDED** [1] -
 17:25
**conclusions** [1] -
 14:24
**conference** [1] - 17:8
**confidential** [2] -
 15:24, 16:1
**consensus** [1] - 3:23
**conspiracy** [3] - 7:6,
 7:22, 16:13
**conspirator** [2] - 7:16,
 7:23
**conspirator's** [1] -
 6:19
**conspirators** [1] -
 6:21, 7:21
**consult** [1] - 3:4
**consulting** [1] - 10:5
**contained** [1] - 14:20
**content** [1] - 4:3
**context** [3] - 7:12,
 7:24, 14:19
**continue** [2] - 10:21,
 13:3
**conversations** [2] -
 7:17, 7:21
**coordinate** [1] - 4:5
**copies** [1] - 15:20
**correct** [3] - 3:2, 5:8
**correctly** [1] - 12:4
**counsel** [4] - 2:3,
 2:12, 4:2, 10:6
**Counsel's** [1] - 2:7
**country** [2] - 17:2
**course** [1] - 3:16
**COURT** [36] - 1:1,
 1:10, 2:12, 2:15, 3:1,
 3:6, 3:12, 3:16, 3:20,
 4:1, 4:12, 4:14, 5:1,
 5:6, 5:9, 6:17, 7:14,
 8:2, 8:7, 9:13, 9:18,
 10:11, 10:15, 10:19,
 12:5, 13:14, 14:11,
 14:22, 15:1, 15:10,
 15:17, 16:15, 17:4,
 17:7, 17:14, 17:22

**court** [4] - 2:11, 10:4,
 14:4
**Court** [10] - 1:17, 2:24,
 8:8, 8:11, 8:25, 9:8,
 14:15, 16:6, 16:19,
 17:11
**Court's** [1] - 13:23
**COURTROOM** [1] -
 2:1
**covered** [1] - 15:18
**credibility** [3] - 10:1,
 10:17, 14:4
**credible** [1] - 11:3
**cross** [4] - 5:24, 9:23,
 10:2, 11:15
**cross-examination** [2]
 - 5:24, 9:23
**CS** [2] - 8:22, 9:5
**CS's** [1] - 14:1
**custody** [4] - 7:10,
 8:20, 11:23, 12:8

**D**

**data** [3] - 4:15, 4:16,
 5:7
**DATE** [1] - 18:8
**date** [1] - 12:25
**days** [1] - 12:17
**DEA** [1] - 2:7
**dealing** [1] - 5:3
**dealt** [1] - 8:9
**decide** [1] - 13:3
**decided** [1] - 12:24
**decision** [1] - 2:24
**decisions** [2] - 12:12,
 13:10
**DEFENDANT** [1] -
 1:15
**defendant** [9] - 2:10,
 2:14, 5:15, 7:19,
 7:23, 7:24, 12:16,
 12:23, 16:12
**Defendant's** [1] -
 10:21
**Defense** [2] - 5:17, 6:3
**defense** [4] - 5:21,
 16:19, 17:10, 17:20
**Delgado** [3] - 1:15,
 2:10, 5:12
**denied** [2] - 8:8, 10:20
**deny** [3] - 5:17, 6:17,
 10:21
**denying** [1] - 5:22
**DEPUTY** [1] - 2:1
**described** [1] - 14:2
**desire** [1] - 14:16
**detail** [2] - 11:6, 16:16
**device** [4] - 6:4, 7:12,
 12:2, 12:4

2

devices [1] - 7:10
different [1] - 11:12
digest [1] - 4:2
dimension [1] - 11:12
dire [2] - 15:18, 15:19
directed [1] - 12:19
directing [2] - 13:7, 13:13
discuss [1] - 9:7
discussion [1] - 17:24
discussions [1] - 12:20
dismissing [1] - 10:22
DISTRICT [3] - 1:1, 1:2, 1:10
diverse [1] - 17:3
DIVISION [1] - 1:2
Docket [1] - 5:14
docket [1] - 6:20
document [1] - 17:9
down [1] - 8:19
driving [2] - 12:12, 16:11
during [3] - 7:6, 7:22, 11:1

## E

e-mail [1] - 17:23
either [2] - 16:6, 17:17
elicited [1] - 11:23
eliciting [1] - 11:19
end [2] - 9:12, 15:5
endeavoring [1] - 5:18
ending [1] - 15:7
enforcement [4] - 6:5, 16:13, 16:20, 16:21
engaged [1] - 16:12
entitled [1] - 18:4
entrapment [1] - 5:21
entry [1] - 6:20
Entry [1] - 5:14
ESQ [2] - 1:15, 1:15
essentially [2] - 11:2, 12:12
evaluate [1] - 10:15
evidence [3] - 5:13, 9:11, 12:8
ex [2] - 9:7, 9:14
ex-parte [1] - 9:7
examination [2] - 5:24, 9:23
exclude [2] - 8:14, 8:23
exculpatory [2] - 5:16, 8:6
excused [1] - 4:6
expand [1] - 17:1
expect [3] - 12:1, 12:8,

13:6
experience [1] - 16:20
expert [9] - 2:18, 2:22, 9:20, 9:25, 10:7, 10:8, 10:9, 10:14, 11:10
experts [1] - 3:5
expound [1] - 16:19
extraction [1] - 7:11

## F

face [1] - 17:3
fact [5] - 9:6, 9:22, 14:3, 16:10, 16:11
Fahie [9] - 2:2, 2:11, 2:13, 5:15, 5:19, 5:20, 8:10, 8:17, 8:21
FAHIE [1] - 1:6
Fahie's [4] - 4:2, 6:22, 7:2, 16:23
false [1] - 11:9
family [1] - 16:21
few [1] - 3:21
filed [3] - 5:10, 5:23, 8:13
FILED [1] - 18:8
filing [2] - 14:2, 14:8, 14:21
filings [1] - 13:22
final [2] - 2:24, 17:24
findings [1] - 11:8
fine [1] - 17:13
first [4] - 5:14, 9:3, 9:12, 12:14
FL [1] - 1:18
flashed [2] - 8:18, 8:19
FLORIDA [1] - 1:2
flurry [1] - 8:13
focuses [1] - 7:5
follow [1] - 16:4
following [2] - 11:21, 15:25
FOR [2] - 1:13, 1:15
force [1] - 16:11
foregoing [1] - 18:3
foreign [3] - 11:7, 17:1, 17:2
formulate [1] - 17:4
forth [1] - 12:20
forward [2] - 4:24, 9:12
frankly [1] - 4:20
full [2] - 14:19, 14:24

## G

GERARDE [18] - 2:4,

2:20, 3:19, 5:8, 6:10, 6:24, 7:15, 10:5, 10:14, 11:18, 12:6, 14:13, 14:23, 15:9, 15:13, 16:8, 17:13, 17:21
gerarde [1] - 6:23
Gerarde [8] - 1:13, 2:5, 2:18, 4:5, 4:18, 5:6, 11:16, 14:11
given [2] - 11:6, 11:7
glitch [1] - 5:2
Government [14] - 2:6, 3:19, 5:5, 5:23, 6:2, 7:4, 7:9, 8:14, 8:23, 11:4, 14:13, 15:11, 16:22, 17:21
Government's [3] - 7:20, 9:19, 16:8
Governmental [1] - 16:24

## H

half [1] - 5:3
halfway [1] - 15:14
hand [1] - 5:4
handy [1] - 6:20
happy [2] - 8:23, 9:7
hard [1] - 14:7
heads [1] - 10:3
hear [4] - 3:11, 8:16, 9:10
HEARING [2] - 1:9, 17:25
hearing [2] - 3:23, 11:2
hearsay [1] - 5:16
HELD [1] - 1:9
helpful [1] - 4:19
hereby [1] - 18:3
hidden [1] - 6:13
Hollis [2] - 3:11, 3:20
hollis [1] - 3:17
HOLLIS [3] - 3:24, 4:9, 4:13
Hollis' [1] - 3:3
Honor [17] - 2:4, 2:9, 2:14, 2:20, 3:18, 4:9, 5:5, 6:10, 6:24, 9:17, 10:5, 10:18, 11:18, 16:18, 17:6, 17:12, 17:19
HONORABLE [1] - 1:9
hopefully [1] - 17:24
hoping [1] - 3:5
hours' [1] - 4:11
humanly [1] - 4:19

## I

identifying [2] - 7:1, 7:2
identity [1] - 9:21
important [3] - 13:9, 16:9, 16:14
in-person [1] - 12:25
inclined [1] - 16:16
included [1] - 14:2
indicated [3] - 5:12, 5:18, 15:23
indictment [1] - 10:22
individual [1] - 8:14
informant [10] - 11:24, 12:3, 12:7, 12:18, 12:21, 12:22, 13:10, 15:25, 16:2
information [1] - 13:2
initials [1] - 8:15
inquire [1] - 6:15
inquiry [1] - 6:8
instructing [1] - 8:21
instructions [1] - 17:11
intend [3] - 5:22, 6:15, 7:4
intending [1] - 8:10
intention [2] - 5:13, 9:19
interested [1] - 12:18
international [1] - 9:25
introduce [1] - 8:10
investigation [3] - 12:9, 13:3, 13:8
investigative [1] - 5:24
involvement [1] - 16:25
involves [1] - 16:1
issue [7] - 8:11, 10:1, 13:15, 14:5, 15:7, 16:2, 17:5
issues [5] - 2:16, 4:21, 6:16, 13:16, 17:24

## J

joy [1] - 13:16
Joyce [2] - 1:15, 2:10
Judge [7] - 3:10, 3:20, 5:8, 13:16, 13:21, 14:13, 15:9
JUDGE [1] - 1:10
jump [1] - 14:23
juror's [1] - 16:9
jurors [2] - 15:22, 16:7

## I

identifying [2] - 7:1, 7:2

## K

Kadeem [3] - 7:3, 7:4, 7:23
KATHLEEN [1] - 1:9
Kevin [1] - 1:13, 2:4
known [1] - 6:6
knows [1] - 12:3

## L

lack [1] - 14:3
Lampeck [2] - 13:19, 14:18
law [4] - 6:5, 16:13, 16:20, 16:21
lawyers [1] - 3:23
lay [1] - 11:23
learned [1] - 11:10
least [4] - 5:11, 6:20, 9:16, 14:9
leave [1] - 3:17
left [2] - 7:15, 9:4
less [1] - 15:13
letter [1] - 15:2
level [1] - 16:16
limine [3] - 5:10, 5:20, 6:18
limited [1] - 9:21
living [1] - 17:2
locate [1] - 13:24
log [1] - 13:23
look [2] - 13:16, 17:15
lookout [1] - 17:23
looks [1] - 6:12
lose [1] - 5:3

## M

mail [1] - 17:23
manner [1] - 13:4
March [1] - 12:15
matter [6] - 9:2, 9:19, 10:2, 10:16, 10:19, 18:4
Maynard [11] - 6:25, 7:5, 7:13, 7:17, 7:21, 8:17, 8:20, 12:14, 12:16, 12:21, 12:22
Maynard's [2] - 7:3, 16:23
McLaughlin [5] - 1:13, 2:5, 4:5, 4:19, 5:6
meaningfully [1] - 3:4
meet [2] - 13:11, 13:12
meeting [5] - 12:13, 12:14, 12:19, 12:25, 13:1
memorandum [1] - 14:19

**messages** [5] - 7:7, 7:9, 7:11, 7:17, 7:18
**mIAMI** [1] - 1:2
**Miami** [4] - 1:18, 1:18, 8:19, 9:4
**might** [1] - 8:2
**mistaken** [1] - 11:9
**moments** [1] - 3:21
**Monday** [1] - 15:5
**money** [4] - 8:18, 8:22, 9:2, 9:3
**moot** [2] - 5:17, 6:17
**morning** [7] - 2:4, 2:9, 2:12, 2:13, 2:14, 3:20, 13:23
**most** [1] - 15:12
**mostly** [1] - 3:2
**motion** [8] - 5:15, 5:20, 5:23, 6:18, 7:5, 8:6, 8:9, 11:1
**motions** [2] - 5:10, 8:13
**moving** [1] - 3:8
**MR** [18] - 2:4, 2:20, 3:19, 5:8, 6:10, 6:24, 7:15, 10:5, 10:14, 11:18, 12:6, 14:13, 14:23, 15:9, 15:13, 16:8, 17:13, 17:21
**MS** [21] - 2:9, 3:2, 3:7, 3:13, 3:18, 3:24, 4:9, 4:13, 4:18, 5:2, 8:5, 8:8, 9:17, 10:12, 10:18, 13:15, 15:16, 16:18, 17:6, 17:12, 17:19
**multinational** [1] - 16:24
**must** [1] - 10:15

## N

**name** [3] - 8:15, 9:22, 14:3
**narco** [2] - 9:25, 11:11
**narco-trafficking** [1] - 9:25
**nature** [3] - 10:9, 12:10, 16:22
**necessary** [2] - 3:22, 14:15
**need** [5] - 3:11, 4:2, 8:11, 9:9, 17:7
**needs** [1] - 9:22
**never** [3] - 9:4, 10:22, 15:7
**never-ending** [1] - 15:7
**next** [2] - 4:3, 15:5
**North** [1] - 1:18

**notes** [1] - 17:15
**nothing** [1] - 17:21
**notice** [3] - 3:15, 4:11, 10:6
**Number** [1] - 1:3
**numerous** [1] - 5:10

## O

**objections** [1] - 3:14
**obviously** [2] - 9:2, 10:19
**occupation** [2] - 16:23, 16:24
**OF** [2] - 1:2, 1:4
**once** [1] - 15:8
**one** [9] - 6:20, 7:15, 8:5, 9:9, 13:15, 13:22, 15:23, 16:15, 17:9
**open** [2] - 10:3, 14:4
**operate** [1] - 12:4
**operation** [1] - 12:11
**opponent** [1] - 7:25
**opportunity** [1] - 14:14
**ourselves** [1] - 2:22
**outstanding** [2] - 2:16, 4:17
**own** [1] - 5:15

## P

**page** [1] - 9:14
**part** [1] - 7:15
**parte** [2] - 9:7, 9:14
**participate** [1] - 3:22
**particular** [6] - 6:3, 12:2, 12:3, 12:13, 13:4, 16:5
**parties** [2] - 15:20, 17:8
**parties'** [1] - 15:17
**party** [1] - 7:25
**past** [3] - 10:23, 12:3, 14:2
**path** [1] - 13:7
**PATRICIA** [2] - 1:17, 18:8
**patricia_sanders@ flsd.uscourts.gov** [1] - 1:19
**people** [1] - 13:11
**perjury** [1] - 11:9
**person** [4] - 6:13, 11:3, 11:8, 12:25
**person's** [1] - 10:23
**personally** [1] - 7:21
**perspective** [1] - 16:8
**phone** [3] - 4:15, 4:16,

12:22
**physical** [1] - 6:12
**picture** [1] - 14:24
**platform** [1] - 6:5
**play** [2] - 8:24, 9:11
**pleadings** [1] - 10:20
**point** [1] - 17:8
**pointed** [2] - 10:20, 11:1
**portion** [1] - 8:9
**pose** [1] - 15:25
**position** [3] - 4:23, 6:9, 7:20
**possible** [1] - 4:19
**post** [2] - 5:18, 8:9
**post-arrest** [2] - 5:18, 8:9
**potentially** [1] - 15:11
**preclude** [5] - 5:15, 5:24, 6:14
**Present** [1] - 2:7
**present** [4] - 2:11, 10:7, 10:8, 14:14
**presented** [1] - 2:23
**presenting** [1] - 7:8
**pretty** [2] - 15:3, 17:3
**preview** [2] - 9:16, 13:5
**previously** [1] - 3:14
**problem** [1] - 14:11
**proceeding** [2] - 14:1, 14:4
**proceedings** [1] - 18:4
**process** [1] - 4:22
**production** [1] - 4:15
**proffer** [3] - 8:24, 9:14, 11:7
**proposed** [2] - 15:18, 17:10
**proprietary** [2] - 6:7, 6:11
**prospective** [1] - 16:7
**provide** [1] - 14:17
**provided** [3] - 4:1, 4:16, 17:11
**public** [3] - 14:2, 14:8, 14:20
**purpose** [1] - 9:21
**purposes** [1] - 9:23
**pursue** [1] - 13:3
**put** [2] - 7:12, 15:8
**putting** [1] - 9:24

## Q

**query** [1] - 14:15
**questions** [3] - 15:19, 15:21

## R

**raise** [3] - 5:4, 5:22, 8:5
**raising** [2] - 5:21, 13:16
**rather** [2] - 9:6, 16:12
**really** [2] - 4:23, 14:12
**reason** [1] - 14:12
**recess** [1] - 17:18
**record** [1] - 3:13
**recording** [3] - 6:4, 12:2, 12:4
**recordings** [7] - 6:25, 7:7, 7:16, 7:19, 9:12, 11:24, 12:7
**referencing** [1] - 14:18
**regard** [1] - 10:21
**regarding** [1] - 13:17
**relevant** [1] - 8:24
**remain** [1] - 2:17
**REPORTED** [1] - 1:17
**Reporter** [1] - 1:17
**request** [2] - 8:13, 10:21
**reserve** [2] - 8:4, 9:10
**resolved** [1] - 8:3
**rest** [2] - 4:16, 15:8
**retain** [1] - 3:5
**return** [1] - 8:22
**revealed** [3] - 9:22, 10:22, 10:24
**review** [1] - 4:2
**reviewed** [1] - 15:17
**reviewing** [1] - 4:22
**Roxanne** [1] - 8:15
**RPR** [2] - 1:17, 18:8
**RS** [1] - 8:15
**ruling** [2] - 9:10, 10:3
**run** [1] - 6:4

## S

**SANDERS** [3] - 1:17, 18:6, 18:8
**santorufo** [1] - 15:20
**scope** [1] - 11:18
**Sean** [2] - 1:13, 2:5
**seated** [1] - 2:15
**second** [2] - 15:14, 15:15
**seek** [1] - 10:7
**seeking** [1] - 6:14
**seeks** [1] - 8:23
**seized** [3] - 8:22, 9:3, 9:4
**sensitive** [1] - 5:24
**sent** [1] - 15:20
**sentencing** [1] - 14:19

**Separate** [1] - 12:7
**separately** [1] - 17:11
**set** [1] - 9:12
**setting** [1] - 12:19
**seven** [1] - 15:11
**show** [2] - 13:9, 13:12
**side** [2] - 16:6, 17:17
**sides** [1] - 15:23
**software** [2] - 4:21, 5:2
**someone** [1] - 16:21
**son** [3] - 7:18, 12:21, 12:22
**son's** [1] - 7:3
**sort** [1] - 16:24
**sounds** [1] - 15:16
**sOUTHERN** [1] - 1:2
**Special** [9] - 2:7, 10:6, 10:12, 11:2, 11:19, 11:20, 11:22, 12:1, 13:17
**special** [1] - 11:13
**stand** [1] - 9:24
**standard** [2] - 15:19, 15:21
**standing** [1] - 2:19
**starts** [1] - 9:11
**state** [1] - 2:3
**statement** [3] - 7:24, 8:6, 9:6
**statements** [1] - 5:16, 5:19, 6:19, 7:5, 7:6, 7:16, 7:22, 7:24, 8:9, 8:14
**STATES** [4] - 1:1, 1:4, 1:10, 1:13
**States** [5] - 1:17, 2:2, 13:19, 14:10, 15:3
**States'** [2] - 5:14, 6:9
**steps** [1] - 12:9
**still** [4] - 4:22, 10:12, 10:15, 15:11
**sting** [2] - 12:11, 16:10
**submission** [2] - 14:17, 15:2
**submit** [1] - 9:13
**substance** [1] - 6:24
**substitute** [1] - 10:9
**sufficiency** [1] - 3:15
**Suite** [1] - 1:18
**summary** [2] - 3:3, 4:1
**supplement** [1] - 15:2
**Sylvester** [3] - 8:15, 8:17, 8:20

## T

**table** [1] - 2:7
**tape** [1] - 8:16

**techniques** [1] - 5:25
**technological** [2] - 6:7, 6:11
**technology** [1] - 6:3
**terms** [3] - 2:23, 4:20, 10:16
**testify** [1] - 11:13
**testifying** [3] - 6:21, 6:25, 11:17
**testimony** [9] - 2:23, 7:11, 7:13, 10:9, 11:8, 11:19, 11:22, 12:1, 13:5
**text** [3] - 7:7, 7:16, 7:18
**THE** [39] - 1:9, 1:13, 1:15, 2:1, 2:12, 2:14, 2:15, 3:1, 3:6, 3:12, 3:16, 3:20, 4:1, 4:12, 4:14, 5:1, 5:6, 5:9, 6:17, 7:14, 8:2, 8:7, 9:13, 9:18, 10:11, 10:15, 10:19, 12:5, 13:14, 14:11, 14:22, 15:1, 15:10, 15:17, 16:15, 17:4, 17:7, 17:14, 17:22
**theory** [1] - 9:1
**therefore** [1] - 11:8
**Theresa** [2] - 1:15, 2:9
**timeliness** [1] - 3:14
**timing** [1] - 15:10
**today** [7] - 2:16, 3:11, 3:23, 4:6, 4:8, 15:5, 17:16
**together** [1] - 17:23
**took** [4] - 11:4, 12:9, 13:7
**topic** [1] - 15:23
**Tortola** [4] - 8:19, 8:23, 9:5, 13:2
**touch** [1] - 12:6
**towards** [2] - 12:19, 16:9
**trafficking** [2] - 9:25, 11:11
**transcription** [1] - 18:4
**transgressions** [1] - 10:23
**trial** [6] - 2:17, 8:3, 9:20, 10:8, 10:10, 10:13
**truth** [1] - 9:2
**try** [1] - 2:21
**two** [6] - 3:5, 4:3, 5:11, 9:14, 12:17, 15:12
**two-page** [1] - 9:14

## U

**UK** [1] - 2:19
**unable** [1] - 3:4
**unaware** [1] - 11:7
**unclear** [1] - 15:4
**unilaterally** [1] - 13:10
**UNITED** [3] - 1:1, 1:4, 1:13
**uNITED** [1] - 1:10
**United** [7] - 1:17, 2:2, 5:14, 6:8, 13:19, 14:10, 15:3
**up** [7] - 5:3, 9:18, 10:3, 11:4, 12:19, 16:4, 16:6
**uses** [1] - 6:5

## V

**VAN** [18] - 2:9, 3:2, 3:7, 3:13, 3:18, 4:18, 5:2, 8:5, 8:8, 9:17, 10:12, 10:18, 13:15, 15:16, 16:18, 17:6, 17:12, 17:19
**Van** [11] - 1:15, 2:10, 2:20, 3:1, 4:16, 5:12, 5:21, 6:15, 9:23, 13:14, 14:18
**versus** [1] - 2:2
**Vliet** [11] - 1:15, 2:10, 2:20, 3:1, 4:16, 5:12, 5:21, 6:15, 9:23, 13:14, 14:18
**VLIET** [18] - 2:9, 3:2, 3:7, 3:13, 3:18, 4:18, 5:2, 8:5, 8:8, 9:17, 10:12, 10:18, 13:15, 15:16, 16:18, 17:6, 17:12, 17:19
**voice** [6] - 6:22, 7:1, 7:2, 7:3
**voir** [2] - 15:18, 15:19
**vs** [1] - 1:5

## W

**waiving** [1] - 3:14
**Wednesday** [1] - 15:6
**week** [4] - 9:15, 13:1, 15:14, 15:15
**weeks** [2] - 4:3, 15:12
**wifi** [1] - 13:23
**WILLIAMS** [1] - 1:9
**Williams** [1] - 3:21
**wind** [1] - 16:13
**Witek** [10] - 2:8, 9:19, 10:7, 10:12, 11:2, 11:7, 11:19, 11:22,

12:2, 13:17
**withdraw** [1] - 10:6
**witness** [2] - 10:9, 10:14
**witnesses** [1] - 15:11
**works** [1] - 16:21
**world** [1] - 6:6
**worried** [1] - 4:23

## Y

**yesterday** [1] - 3:3
**yourself** [2] - 4:4, 4:7

## Z

**Zoom** [2] - 2:19, 3:17