UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 22-CR-20191-KMW

UNITED STATES OF AMERICA


        **vs.**

ANDREW ALTURO FAHIE

---

HEARING HELD 1-25-2024
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE UNITED STATES:     **Kevin Gerarde, A.U.S.A.**
                           **Sean McLaughlin, A.U.S.A.**


FOR THE defendant:         Theresa M. Van Vliet, ESQ.
                           **Joyce Delgado, ESQ.**


REPORTED BY:               PATRICIA SANDERS, RPR
                           United States Court Reporter
                           400 North Miami Avenue, Suite 11-3
                           Miami, FL  33128
                           T: 305.523.5528
                            Patricia_sanders@flsd.uscourts.gov.

1           THE COURTROOM DEPUTY:  Calling Case No. 22-20191;

2   United States of America versus Fahie.

3           Counsel, please state your appearances for the

4   record starting with the United States.

5           MR. GERARDE:  Good morning, Judge, Kevin Gerarde and

6   Sean McLaughlin on behalf of the United States.

7           MS. VAN VLIET:  Good morning, Your Honor, Theresa

8   Van Vliet and Joyce Delgado on behalf of Andrew Fahie.

9           THE COURT:  Good morning.  All right. We're here to

10  address the matters that remain outstanding before starting

11  our upcoming trial.

12          First, I received from Ms. Van Vliet and Ms. Delgado

13  a motion in limine regarding the chats that were produced to

14  the defendant over the holidays -- everyone thought that they

15  had been produced some time ago -- but trial prep revealed that

16  was not the case.

17          It appears that on many of the issues, the objection

18  posited has been somewhat anticipatory, since the Government

19  has not yet winnowed its exhibits.  So, if the Government does

20  not seek to introduce all million conversations I think we are

21  okay.

22          With that being, said, we do need to have the final

23  set of documents.

24          MR. GERARDE:  Yes, Your Honor.

25

1          THE COURT: I received an exhibit list this morning from

2      the United States.  So let me ask you, Mr. Gerarde, whether

3      this the final exhibit list from the Government which addresses

4      the motion in limine in terms of the breadth of the exhibits

5      the Government seeks to introduce?

6          MR. GERARDE:  Judge, that's our final exhibit list.

7      We still need to have a discussion about the breadth of some of

8      the exhibits -- and some I think we are going to agree on --

9      whereas others we will have disagreement as to.

10          And if I might be permitted to highlight one of those,

11      Your Honor, because I think that might be helpful.

12          THE COURT:  All right.

13          MR. GERARDE:  So, 15 B, Your Honor, which is the full

14      file extraction, Ms. Van Vliet did not want the entire file

15      extraction admitted; and the Government agrees with that.

16          THE COURT:  Okay.

17          MR. GERARDE:  We would ask that it be identified --

18      but we are not seeking to admit the entire extraction.

19          THE COURT:  So, tell me if you would how that is

20      going to work.

21          MR. GERARDE:  So, 15 B is going to be the full file

22      extraction from the cell phone -- which the CBP agent is going

23      to identify -- and then we are going to move on to the specific

24      exhibits that we took from that file extraction.

25

1            THE COURT:  All right. So, 15 B is the entirety of

2   the extraction, but you're not intending to introduce that in

3   whole, you are intending to introduce only excerpts?

4            MR. GERARDE:  Correct.

5            THE COURT:  That's good to hear.  Let's go to -- I

6   had this one tabbed -- C 1, which is the full call log.  Again,

7   this is hundreds of pages.  Are you still winnowing that down

8   or is that still what you intend to introduce?

9            MR. GERARDE:  So, the exhibit is 195 pages, and that

10  is the call log from March 21st up until Mr. Fahie's arrest.

11  And we think that, that entire timeframe is relevant because

12  that is the period where Mr. Fahie was engaged in the

13  conspiracy.

14            THE COURT:  Right.  But does it show him, you know,

15  talking with conspirators?

16            MR. GERARDE:  Well, Your Honor, what the Government

17  wants to use this for is to show who it shows he's not speaking

18  to.

19            THE COURT:  The phone?

20            MR. GERARDE:  Correct.

21            THE COURT:  Let's bookmark that because we are going

22  to be talking about that in a few more minutes as to other

23  exhibits.  So the contact list, why do we need the entire

24  contact list?

25

1          MR. GERARDE:  The reason for including the entire

2     contact list is to show the Defendant's opportunity to call any

3     number of people who were listed as contact list.  Governor,

4     you know, several police officers, the Commissioner of Police,

5     the Attorney General.  He had people he could call if he wanted

6     to report something going wrong.

7          THE COURT:  Instead of going through all of that

8     effort -- why can't you just stipulate that Mr. Fahie had

9     Attorney General "Bob" and Chief of Police "Fred" were all in

10    his phone at the time he was arrested on such and such a date?

11         Ms. Van Vliet, would you have any objection to

12    handling it that way?

13         MS. VAN VLIET:  Absolutely not.  I've offered to

14    stipulate to that in the past.

15         THE COURT:  Why do we have to do it this way, Mr.

16    Gerarde?

17         MR. GERARDE:  Well, Your Honor, we are planning to

18    present our case without testimony from our case agents.  Agent

19    Witek is going to testify in a limited capacity to authenticate

20    and admit the recordings and cell phones that were seized.

21         THE COURT:  Right.

22         MR. GERARDE:  I think we could potentially find a

23    compromise by redacting some of the phone numbers.  We should

24    be able to work that out with defense counsel.

25

```
 1              THE COURT:  My suggestion is either through some type

 2     of stipulation -- where the stipulation is introduced while

 3     that person is testifying -- I would tell the jury that instead

 4     of your having to winnow through hundreds of pages of documents

 5     the parties have stipulated that the following person's contact

 6     information was in Mr. Fahie's phone.

 7              MS. VAN VLIET: I think that is fair.

 8              MR. GERARDE:  That is a fair compromise, Your Honor.

 9              THE COURT:  All right. Let's talk about this issue of

10     the office assistant.  Tell me, Mr. Gerarde, why this is

11     relevant.  Is this to show that Mr. Fahie's original plans to

12     go from Miami to Philly were canceled and that instead he was

13     planning to go from there -- I can't recall -- what was the

14     substitute trip?

15              MR. GERARDE:  So, Mr. Fahie was going to Philadelphia

16     with his daughter on April 28th.  He met with the informant and

17     with the undercover officer on the evening of April 27th, and

18     said that he was going to Philadelphia the next day.

19              And the informant said, you know, you should not fly

20     commercial, you don't have to do that, we will set this up for

21     you.  We can get you basically a semi-private jet and you can

22     fly up there on that.

23              And so after that meeting Mr. Fahie reached out to his

24     office assistant, Ms. Mercer, and he asked her to cancel his

25     flight.
```

1           He says; urgent notice, please get the travel agent

2    before 8:00 a.m. to postpone the trip on American to

3    Philadelphia for my daughter and I until further notice.

4           And that was sent on April 28th at 12:13 a.m.  So that

5    was a couple hours after this meeting ended, and about six

6    hours before he was then picked up by the confidential source

7    and the undercover and taken to the executive airport.

8           THE COURT:  Okay.

9           MR. GERARDE:  Where he was then arrested.

10          THE COURT:  All right.  I am going to overrule the

11   objection.  I think the assistant's statements are covered by

12   801(d)(2)(D); it was made by an employee within the scope.

13          This person was his assistant.  It was his or her job

14   to deal with flights and the like.  So I am going to overrule

15   that objection.

16          Let's go next to the building of the house. So, Mr.

17   Gerarde, I am of the opinion that you are endeavoring to

18   introduce this to demonstrate either some financial motive, you

19   know, that there is a house being built or there is a house

20   being built and monies are owed.

21          But I, mean, I think you have to cabin the chats to a

22   certain time period.

23          MR. GERARDE:  So, Judge, the chat that we have is

24   from April 6th, 2022.

25          THE COURT:  Okay.

1           MR. GERARDE:  Up until the Defendant's arrest.

2           THE COURT:  Okay.

3           MR. GERARDE:  And the majority of the chat is Mr.

4    Caraway sending Mr. Fahie pictures showing the progress of the

5    house.  And what this shows is a massive house that is

6    basically on its foundation with walls going up.

7           And we think that that is relevant to show the

8    defendant's financial incentive.  He's building a house and so

9    that was part of the reason why he was motivated to pursue this

10   conspiracy that would result in him netting millions of

11   dollars.

12          THE COURT:  Well, I don't want a photo array of the

13   day-to-day, you know, progress; perhaps a few just to show the

14   jury the type of endeavor this was.  But not, you know, 20

15   pages of the house being built.

16          MR. GERARDE:  We can select a couple.

17          THE COURT:  All right.  The next is Dorrie, who is

18   the banker that is processing the loan.  Again, I understand

19   the Government's purpose, but you need to be surgical in your

20   use of these documents.

21          I don't want to hear about the fact that they are all

22   going to dinner tomorrow -- none of that -- just that a loan

23   was applied for, maybe the value of the loan, something about

24   the financial picture and the need for money; and that is the

25   end of that.

1          MR. GERARDE:  Well, Judge, we can certainly do that.

2     We just don't want to open ourselves up to some argument that

3     we are presenting half the picture and that we are somehow

4     hiding information from the jury and only choosing to present

5     what we want to.

6          I don't think that would be  fair -- I agree that we

7     can convey the message with just a select few surgical chats --

8     but I don't think it would be fair for the Government then to

9     be criticized for only presenting one or two when there are

10    over 50 pages.

11         THE COURT:  Well, couple of points on that.  That is

12    the nature of trial -- and there are evidentiary rules -- and

13    so the jury doesn't get it all; they get what they're entitled

14    to get.  And the jurors are, of course, instructed as to being

15    provided and considering only the relevant evidence.

16         All right.  Next is Commissioner Collins.  So the

17    purpose of that, I assume, is to show that Mr. Fahie didn't

18    reach out to law enforcement, which, I guess is fine.

19         But then are you still objecting to the statements by

20    RS to Ms. Maynard about what he intended to do?  So, how do I

21    balance that?

22         MR. GERARDE:  So, Judge, the issue we have with the

23    statement from RS -- Roxanne Sylvester -- to Ms. Maynard is

24    that there's not an evidentiary foundation for it.

25

1          It's simply that Mr. Oleanvine Maynard is going to say

2   that Roxanne told her that after Mr. Fahie had been arrested --

3   and that she believes Mr. Fahie told Roxanne that after he had

4   been arrested.

5          First of all, it's not an opposing party statement, and

6   second of all, Judge, since Mr. Fahie had been arrested he

7   wasn't even a party to the conspiracy.  And so the Government's

8   objection is as to hearsay.

9          THE COURT:  Ms. Van Vliet.

10         MS. VAN VLIET:  Judge, Ms. Maynard will testify -- if

11  I understand it right -- this statement of Roxanne to Maynard

12  happened after the arrest.

13         What I just heard Mr. Gerarde say is that Ms. Maynard,

14  quote unquote, thinks -- doesn't know -- thinks that Mr. Fahie

15  told Ms. Sylvester after the arrest.

16         Where is the evidentiary basis for that?

17         And, Judge, we are not offering it for the truth of

18  the matter asserted, but rather for what was -- was said -- is

19  in the catchall provision; which is what we put in our initial

20  papers.

21         And, Your Honor, here we have a Government witness --

22  whom they're putting up as a truth teller -- saying that this

23  statement was made; without any context to that statement that

24  was made.

25

1           And I can't get the witness to come in to testify on

2    behalf of the defense because of threats that were made to her,

3    according to her, from the DEA agent.

4           Where she was that she would be arrested if she came

5    back to the United States.  So I can't get her here to testify

6    to what was said in person.

7           THE COURT:  Well, I don't understand then if it's not

8    being admitted for the truth -- but just that it was said --

9    just as it was said that Mr. Fahie was endeavoring to contact

10   law enforcement; that statement.

11          MS. VAN VLIET:  That was the statement that some

12   money would be seized and the CS would be arrested.  That is

13   the statement that is the -- that I believe you are referring

14   to.

15          And I think that the distinction that is present --

16   the difference that we have in terms of the analysis of the

17   admission of the statements -- the statement from RS to Maynard

18   bears sufficient indicia of trustworthiness in that it is

19   supported --

20          THE COURT REPORTER:  If you could please speak into

21   the microphone, counsel.

22          THE COURT:  Yes, you were trailing off a bit.

23          MS. VAN VLIET: Is that better?

24          THE COURT:  Much.

25

```
 1           MS. VAN VLIET:  The speaker certainly had no incentive

 2    to lie because she's trying to presumably get her sentence

 3    lowered.

 4           It was memorialized in the "Six" and it is more

 5    probative on the point of Mr. Fahie's intent than literally any

 6    other piece of evidence because there is no other piece of

 7    evidence -- because the witness, Ms. Sylvester, is unwilling to

 8    come to the United States because of the fear of being arrested

 9    for something that the Government says -- where she is not a

10    co-conspirator.

11           And it was revised -- it being 807 -- was revised in

12    2019 to make it more amenable to introduction by a moving

13    party; which is her Mr. Fahie.

14           And while I cannot point to a case and say, you know,

15    Judge, this is the be all and end all -- the truth of the

16    matter asserted versus the fact that the statement was made --

17    which is the whole point of United States v. Grajales, which

18    was a reverse trafficking case.

19           THE COURT:  Well, I think the Grajales case, which you

20    posit for your theory of defense -- and which we will take up

21    at some point during our charge conference -- it is not as

22    robust as has been argued.

23           And that is because of United States versus Alvarado,

24    where the Court acknowledges that the Eleventh might be one of

25    the only Circuits that allows this innocence defense.
```

1           But it also somewhat dissociates itself by saying; that

2     we are aware our non-published decisions carry no precedential

3     weight.

4           And what I take from some of these cases is that the

5     defendant testified.  And so if Mr. Fahie testifies, obviously,

6     that he told RS then that is coming in because that is what he

7     did.

8           And so if Mr. Fahie testifies then this all comes in,

9     and I think then Ms. Maynard is susceptible to being called.

10    But I don't see at this point a way that RS's statements to Ms.

11    Maynard about what Mr. Fahie said post-arrest are coming in.

12          But having said that, Mr. Gerarde, you know, all of

13    these conversations where Mr. Collins reaches out to express

14    his condolences, and Mr. Fahie doesn't say, oh, by the way...

15          Again, no contact, no communication with any law

16    enforcement about this, that is fine as a summary, but I think

17    gilding the lily with the national security and the condolence

18    chat might be a step too far.  So I am going to reserve on

19    that.

20          MR. GERARDE:  So, Judge, we'll talk to the defense

21    about the RS statements, and also the Collins chat, to see if

22    we can reach some agreement.

23          MS. VAN VLIET:  Judge, we will keep talking with the

24    Government to try to work out whatever it is we can.

25

1           THE COURT:  I appreciate that.

2           All right.  Are there any other exhibits the parties

3    would like to address while we have some time?

4           MS. VAN VLIET:  That would be great.

5           THE COURT:  All right. Do you have the specific

6    exhibit numbers?

7           MS. VAN VLIET:  So as to 15C14 and 15C15, that is a

8    single message to Eunice Crawford, who is another one of Mr.

9    Fahie's assistants, as well as a picture of a house; I believe.

10          MR. GERARDE:  Your Honor, that is the picture of a

11   hotel in St. Martin.

12          THE COURT:  And that is relevant because?

13          MR. GERARDE:  Because Mr. Fahie's planning to go to

14   St. Martin on May 3rd to pay a friend -- repay some money that

15   the CS is giving him.  The CS is providing money to Fahie to

16   give to his friend in St. Martin.

17          And so this message that Fahie sends to his assistant

18   showed that he was actually planning on going to St. Martin.

19   And so this provides corroboration for his statements.

20          THE COURT:  All right. Ms. Van Vliet, what is your

21   objection?

22          MS. VAN VLIET:  I would object as to that merely being

23   speculation.  I mean, that is an assumption.  That was just a

24   picture that was sent -- there's no message about making

25   reservations or anything like that.

1          THE COURT: So, how do we know this is a hotel in St.

2    Martin?  It says Hotel Flamingo at St. Martin.

3          MR. GERARDE:  We are going to present through William

4    Cortez that that hotel is in St. Martin on the Dutch side.  And

5    it corresponds directly with what Fahie says to the informant

6    on April 7th about going to St. Martin, staying at a hotel on

7    the Dutch side.

8          And then they discuss this arrangement again on April

9    27th when they meet in Miami -- going to St. Martin -- they're

10   meeting there.

11         They discuss at length how the -- the informant is

12   going to bring $133,000 in cash in hundreds -- he is going to

13   give that to Mr. Fahie; Mr. Fahie is going to give that to the

14   person he's meeting there.

15         THE COURT:  So you are going to introduce the picture

16   on his phone; and then another witness is going to say, yes, I

17   recognize the hotel, it's in St. Martin on the Dutch side?

18         MR. GERARDE:  Yes.

19         THE COURT:  Ms. Van Vliet, do you have an objection

20   if it stays that simple?

21         MS. VAN VLIET:  If Your Honor could maybe bookmark

22   that.  I would like to discuss it with my client.

23         THE COURT:  Of course.

24         MS. VAN VLIET:  We may not have one, but I would like

25   to speak with my client.

1              THE COURT:  That is fine.

2              MS. VAN VLIET:  I can't go there yet.

3              THE COURT:  As to 15C15, Ms. Van Vliet.

4              MS. VAN VLIET:  Pending talking to my client, Judge,

5    I do not anticipate an objection.

6              THE COURT:  All right.

7              MS. VAN VLIET:  And, Your Honor, there were some

8    additional exhibits that we were just provided and so I would

9    like an opportunity to speak with my client about those.

10             Again, there may not be any objection, or we may be

11   able to work something out with Mr. Gerarde, but we would like

12   to have that opportunity as well.

13             THE COURT:  All right.

14             MR. GERARDE:  And, Judge, included in that were three

15   device reports for three separate phones -- and we added a call

16   log for Kadeem Maynard's iPhone 11 -- and so that is something

17   that I am sure Ms. Van Vliet is going to need to go through

18   with her client as well.

19             MS. VAN VLIET:  That is right, Judge, I honestly

20   haven't even begun to look at that -- I am trying my best to

21   keep up to speed and be ready for our fast approaching trial.

22             THE COURT:  How long is that, log, Mr. Gerarde?

23             MS. VAN VLIET:  Your Honor, that is 124 pages.

24             MR. GERARDE:  And, Judge, I think that we can narrow

25   this one down as well.

1          What we are seeking to show with this are the phone

2     calls to -- between the informant and Kadeem.  And so there

3     were only a handful of those.

4          THE COURT:  Okay.

5          MR. GERARDE:  Your Honor, I apologize, if I could

6     briefly address Exhibit 36.

7          THE COURT:  Okay.

8          MR. GERARDE:  These are paper documents that Oleanvine

9     Maynard gave to the Department on April 27.  They relate to the

10    side deal that Kadeem Maynard and Oleanvine Maynard have with

11    the informant and not as to the conspiracy that Mr. Fahie is

12    participating in.

13         This is documentation that just corroborates what

14    Oleanvine and Kadeem were telling the informant about what

15    their plans were.

16         THE COURT:  Ms. Van Vliet.

17         MS. VAN VLIET:  Again, I have not had a chance to

18    speak with my client about this exhibit.  I do anticipate that

19    we will be objecting to Exhibit 36, Your Honor, which is this

20    entire discussion -- this whole thing is about some other

21    conspiracy which Mr. Fahie is not alleged to have participated

22    in or had any knowledge about.

23         This is not a case where there is this classic -- the

24    classic "inextricably intertwined" with what is going on in the

25    case that Mr. Fahie is alleged to be involved in.

```
 1                Certainly some of this is going to come out during
 2     examination of Ms. Maynard -- no doubt about it -- and I get
 3     that; but they're not co-conspirator statements that relate in
 4     any way to Mr. Fahie.
 5                THE COURT:  I am willing to hear further argument, as
 6     well as see authority, on this issue; but at the very least
 7     there is going to have to be a limiting instruction to let the
 8     ladies and gentlemen of the jury know that this evidence is
 9     going to Ms. Maynard's credibility and is not being offered
10     against Mr. Fahie.
11                MR. GERARDE:  Agreed, Judge.  And the Government is
12     going to be crystal clear about that -- that we are not in any
13     way suggesting that Mr. Fahie was aware of this side deal.
14                In fact, this document makes reference to the fact
15     that the "head coach", as they refer to Fahie, can't know about
16     the deal.
17                THE COURT:  All right. I am going to ask the parties to
18     work on the language for me to read in terms of an appropriate
19     limiting instruction.
20                MS. VAN VLIET:  Your Honor, if I might bring up a
21     scheduling issue -- if now is a good time.
22                THE COURT:  Yes, of course.
23                MS. VAN VLIET:  I have a doctor's appointment that
24     was set out quite a while ago.  And so I would like to be able
25     to keep it if at all possible.
```

1           Of course I can't locate it in my phone to tell you

2   exactly when it is.

3           THE COURT:  No worries.  Just e-mail Mr. Santorufo

4   the date and time and we will work around it.

5           I let our jury panel know that we will, of course,

6   accommodate any doctor's appointments or some other scheduling

7   issue that needs to be worked around should they be selected as

8   one of the jurors in this case.

9           THE COURT:  I try to work with everyone's schedule as

10  much as I can; understanding our jurors are taking time out of

11  their busy lives to serve.

12          MS. VAN VLIET:  Thank you, Judge.

13          THE COURT:  Have you all met with IT to make sure

14  everything synchs up and will hopefully be working for your

15  trial presentations?

16          MS. VAN VLIET:  Yes, we have.

17          MR. GERARDE:  Yes, Judge.

18          THE COURT:  All right. If there is nothing else I am

19  going to let you all get back to work.  I know that you all are

20  very busy preparing for trial, and so I am going to recess and

21  let you continue working.

22          I would ask that you get here by 9:00 just to set

23  up, make sure that your technology is still working, get

24  yourselves settled in, and we will hopefully have our jury up

25  here by 9:30.

1          All right.  Have a good weekend -- it will not be a

2     restful one -- and I will see you Monday morning at 9:00.

3          MR. GERARDE:  Thank you, Judge.

4          MS. VAN VLIET:  Thank you, Judge.

5                    HEARING CONCLUDED

1                          -   -   -

2                    C E R T I F I C A T E

3          I hereby certify that the foregoing is an accurate

4    transcription of proceedings in the above-entitled matter.

5

6                                    /S/PATRICIA SANDERS

7    _____               _____

8    DATE FILED                PATRICIA SANDERS, RPR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$133,000** [1] - 15:12

## /

**/S/PATRICIA** [1] - 21:6

## 1

**1** [1] - 4:6
**1-25-2024** [1] - 1:9
**11** [1] - 16:16
**11-3** [1] - 1:18
**124** [1] - 16:23
**12:13** [1] - 7:4
**15** [3] - 3:13, 3:21, 4:1
**15C14** [1] - 14:7
**15C15** [2] - 14:7, 16:3
**195** [1] - 4:9

## 2

**20** [1] - 8:14
**2019** [1] - 12:12
**2022** [1] - 7:24
**21st** [1] - 4:10
**22-20191** [1] - 2:1
**22-CR-20191-KMW** [1] - 1:3
**27** [1] - 17:9
**27th** [2] - 6:17, 15:9
**28th** [2] - 6:16, 7:4

## 3

**305.523.5528** [1] - 1:19
**33128** [1] - 1:18
**36** [2] - 17:6, 17:19
**3rd** [1] - 14:14

## 4

**400** [1] - 1:18

## 5

**50** [1] - 9:10

## 6

**6th** [1] - 7:24

## 7

**7th** [1] - 15:6

## 8

**801(d)(2)(D** [1] - 7:12

**807** [1] - 12:11
**8:00** [1] - 7:2

## 9

**9:00** [2] - 19:22, 20:2
**9:30** [1] - 19:25

## A

**a.m** [2] - 7:2, 7:4
**A.U.S.A** [2] - 1:13, 1:13
**able** [3] - 5:24, 16:11, 18:24
**above-entitled** [1] - 21:4
**Absolutely** [1] - 5:13
**accommodate** [1] - 19:6
**according** [1] - 11:3
**accurate** [1] - 21:3
**acknowledges** [1] - 12:24
**added** [1] - 16:15
**additional** [1] - 16:8
**address** [3] - 2:10, 14:3, 17:6
**addresses** [1] - 3:3
**admission** [1] - 11:17
**admit** [2] - 3:18, 5:20
**admitted** [2] - 3:15, 11:8
**Agent** [1] - 5:18
**agent** [3] - 3:22, 7:1, 11:3
**agents** [1] - 5:18
**ago** [2] - 2:15, 18:24
**agree** [2] - 3:8, 9:6
**agreed** [1] - 18:11
**agreement** [1] - 13:22
**agrees** [1] - 3:15
**airport** [1] - 7:7
**alleged** [2] - 17:21, 17:25
**allows** [1] - 12:25
**ALTURO** [1] - 1:6
**Alvarado** [1] - 12:23
**amenable** [1] - 12:12
**AMERICA** [1] - 1:4
**America** [1] - 2:2
**American** [1] - 7:2
**analysis** [1] - 11:16
**ANDREW** [1] - 1:6
**Andrew** [1] - 2:8
**anticipate** [2] - 16:5, 17:18
**anticipatory** [1] - 2:18
**apologize** [1] - 17:5
**appearances** [2] -

**1:12, 2:3**
**applied** [1] - 8:23
**appointment** [1] - 18:23
**appointments** [1] - 19:6
**appreciate** [1] - 14:1
**approaching** [1] - 16:21
**appropriate** [1] - 18:18
**April** [7] - 6:16, 6:17, 7:4, 7:24, 15:6, 15:8, 17:9
**argued** [1] - 12:22
**argument** [2] - 9:2, 18:5
**arrangement** [1] - 15:8
**array** [1] - 8:12
**arrest** [5] - 4:10, 8:1, 10:12, 10:15, 13:11
**arrested** [8] - 5:10, 7:9, 10:2, 10:4, 10:6, 11:4, 11:12, 12:8
**asserted** [2] - 10:18, 12:16
**assistant** [4] - 6:10, 6:24, 7:13, 14:17
**assistant's** [1] - 7:11
**assistants** [1] - 14:9
**assume** [1] - 9:17
**assumption** [1] - 14:23
**Attorney** [2] - 5:5, 5:9
**authenticate** [1] - 5:19
**authority** [1] - 18:6
**Avenue** [1] - 1:18
**aware** [2] - 13:2, 18:13

## B

**balance** [1] - 9:21
**banker** [1] - 8:18
**basis** [1] - 10:16
**bears** [1] - 11:18
**begun** [1] - 16:20
**behalf** [3] - 2:6, 2:8, 11:2
**believes** [1] - 10:3
**best** [1] - 16:20
**better** [1] - 11:23
**between** [1] - 17:2
**bit** [1] - 11:22
**Bob** [1] - 5:9
**bookmark** [2] - 4:21, 15:21
**breadth** [2] - 3:4, 3:7
**briefly** [1] - 17:6
**bring** [2] - 15:12,

**18:20**
**building** [2] - 7:16, 8:8
**built** [3] - 7:19, 7:20, 8:15
**busy** [2] - 19:11, 19:20
**BY** [1] - 1:17

## C

**cabin** [1] - 7:21
**cancel** [1] - 6:24
**canceled** [1] - 6:12
**cannot** [1] - 12:14
**capacity** [1] - 5:19
**Caraway** [1] - 8:4
**carry** [1] - 13:2
**case** [10] - 1:3, 2:16, 5:18, 12:14, 12:18, 12:19, 17:23, 17:25, 19:8
**Case** [1] - 2:1
**cases** [1] - 13:4
**cash** [1] - 15:12
**catchall** [1] - 10:19
**CBP** [1] - 3:22
**cell** [2] - 3:22, 5:20
**certain** [1] - 7:22
**certainly** [3] - 9:1, 12:1, 18:1
**certify** [1] - 21:3
**chance** [1] - 17:17
**charge** [1] - 12:21
**chat** [4] - 7:23, 8:3, 13:18, 13:21
**chats** [3] - 2:13, 7:21, 9:7
**Chief** [1] - 5:9
**choosing** [1] - 9:4
**Circuits** [1] - 12:25
**classic** [2] - 17:23, 17:24
**clear** [1] - 18:12
**client** [6] - 15:22, 15:25, 16:4, 16:9, 16:18, 17:18
**co** [2] - 12:10, 18:3
**co-conspirator** [2] - 12:10, 18:3
**coach** [1] - 18:15
**Collins** [3] - 9:16, 13:13, 13:21
**coming** [2] - 13:6, 13:11
**commercial** [1] - 6:20
**Commissioner** [2] - 5:4, 9:16
**communication** [1] - 13:15
**compromise** [2] - 5:23, 6:8

**CONCLUDED** [1] - 20:5
**condolence** [1] - 13:17
**condolences** [1] - 13:14
**conference** [1] - 12:21
**confidential** [1] - 7:6
**considering** [1] - 9:15
**conspiracy** [5] - 4:13, 8:10, 10:7, 17:11, 17:21
**conspirator** [2] - 12:10, 18:3
**conspirators** [1] - 4:15
**contact** [7] - 4:23, 4:24, 5:2, 5:3, 6:5, 11:9, 13:15
**context** [1] - 10:23
**continue** [1] - 19:21
**conversations** [2] - 2:20, 13:13
**convey** [1] - 9:7
**Correct** [1] - 4:4
**correct** [1] - 4:20
**corresponds** [1] - 15:5
**corroborates** [1] - 17:13
**corroboration** [1] - 14:19
**Cortez** [1] - 15:4
**counsel** [2] - 5:24, 11:21
**Counsel** [1] - 2:3
**couple** [3] - 7:5, 8:16, 9:11
**course** [5] - 9:14, 15:23, 18:22, 19:1, 19:5
**COURT** [53] - 1:1, 1:10, 2:9, 3:1, 3:12, 3:16, 3:19, 4:1, 4:5, 4:14, 4:19, 4:21, 5:7, 5:15, 5:21, 6:21, 6:9, 7:8, 7:10, 7:25, 8:2, 8:12, 8:17, 9:11, 10:9, 11:7, 11:20, 11:22, 11:24, 12:19, 14:1, 14:5, 14:12, 14:20, 15:1, 15:15, 15:19, 15:23, 16:1, 16:3, 16:6, 16:13, 16:22, 17:4, 17:7, 17:16, 18:5, 18:17, 18:22, 19:3, 19:9, 19:13, 19:18
**Court** [2] - 1:17, 12:24
**COURTROOM** [1] -

2:1
**covered** [1] - 7:11
**Crawford** [1] - 14:8
**credibility** [1] - 18:9
**criticized** [1] - 9:9
**crystal** [1] - 18:12
**CS** [3] - 11:12, 14:15

## D

**date** [2] - 5:10, 19:4
**DATE** [1] - 21:8
**daughter** [2] - 6:16, 7:3
**day-to-day** [1] - 8:13
**DEA** [1] - 11:3
**deal** [4] - 7:14, 17:10, 18:13, 18:16
**decisions** [1] - 13:2
**defendant** [3] - 1:15, 2:14, 13:5
**defendant's** [1] - 8:8
**Defendant's** [2] - 5:2, 8:1
**defense** [5] - 5:24, 11:2, 12:20, 12:25, 13:20
**Delgado** [3] - 1:15, 2:8, 2:12
**demonstrate** [1] - 7:18
**Department** [1] - 17:9
**DEPUTY** [1] - 2:1
**device** [1] - 16:15
**difference** [1] - 11:16
**dinner** [1] - 8:22
**directly** [1] - 15:5
**disagreement** [1] - 3:9
**discuss** [3] - 15:8, 15:11, 15:22
**discussion** [2] - 3:7, 17:20
**dissociates** [1] - 13:1
**distinction** [1] - 11:15
**DISTRICT** [3] - 1:1, 1:2, 1:10
**DIVISION** [1] - 1:2
**doctor's** [2] - 18:23, 19:6
**document** [1] - 18:14
**documentation** [1] - 17:13
**documents** [4] - 2:23, 6:4, 8:20, 17:8
**dollars** [1] - 8:11
**Dorrie** [1] - 8:17
**doubt** [1] - 18:2
**down** [2] - 4:7, 16:25
**during** [2] - 12:21, 18:1
**Dutch** [3] - 15:4, 15:7,

15:17

## E

**e-mail** [1] - 19:3
**effort** [1] - 5:8
**either** [2] - 6:1, 7:18
**Eleventh** [1] - 12:24
**employee** [1] - 7:12
**end** [2] - 8:25, 12:15
**endeavor** [1] - 8:14
**endeavoring** [2] - 7:17, 11:9
**ended** [1] - 7:5
**enforcement** [3] - 9:18, 11:10, 13:16
**engaged** [1] - 4:12
**entire** [6] - 3:14, 3:18, 4:11, 4:23, 5:1, 17:20
**entirety** [1] - 4:1
**entitled** [2] - 9:13, 21:4
**ESQ** [2] - 1:15, 1:15
**Eunice** [1] - 14:8
**evening** [1] - 6:17
**evidence** [4] - 9:15, 12:6, 12:7, 18:8
**evidentiary** [3] - 9:12, 9:24, 10:16
**exactly** [1] - 19:2
**examination** [1] - 18:2
**excerpts** [1] - 4:3
**executive** [1] - 7:7
**exhibit** [6] - 3:1, 3:3, 3:6, 4:9, 14:6, 17:18
**Exhibit** [2] - 17:6, 17:19
**exhibits** [7] - 2:19, 3:4, 3:8, 3:24, 4:23, 14:2, 16:8
**express** [1] - 13:13
**extraction** [6] - 3:14, 3:15, 3:18, 3:22, 3:24, 4:2

## F

**fact** [4] - 8:21, 12:16, 18:14
**FAHIE** [1] - 1:6
**Fahie** [30] - 2:2, 2:8, 4:12, 5:8, 6:15, 6:23, 8:4, 9:17, 10:2, 10:3, 10:6, 10:14, 11:9, 12:13, 13:5, 13:8, 13:11, 13:14, 14:15, 14:17, 15:5, 15:13, 17:11, 17:21, 17:25, 18:4, 18:10, 18:13,

18:15
**Fahie's** [6] - 4:10, 6:6, 6:11, 12:5, 14:9, 14:13
**fair** [4] - 6:7, 6:8, 9:6, 9:8
**far** [1] - 13:18
**fast** [1] - 16:21
**fear** [1] - 12:8
**few** [3] - 4:22, 8:13, 9:7
**file** [3] - 3:14, 3:21, 3:24
**FILED** [1] - 21:8
**final** [3] - 2:22, 3:3, 3:6
**financial** [3] - 7:18, 8:8, 8:24
**fine** [3] - 9:18, 13:16, 16:1
**first** [2] - 2:12, 10:5
**FL** [1] - 1:18
**Flamingo** [1] - 15:2
**flight** [1] - 6:25
**flights** [1] - 7:14
**FLORIDA** [1] - 1:2
**fly** [2] - 6:19, 6:22
**following** [1] - 6:5
**FOR** [2] - 1:13, 1:15
**foregoing** [1] - 21:3
**foundation** [2] - 8:6, 9:24
**Fred** [1] - 5:9
**friend** [2] - 14:14, 14:16
**full** [3] - 3:13, 3:21, 4:6

## G

**General** [2] - 5:5, 5:9
**gentlemen** [1] - 18:8
**Gerarde** [10] - 1:13, 2:5, 3:2, 5:16, 6:10, 7:17, 10:13, 13:12, 16:11, 16:22
**GERARDE** [34] - 2:5, 2:24, 3:6, 3:13, 3:17, 3:21, 4:4, 4:9, 4:16, 4:20, 5:1, 5:17, 5:22, 6:8, 6:15, 7:9, 7:23, 8:1, 8:3, 8:16, 9:1, 9:22, 13:20, 14:10, 14:13, 15:3, 15:18, 16:14, 16:24, 17:5, 17:8, 18:11, 19:17, 20:3
**gilding** [1] - 13:17
**Government** [11] - 2:18, 2:19, 3:3, 3:5, 3:15, 4:16, 9:8, 10:21, 12:9, 13:24,

18:11
**Government's** [2] - 8:19, 10:7
**Governor** [1] - 5:3
**Grajales** [2] - 12:17, 12:19
**great** [1] - 14:4
**guess** [1] - 9:18

## H

**half** [1] - 9:3
**handful** [1] - 17:3
**handling** [1] - 5:12
**head** [1] - 18:15
**hear** [3] - 4:5, 8:21, 18:5
**heard** [1] - 10:13
**HEARING** [2] - 1:9, 20:5
**hearsay** [1] - 10:8
**HELD** [1] - 1:9
**helpful** [1] - 3:11
**hereby** [1] - 21:3
**hiding** [1] - 9:4
**highlight** [1] - 3:10
**holidays** [1] - 2:14
**honestly** [1] - 16:19
**Honor** [15] - 2:7, 2:24, 3:11, 3:13, 4:16, 5:17, 6:8, 10:21, 14:10, 15:21, 16:7, 16:23, 17:5, 17:19, 18:20
**HONORABLE** [1] - 1:9
**hopefully** [2] - 19:14, 19:24
**hotel** [5] - 14:11, 15:1, 15:4, 15:6, 15:17
**Hotel** [1] - 15:2
**hours** [2] - 7:5, 7:6
**house** [8] - 7:16, 7:19, 8:5, 8:8, 8:15, 14:9
**hundreds** [2] - 4:7, 6:4, 15:12

## I

**identified** [1] - 3:17
**identify** [1] - 3:23
**incentive** [2] - 8:8, 12:1
**included** [1] - 16:14
**including** [1] - 5:1
**indicia** [1] - 11:18
**inextricably** [1] - 17:24
**informant** [7] - 6:16, 6:19, 15:5, 15:11, 17:2, 17:11, 17:14

18:11
**Government's** [2] - 8:19, 10:7
**Governor** [1] - 5:3
**Grajales** [2] - 12:17, 12:19
**great** [1] - 14:4
**guess** [1] - 9:18

**information** [2] - 6:6, 9:4
**initial** [1] - 10:19
**innocence** [1] - 12:25
**instead** [3] - 5:7, 6:3, 6:12
**instructed** [1] - 9:14
**instruction** [2] - 18:7, 18:19
**intend** [1] - 4:8
**intended** [1] - 9:20
**intending** [2] - 4:2, 4:3
**intent** [1] - 12:5
**intertwined** [1] - 17:24
**introduce** [7] - 2:20, 3:5, 4:2, 4:3, 4:8, 7:18, 15:15
**introduced** [1] - 6:2
**introduction** [1] - 12:12
**involved** [1] - 17:25
**iPhone** [1] - 16:16
**issue** [5] - 6:9, 9:22, 18:6, 18:21, 19:7
**issues** [1] - 2:17
**IT** [1] - 19:13
**itself** [1] - 13:1

## J

**jet** [1] - 6:21
**job** [1] - 7:13
**Joyce** [2] - 1:15, 2:8
**Judge** [19] - 2:5, 3:6, 7:23, 9:1, 9:22, 10:6, 10:10, 10:17, 12:15, 13:20, 16:4, 16:14, 16:19, 16:24, 18:11, 19:12, 19:17, 20:3, 20:4
**JUDGE** [1] - 1:10
**judge** [1] - 13:23
**jurors** [3] - 9:14, 19:8, 19:10
**jury** [7] - 6:3, 8:14, 9:4, 9:13, 18:8, 19:5, 19:24

## K

**Kadeem** [4] - 16:16, 17:2, 17:10, 17:14
**KATHLEEN** [1] - 1:9
**keep** [3] - 13:23, 16:21, 18:25
**Kevin** [2] - 1:13, 2:5
**knowledge** [1] - 17:22

## L

**ladies** [1] - 18:8
**language** [1] - 18:18
**law** [3] - 9:18, 11:10, 13:15
**least** [1] - 18:6
**length** [1] - 15:11
**lie** [1] - 12:2
**lily** [1] - 13:17
**limine** [2] - 2:13, 3:4
**limited** [1] - 5:19
**limiting** [2] - 18:7, 18:19
**list** [7] - 3:1, 3:3, 3:6, 4:23, 4:24, 5:2, 5:3
**listed** [1] - 5:3
**literally** [1] - 12:5
**lives** [1] - 19:11
**loan** [3] - 8:18, 8:22, 8:23
**locate** [1] - 19:1
**log** [4] - 4:6, 4:10, 16:16, 16:22
**look** [1] - 16:20
**lowered** [1] - 12:3

## M

**mail** [1] - 19:3
**majority** [1] - 8:3
**March** [1] - 4:10
**Martin** [10] - 14:11, 14:14, 14:16, 14:18, 15:2, 15:4, 15:6, 15:9, 15:17
**massive** [1] - 8:5
**matter** [3] - 10:18, 12:16, 21:4
**matters** [1] - 2:10
**maynard** [1] - 13:11
**Maynard** [12] - 9:20, 9:23, 10:1, 10:10, 10:11, 10:13, 11:17, 13:9, 17:9, 17:10, 18:2
**Maynard's** [2] - 16:16, 18:9
**McLaughlin** [2] - 1:13, 2:6
**mean** [2] - 7:21, 14:23
**meet** [1] - 15:9
**meeting** [4] - 6:23, 7:5, 15:10, 15:14
**memorialized** [1] - 12:4
**Mercer** [1] - 6:24
**merely** [1] - 14:22
**message** [4] - 9:7, 14:8, 14:17, 14:24

**met** [2] - 6:16, 19:13
**mIAMI** [1] - 1:2
**Miami** [4] - 1:18, 1:18, 6:12, 15:9
**microphone** [1] - 11:21
**might** [5] - 3:10, 3:11, 12:24, 13:18, 18:20
**million** [1] - 2:20
**millions** [1] - 8:10
**minutes** [1] - 4:22
**Monday** [1] - 20:2
**money** [4] - 8:24, 11:12, 14:14, 14:15
**monies** [1] - 7:20
**morning** [5] - 2:5, 2:7, 2:9, 3:1, 20:2
**motion** [2] - 2:13, 3:4
**motivated** [1] - 8:9
**motive** [1] - 7:18
**move** [1] - 3:23
**moving** [1] - 12:12
**MR** [34] - 2:5, 2:24, 3:6, 3:13, 3:17, 3:21, 4:4, 4:9, 4:16, 4:20, 5:1, 5:17, 5:22, 6:8, 6:15, 7:9, 7:23, 8:1, 8:3, 8:16, 9:1, 9:22, 13:20, 14:10, 14:13, 15:3, 15:18, 16:14, 16:24, 17:5, 17:8, 18:11, 19:17, 20:3
**MS** [24] - 2:7, 5:13, 6:7, 10:10, 11:11, 11:23, 12:1, 13:23, 14:4, 14:7, 14:22, 15:21, 15:24, 16:2, 16:4, 16:7, 16:19, 16:23, 17:17, 18:20, 18:23, 19:12, 19:16, 20:4

## N

**narrow** [1] - 16:24
**national** [1] - 13:17
**nature** [1] - 9:12
**need** [6] - 2:22, 3:7, 4:23, 8:19, 8:24, 16:17
**needs** [1] - 19:7
**netting** [1] - 8:10
**next** [4] - 6:18, 7:16, 8:17, 9:16
**non** [1] - 13:2
**non-published** [1] - 13:2
**none** [1] - 8:22
**North** [1] - 1:18
**nothing** [1] - 19:18

**notice** [2] - 7:1, 7:3
**number** [1] - 5:3
**Number** [1] - 1:3
**numbers** [2] - 5:23, 14:6

## O

**object** [1] - 14:22
**objecting** [2] - 9:19, 17:19
**objection** [9] - 2:17, 5:11, 7:11, 7:15, 10:8, 14:21, 15:19, 16:5, 16:10
**obviously** [1] - 13:5
**OF** [2] - 1:2, 1:4
**offered** [2] - 5:13, 18:9
**offering** [1] - 10:17
**office** [2] - 6:10, 6:24
**officer** [1] - 6:17
**officers** [1] - 5:4
**Oleanvine** [4] - 10:1, 17:8, 17:10, 17:14
**one** [9] - 3:10, 4:6, 9:9, 12:24, 14:8, 15:24, 16:25, 19:8, 20:2
**open** [1] - 9:2
**opinion** [1] - 7:17
**opportunity** [3] - 5:2, 16:9, 16:12
**opposing** [1] - 10:5
**original** [1] - 6:11
**ourselves** [1] - 9:2
**outstanding** [1] - 2:10
**overrule** [2] - 7:10, 7:14
**owed** [1] - 7:20

## P

**pages** [6] - 4:7, 4:9, 6:4, 8:15, 9:10, 16:23
**panel** [1] - 19:5
**paper** [1] - 17:8
**papers** [1] - 10:20
**part** [1] - 8:9
**participated** [1] - 17:21
**participating** [1] - 17:12
**parties** [3] - 6:5, 14:2, 18:17
**party** [3] - 10:5, 10:7, 12:13
**past** [1] - 5:14
**PATRICIA** [2] - 1:17, 21:8
**patricia_sanders@**

**flsd.uscourts.gov** [1] - 1:19
**pay** [1] - 14:14
**Pending** [1] - 16:4
**people** [2] - 5:3, 5:5
**perhaps** [1] - 8:13
**period** [2] - 4:12, 7:22
**permitted** [1] - 3:10
**person** [4] - 6:3, 7:13, 11:6, 15:14
**person's** [1] - 6:5
**Philadelphia** [3] - 6:15, 6:18, 7:3
**Philly** [1] - 6:12
**phone** [8] - 3:22, 4:19, 5:10, 5:23, 6:6, 15:16, 17:1, 19:1
**phones** [2] - 5:20, 16:15
**photo** [1] - 8:12
**picked** [1] - 7:6
**picture** [6] - 8:24, 9:3, 14:9, 14:10, 14:24, 15:15
**pictures** [1] - 8:4
**piece** [1] - 12:6
**planning** [4] - 5:17, 6:13, 14:13, 14:18
**plans** [2] - 6:11, 17:15
**point** [5] - 12:5, 12:14, 12:17, 12:21, 13:10
**points** [1] - 9:11
**Police** [2] - 5:4, 5:9
**police** [1] - 5:4
**posit** [1] - 12:20
**posited** [1] - 2:18
**possible** [1] - 18:25
**post** [1] - 13:11
**post-arrest** [1] - 13:11
**postpone** [1] - 7:2
**potentially** [1] - 5:22
**precedential** [1] - 13:2
**prep** [1] - 2:15
**preparing** [1] - 19:20
**present** [4] - 5:18, 9:4, 11:15, 15:3
**presentations** [1] - 19:15
**presenting** [2] - 9:3, 9:9
**presumably** [1] - 12:2
**private** [1] - 6:21
**probative** [1] - 12:5
**proceedings** [1] - 21:4
**processing** [1] - 8:18
**produced** [2] - 2:13, 2:15
**progress** [2] - 8:4, 8:13

**provided** [2] - 9:15, 16:8
**provides** [1] - 14:19
**providing** [1] - 14:15
**provision** [1] - 10:19
**published** [1] - 13:2
**purpose** [2] - 8:19, 9:17
**pursue** [1] - 8:9
**put** [1] - 10:19
**putting** [1] - 10:22

## Q

**quite** [1] - 18:24
**quote** [1] - 10:14

## R

**rather** [1] - 10:18
**reach** [2] - 9:18, 13:22
**reached** [1] - 6:23
**reaches** [1] - 13:13
**read** [1] - 18:18
**ready** [1] - 16:21
**reason** [2] - 5:1, 8:9
**received** [2] - 2:12, 3:1
**recess** [1] - 19:20
**recognize** [1] - 15:17
**record** [1] - 2:4
**recordings** [1] - 5:20
**redacting** [1] - 5:23
**refer** [1] - 18:15
**reference** [1] - 18:14
**referring** [1] - 11:13
**regarding** [1] - 2:13
**relate** [2] - 17:9, 18:3
**relevant** [5] - 4:11, 6:11, 8:7, 9:15, 14:12
**remain** [1] - 2:10
**repay** [1] - 14:14
**report** [1] - 5:6
**REPORTED** [1] - 1:17
**REPORTER** [1] - 11:20
**Reporter** [1] - 1:17
**reports** [1] - 16:15
**reservations** [1] - 14:25
**reserve** [1] - 13:18
**restful** [1] - 20:2
**result** [1] - 8:10
**revealed** [1] - 2:15
**reverse** [1] - 12:18
**revised** [2] - 12:11
**robust** [1] - 12:22
**Roxanne** [4] - 9:23, 10:2, 10:3, 10:11

**RPR** [2] - 1:17, 21:8
**RS** [5] - 9:20, 9:23, 11:17, 13:6, 13:21
**RS's** [1] - 13:10
**rules** [1] - 9:12

## S

**SANDERS** [3] - 1:17, 21:6, 21:8
**Santorufo** [1] - 19:3
**schedule** [1] - 19:9
**scheduling** [2] - 18:21, 19:6
**scope** [1] - 7:12
**Sean** [2] - 1:13, 2:6
**second** [1] - 10:6
**security** [1] - 13:17
**see** [4] - 13:10, 13:21, 18:6, 20:2
**seek** [1] - 2:20
**seeking** [2] - 3:18, 17:1
**seeks** [1] - 3:5
**seized** [2] - 5:20, 11:12
**select** [2] - 8:16, 9:7
**selected** [1] - 19:7
**semi** [1] - 6:21
**semi-private** [1] - 6:21
**sending** [1] - 8:4
**sends** [1] - 14:17
**sent** [2] - 7:4, 14:24
**sentence** [1] - 12:2
**separate** [1] - 16:15
**serve** [1] - 19:11
**set** [4] - 2:23, 6:20, 18:24, 19:22
**settled** [1] - 19:24
**several** [1] - 5:4
**show** [8] - 4:14, 4:17, 5:2, 6:11, 8:7, 8:13, 9:17, 17:1
**showed** [1] - 14:18
**showing** [1] - 8:4
**shows** [2] - 4:17, 8:5
**side** [5] - 15:4, 15:7, 15:17, 17:10, 18:13
**simple** [1] - 15:20
**simply** [1] - 10:1
**single** [1] - 14:8
**six** [1] - 7:5
**Six** [1] - 12:4
**somewhat** [2] - 2:18, 13:1
**source** [1] - 7:6
**sOUTHERN** [1] - 1:2
**speaker** [1] - 12:1
**speaking** [1] - 4:17

**specific** [2] - 3:23, 14:5
**speculation** [1] - 14:23
**speed** [1] - 16:21
**St** [10] - 14:11, 14:14, 14:16, 14:18, 15:1, 15:2, 15:4, 15:6, 15:9, 15:17
**starting** [2] - 2:4, 2:10
**state** [1] - 2:3
**statement** [10] - 9:23, 10:5, 10:11, 10:23, 11:10, 11:11, 11:13, 11:17, 12:16
**statements** [7] - 7:11, 9:19, 11:17, 13:10, 13:21, 14:19, 18:3
**STATES** [4] - 1:1, 1:4, 1:10, 1:13
**States** [9] - 1:17, 2:2, 2:4, 2:6, 3:2, 11:5, 12:8, 12:17, 12:23
**staying** [1] - 15:6
**stays** [1] - 15:20
**step** [1] - 13:18
**still** [5] - 3:7, 4:7, 4:8, 9:19, 19:23
**stipulate** [2] - 5:8, 5:14
**stipulated** [1] - 6:5
**stipulation** [2] - 6:2
**substitute** [1] - 6:14
**sufficient** [1] - 11:18
**suggesting** [1] - 18:13
**suggestion** [1] - 6:1
**Suite** [1] - 1:18
**summary** [1] - 13:16
**supported** [1] - 11:19
**surgical** [2] - 8:19, 9:7
**susceptible** [1] - 13:9
**Sylvester** [3] - 9:23, 10:15, 12:7
**synchs** [1] - 19:14

## T

**tabbed** [1] - 4:6
**technology** [1] - 19:23
**teller** [1] - 10:22
**terms** [3] - 3:4, 11:16, 18:18
**testified** [1] - 13:5
**testifies** [2] - 13:5, 13:8
**testify** [4] - 5:19, 10:10, 11:1, 11:5
**testifying** [1] - 6:3
**testimony** [1] - 5:18
**THE** [55] - 1:9, 1:13,

1:15, 2:1, 2:9, 3:1, 3:12, 3:16, 3:19, 4:1, 4:5, 4:14, 4:19, 4:21, 5:7, 5:15, 5:21, 6:1, 6:9, 7:8, 7:10, 7:25, 8:2, 8:12, 8:17, 9:11, 10:9, 11:7, 11:20, 11:22, 11:24, 12:19, 14:1, 14:5, 14:12, 14:20, 15:1, 15:15, 15:19, 15:23, 16:1, 16:3, 16:6, 16:13, 16:22, 17:4, 17:7, 17:16, 18:5, 18:17, 18:22, 19:3, 19:9, 19:13, 19:18
**theory** [1] - 12:20
**Theresa** [2] - 1:15, 2:7
**thinks** [2] - 10:14
**threats** [1] - 11:2
**three** [2] - 16:14, 16:15
**timeframe** [1] - 4:11
**tomorrow** [1] - 8:22
**took** [1] - 3:24
**trafficking** [1] - 12:18
**trailing** [1] - 11:22
**transcription** [1] - 21:4
**travel** [1] - 7:1
**trial** [6] - 2:11, 2:15, 9:12, 16:21, 19:15, 19:20
**trip** [2] - 6:14, 7:2
**trustworthiness** [1] - 11:18
**truth** [4] - 10:17, 10:22, 11:8, 12:15
**try** [2] - 13:24, 19:9
**trying** [2] - 12:2, 16:20
**two** [1] - 9:9
**type** [2] - 6:1, 8:14

## U

**undercover** [2] - 6:17, 7:7
**UNITED** [3] - 1:1, 1:4, 1:13
**uNITED** [1] - 1:10
**United** [9] - 1:17, 2:2, 2:4, 2:6, 3:2, 11:5, 12:8, 12:17, 12:23
**unquote** [1] - 10:14
**unwilling** [1] - 12:7
**up** [13] - 4:10, 6:20, 6:22, 7:6, 8:6, 9:2, 10:22, 12:20, 16:21, 18:20, 19:14, 19:23, 19:24

**Up** [1] - 8:1
**upcoming** [1] - 2:11
**urgent** [1] - 7:1

## V

**value** [1] - 8:23
**Van** [1] - 1:15, 2:8, 2:12, 3:14, 5:11, 10:9, 14:20, 15:19, 16:3, 16:17, 17:16
**VAN** [24] - 2:7, 5:13, 6:7, 10:10, 11:11, 11:23, 12:1, 13:23, 14:4, 14:7, 14:22, 15:21, 15:24, 16:2, 16:4, 16:7, 16:19, 16:23, 17:17, 18:20, 18:23, 19:12, 19:16, 20:4
**versus** [3] - 2:2, 12:16, 12:23
**Vliet** [11] - 1:15, 2:8, 2:12, 3:14, 5:11, 10:9, 14:20, 15:19, 16:3, 16:17, 17:16
**VLIET** [24] - 2:7, 5:13, 6:7, 10:10, 11:11, 11:23, 12:1, 13:23, 14:4, 14:7, 14:22, 15:21, 15:24, 16:2, 16:4, 16:7, 16:19, 16:23, 17:17, 18:20, 18:23, 19:12, 19:16, 20:4
**vs** [1] - 1:5

## W

**walls** [1] - 8:6
**wants** [1] - 4:17
**way..** [1] - 13:14
**weekend** [1] - 20:1
**weight** [1] - 13:3
**whereas** [1] - 3:9
**whole** [3] - 4:3, 12:17, 17:20
**William** [1] - 15:3
**WILLIAMS** [1] - 1:9
**willing** [1] - 18:5
**winnow** [1] - 6:4
**winnowed** [2] - 2:19
**winnowing** [1] - 4:7
**Witek** [1] - 5:19
**witness** [4] - 10:21, 11:1, 12:7, 15:16
**worries** [1] - 19:3

## Y

**yourselves** [1] - 19:24