```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                    CASE NUMBER 22-CR-20191-KMW

UNITED STATES OF AMERICA


         vs.

ANDREW ALTURO FAHIE

_____

                    HEARING HELD 2-12-2024
           BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
                UNITED STATES DISTRICT COURT JUDGE
_____

APPEARANCES:

FOR THE UNITED STATES:   Kevin Gerarde, A.U.S.A.
                         Sean McLaughlin, A.U.S.A.


FOR THE DEFENDANT:       Theresa M. Van Vliet, ESQ.
                         Joyce Delgado, ESQ.


REPORTED BY:             PATRICIA SANDERS, RPR
                         United States Court Reporter
                         400 North Miami Avenue, Suite 11-3
                         Miami, FL  33128
                         T: 305.523.5528
                         Patricia_sanders@flsd.uscourts.gov.
```

```
 1              THE COURTROOM DEPUTY: Calling Case No. 22-CR-20191;
 2   United States of America versus Andrew Alturo Fahie.
 3              Counsel, please state your appearances.
 4              MR. GERARDE: Good morning, Your Honor, Kevin Gerarde
 5   on behalf of the Government.  Seated with me at counsel table
 6   is A.U.S.A Sean McLaughlin.
 7              THE COURT:  Good morning, gentlemen.
 8              MS. VAN VLIET:  Good morning, Your Honor, Theresa
 9   Van Vliet and Joyce Delgado on behalf of the defendant Andrew
10   Fahie; who is present in court.
11              THE COURT:  Good morning, counsel.
12              Good morning, Mr. Fahie.
13              THE DEFENDANT:  Good morning, Your Honor.
14              THE COURT:  Everyone may be seated.  All right.  The
15   Government has asked that this hearing be conducted under seal.
16              So, first, Mr. Gerarde, why has the Government made
17   that request?
18              MR. GERARDE:  So, Your Honor, the Government is
19   withdrawing its request to seal this hearing.
20              I advised the defense of that this morning.  We are
21   still intending to file our briefing under seal -- what we had
22   e-mailed to Your Honor and counsel -- but as far as the hearing
23   we are withdrawing our request at this time.
24              MS. VAN VLIET: And, Your Honor, the Government advised
25   us of that before we started this morning
```

```
 1                THE COURT:  Thank you for that.
 2                All right.  I have reviewed the submission by the
 3   Government that they anticipate they will be filing under seal.
 4   I have reviewed Mr. Fahie's response, as well as the cases that
 5   were submitted, and unsurprisingly there is nothing that is on
 6   all fours with this exact scenario.
 7                This not a situation, I think, like the one that Judge
 8   Middlebrooks confronted in Wilcher.  I pulled the transcript
 9   and his order where there was a question as to the record.
10                Here the record demonstrates that all 12 of the jurors
11   answered yes.  Ms. Sanders has prepared an excerpt of that
12   portion of the trial and I believe has provided that transcript
13   for the parties. And so I don't think anyone disagrees with
14   that.
15                 There has been no suggestion of any inappropriate
16   external pressure or any inappropriate information being sent
17   back to the jury room.
18                So, with that as our backdrop, I will hear from the
19   parties as to what they believe our next steps, if any, should
20   be.
21                MR. GERARDE:  So, Your Honor, it is the Government's
22   position that no further inquiry is warranted of any of the
23   jurors in this case.  And the Government thinks that this
24   situation is analogous to the Eleventh Circuit case; U.S. vs.
25   Foster 878 F.3d 1297.
```

```
 1
 2              THE COURT:  Keep your voice up if you would.
 3              MR. GERARDE:  Yes, Your Honor.  So this case where
 4   the Eleventh Circuit found that Rule 606(b) barred a Trial
 5   Court from considering post verdict post jury discharge -- a
 6   juror letter that was sent that describe the various pressures
 7   that some of the jurors had felt.
 8              And the quote is that the Eleventh Circuit has no
 9   doubt that the jurors' note in question concerns purely
10   internal matters.
11              It states that other jurors overwhelmingly bullied
12   her into focusing on only the Government's evidence, guided her
13   into disregarding all of the evidence that supported the
14   defendant's case and used their age and occupational eliteness
15   as swaying tactics during deliberations.
16              And so I think Foster is analogous to this case because
17   in this case we have a unanimous verdict on paper, we have each
18   juror polled and each juror saying yes in response to the
19   Court's question of whether the verdict that had just been
20   published was in fact their verdict.
21              And there was no request by either party to re-poll
22   the jury and thereafter the jury was discharged and relieved of
23   their roles as jurors in this case.
24              And it was only after the point of the jurors being
25   discharged that the evidence came to light.
```

```
 1
 2            I'm not sure we have a full record of what exactly
 3   transpired here, but I think it was something to the effect of
 4   two jurors staying back and saying that they were not unanimous
 5   on all counts, something to that effect.
 6             The Government's position is that is directly at
 7   odds with their clear answer to the Court's simple question
 8   after the Court had published the verdict in its entirety.
 9             Every single count begins; we the jury unanimously
10   find the defendant...
11            Every subcategory of every count says we further --
12   references that unanimity -- we further unanimously find...
13            And so the Government's position is that each of the
14   jurors heard this published unanimous verdict as to the count,
15   unanimous as to the objects unanimous as to the specified
16   unlawful activity.
17            And then the Court asked each juror is this your
18   verdict and each juror answered yes.  So upon being discharged
19   -- I say that because I don't think that there was a mistake in
20   the verdict form.
21             And I think the way that 606(b)(3) -- dealing with
22   the mistake in the verdict form that deals with clerical
23   mistakes -- that doesn't deal with second guessing or some
24   recantation or reconsideration after the jury has been
25   discharged.
```

1
2          And so in the Government's view, it doesn't matter
3    whether the reconsideration or the hesitation -- or whatever
4    statement or evidence calling into question the unanimous
5    verdict happens -- thirty minutes after the verdict, you
6    know -- three hours, thirty hours after the verdict, thirty
7    days after the verdict -- it happens after the jury is
8    discharged and it is not appropriate for the Court to consider
9    that to undo a unanimous verdict.
10              THE COURT:  Thank you, Mr. Gerarde.
11         Ms. Van Vliet.
12              MS. VAN VLIET:  Thank you, Your Honor.
13         So, let me first address this issue -- and of course
14   we have to rely on the transcript -- I can't remember right now
15   precisely what I said regarding the juror's hesitancy or
16   reticence.  I know that I recounted exactly what I saw, Your
17   Honor, as soon as I was able to indicate that to the Court.
18              THE COURT:  Yes.
19              MS. VAN VLIET:  And, Your Honor, I observed the juror
20   twice -- same juror -- once in the jury box expressing what
21   seemed to be some hesitation, to the extent that it unsettled
22   me, because I was not sure what message was trying to be
23   conveyed at the time.
24              THE COURT:  Right.
25

```
 1            MS. VAN VLIET: And even more so when she turned around
 2   and looked at me -- as she was literally exiting the jury box
 3   -- so that was twice, Your Honor.
 4            And of course I brought it to the Court's attention.  I
 5   did not ask for anything at the time because I did not think
 6   that my "Spidey" senses was a good faith basis to say, Judge,
 7   hold the jury back; they had already been discharged.
 8            And so I don't think that we are in any different
 9   position now really than we were; except now there is the
10   passage of time.
11            And so that is the defense position, Your Honor, in
12   terms of what we believe to be the sequence of events.  And I
13   do believe it takes us outside of the -- I'm grasping for the
14   word to use -- but I do believe there needs to be some inquiry,
15   Your Honor, of those two jurors.
16            If the Court believes we need the whole jury -- I
17   mean that's fine -- but I know that that would make it more
18   burdensome.  And if I remember correctly, Judge, one juror had
19   some international travel plans.
20            THE COURT:  Yes, that's correct.
21            MS. VAN VLIET:  Which might, therefore, delay the
22   process.  The concern here, Judge, is obvious.
23            I mean, I don't think anybody disputes that those two
24   jurors after they were discharged reported that the verdicts as
25   published were not their verdicts -- at least some of them.
```

1          I'm a little unclear on precisely what they said in
2   that regard; but at a minimum that one of their verdicts as
3   published was not their verdict.
4          If that's the case, then re-polling them answers the
5   question -- if they're asked again if the verdict that was
6   published -- is that your verdict; and if they say, yes, then
7   we are done.
8          We have not asked them anything more than is asked
9   in courtrooms every single day in every courtroom in this
10  country -- in the United States -- and so we know that, that
11  question isn't violative of the concerns of getting into
12  internal deliberations.
13         If they say no then the question becomes which counts
14  do those particular jurors contend now are not unanimous. And
15  the reason in particular that becomes important is because if
16  it is Count 1, which carries the mandatory minimum 10-year
17  sentence, then it kind of echoes the words of Justice Gorsuch
18  in the Ramos decision.
19         And I am not suggesting that Ramos is directly
20  applicable to the facts here -- but it is the discussion of
21  Justice Gorsuch and the others, both liberal and conservative,
22  that combined together to join in that ruling is kind of -- is
23  the Constitutional underpinning of what I believe the problem
24  is here.
25

1       The problem is -- unless we find out what it is that
2  these two jurors disagreed with in terms of publication of the
3  verdict -- then I would suggest that brings Ramos into play.
4       Again, I am not talking about getting into their
5  business; the business of how they came to the verdicts.
6       I'm not suggesting we go into whether somebody put
7  pressure -- I'm not talking about getting into the actual
8  internal issues -- and that is why we have not listened to that
9  voicemail that was left by one of the jurors on Ms. Delgado's
10 line.  We still haven't listened to it, it's been preserved,
11 and so we have no idea what it says.
12      And I get the concerns on 606 -- I am not unmindful
13 of what it says -- all we are asking is that you re-poll those
14 two jurors.  Re-read the verdict, verdict is -- read your
15 verdict, they say, yes, we are done for the day.
16      I mean, you know, we can make as many motions down
17 the road in terms of other things to preserve the record but --
18 if they say, no, then I think we have to ask individually as to
19 each count.
20      And, frankly, I'm not sure that if you did that --
21 and the answer from both jurors -- as to Count 1 was, yes, the
22 verdict as published was our verdict; I'm not sure you'd have
23 to go any further.
24       I would have to kind of think about that but the
25 real nub here that -- I mean, obviously we would ask that you

```
 1   go further, but where I see the real tension is on the
 2   mandatory minimum count.
 3           THE COURT:  All right. Let's say -- and I am playing
 4   all this out in my head -- if there is a mistrial and Mr. Fahie
 5   is retried -- it still doesn't go away...
 6           MS. VAN VLIET:  Well, the Court could of course
 7   accept a partial verdict on the other counts and still sentence
 8   him to -- whenever on those other counts -- so let's hold Count
 9   1 in abeyance for a moment.
10           You could still -- and I assume would -- accept a
11   partial verdict on 2, 3 and 4; each of which is supported by
12   other specified unlawful activity than that set forth in Count
13   1.
14           So you could still sentence him on the rest of them;
15   You have the legal ability to do it.  But if we don't find out
16   whether the problem is Count 1, the mandatory minimum, the only
17   avenue you have legally to avoid a statutorily required
18   mandatory minimum is 3553.
19           And that's why I think Count 1 -- and not getting the
20   answer to the question -- is the one particularly that poses a
21   Sixth Amendment dilemma.
22           THE COURT:  Thank you, Ms. Van Vliet.
23           MR. GERARDE:  Judge, may I make two additional
24   points.
25           THE COURT:  Yes.
```

1          MR. GERARDE:  Thanks.  So the first point I would
2     like to make is that -- this is from the jury instructions, I
3     believe, at page 14 of the instructions -- the sentence that
4     reads; if you unanimously find the defendant guilty -- this is
5     in regard to Count 1 -- you must also unanimously find whether
6     the Government has proved beyond a reasonable doubt the weight
7     of the cocaine the defendant conspired to import into the
8     United States and specify the amount in the verdict form.
9          And that verdict form has the -- the box checked that
10    the defendant is guilty of Count 1 and has the box checked that
11    he conspired to import more than five kilograms cocaine.
12         The second point I want to make is that there is a
13    very serious problem with polling just two jurors as to whether
14    their verdict was unanimous after the entire jury has been
15    discharged.
16         And the problem with that is that it allows those two
17    jurors to control the outcome of the deliberations of the body
18    as a whole.
19         THE COURT:  Well, that's what I was going to ask you
20    about, Mr. Gerarde.  You're not asking the Court to do it, but
21    if indeed I determined further inquiry or discussion is needed,
22    your suggestion is to bring the foreperson in -- and just
23    playing that out -- I cannot imagine the foreperson is going to
24    say anything other than what you would expect.
25

```
 1              That, yes, of course, it was unanimous; I would not
 2   have signed it if it was not unanimous.
 3              And then do I ask the two jurors who have brought
 4   about this issue what it is they believe happened?
 5              MR. GERARDE:  Judge, we would ask -- our position is
 6   that there is no individual inquiry of any jurors that would be
 7   appropriate in this case.  And that the limited circumstance
 8   that we could even potentially foresee -- the only potential
 9   matter we could see the Court inquiring into -- is whether
10   there was a clerical mistake in the verdict form.
11              And the reason we said that that question should be
12   posed to the foreperson is because the foreperson is the person
13   who filled out that verdict form.
14               The problem with polling two jurors now after the
15   jury's been discharged is that their answers to the Court's
16   questions will overshadow the -- the answers of the remaining
17   10 jurors.
18              Had these questions been posed prior to the jury
19   being discharged, then the obvious remedy would be, okay,
20   you're not unanimous, everyone go back in the jury room and
21   continue to deliberate.
22              THE COURT:  I did have a jury once where we got to
23   juror five and he said, no, in answer to whether or not it was
24   his verdict; and I said, okay, everybody go back to the jury
25   room.
```

1          Obvious if that would have happened that would have
2    obviated any of this discussion.
3          In any event, we are where we are.
4          All right. What is the Government's position as to
5    this voicemail?  Should we all hear it?  Should none of us hear
6    it?  At some point will it be made part of the record.
7          What is the Government's position?
8          MR. GERARDE:  Well, Judge, I think that this -- the
9    substance of this voicemail -- is going to be clearly
10   prohibited -- or I expect it will be prohibited from the
11   Court's consideration under 606(b).
12          We have no reason to believe that there is going to
13   be any allegation of any information that was extraneous to the
14   evidence presented at trial.
15          There is no reason to believe there is going to be
16   any indication of racial animus that was considered in arriving
17   at the verdict.  And so I think we are, again, required and
18   cabined to a potential clerical error.
19          I do think it important to have the voicemail
20   preserved.  But other than that, Judge, I do not believe the
21   recording should be listened to.
22          THE COURT:  I'm not sure I agree with that.  I think
23   at least both sides need to hear the recording before it is
24   made a part of this record.
25

1         MR. GERARDE:  If I might have a moment.
2         THE COURT:  Yes.
3         MR. GERARDE:  In retrospect, Judge, I think the
4    Government's preference would be to review it with defense
5    counsel and have it preserved on a separate recording device,
6    that's not a recording from defense counsel's phone, so that
7    can be made part of the record if needed.
8         THE COURT:  Oddly, that's exactly what I was going to
9    suggest.
10        MS. VAN VLIET:  Defense has no problem with that,
11   Judge.  We will have to speak to our IT "guru" to try to get
12   that accomplished and let Your Honor know.
13        THE COURT:  All right. Did you have anything further
14   Mr. Gerarde you wished to add?
15        MR. GERARDE:  No, Your Honor.
16        THE COURT:  All right. The real issue -- at least as I
17   see it at this point -- is what has been set out in the cases
18   that I have been able to find on this issue.
19        And if not stated, suggested, in Commentary Rule
20   606(b); the clear language of the text is that Courts should
21   almost never go behind a jury's verdict.
22        This is almost sacrosanct -- at least in the legal
23   world -- and so the Rule sets out the limited exceptions where
24   jurors can be questioned.
25

1          Those three exceptions are extraneous prejudicial
2    information, and there has been no indication of that --
3    although if there was something that was left on the voicemail
4    then that might alter that -- but we don't have that at this
5    time.
6          An outside influence was improperly brought.  There did
7    not appear to be any evidence of that.  There was no indication
8    by the jurors of that.
9          And then, finally, a mistake was made in entering the
10   verdict.  The case law talked about an amount that was listed
11   on a special interrogatory that wasn't the correct amount.
12         "The logical extension of allowing Courts to go
13   behind a jury verdict is the unleashing of a kind of buyer's
14   remorse where the difficult decisions that jurors make and the
15   dynamic of a jury deliberation is undone because a juror
16   decides or indicates that he or she is unsettled by a verdict."
17         The one argument that I would like to hear from the
18   parties on is this idea of the mandatory minimum somehow
19   finding its own exception to 606; that is the Constitutional
20   requirements that have been put in place over the years to
21   enhance sentences and how that may influence or guide my
22   decision here.
23         I do understand that the other counts -- the money
24   laundering -- had as subsets the specified unlawful activity
25   and those were checked off.

```
 1               But I do think that, that does not have the same -- I
 2   can't find the word I am looking for here -- I can treat that
 3   differently in essence.
 4               And I believe the defense has already indicated, yes,
 5   I can; and we have no reason to challenge that because I can
 6   sentence as I will on the money laundering convictions; whereas
 7   I don't have that discretion of the advisory guidelines.
 8               Having checked off that specified unlawful activity
 9   that might enhance the guidelines, and I think that having
10   checked that off, that specified unlawful activity -- as we
11   discussed when we were talking about the jury instructions -- I
12   don't need to make any determination of a mandatory minimum of
13   the type of activity or the weight to even consider specified
14   unlawful activity in the sentencing context.
15               And so I need to hear from both parties as to the
16   mandatory minimum argument.
17          MS. VAN VLIET:  When would the Court like to have that
18   briefing?
19          THE COURT:  I don't want this to linger any longer
20   than it has to.  I do want to give the parties the time they
21   need, though, to get to me what they believe I need to make the
22   appropriate ruling.
23          MS. VAN VLIET:  Would Friday at the latest be okay
24   with the hope and the prayer to get it to you Thursday?
25
```

1     MR. GERARDE:  We should be able to have it to Your
2  Honor by end of day Thursday.
3     THE COURT:  All right. I will give both sides until
4  Friday at noon.
5     MS. VAN VLIET:  Thank you, Your Honor.
6     THE COURT:  All right.  Is there anything else the
7  parties would like to address before we conclude here today?
8     MR. GERARDE:  Not on behalf of the Government, Your
9  Honor; thank you very much.
10    MS. VAN VLIET:  Your Honor, I have a request -- this
11 does not go to the issue at hand -- but it is as to Mr. Fahie's
12 bond.
13    THE COURT:  Sure.
14    MS. VAN VLIET:  Your Honor, if I could provide you with
15 our proposed order memorializing the discharge of the bond and
16 the release of all conditions -- would that be okay -- I will
17 make sure I get it on the docket.
18    THE COURT:  Do you want to wait and have me sign the
19 order today?
20    MS. VAN VLIET:  That would be great, Judge.  Since we
21 are here we can just run over to the Clerk's Section and get
22 this taken care of today.
23    THE COURT:  All right.  I will do so.
24    MS. VAN VLIET: Thank you, Your Honor.
25    THE COURT:  We are adjourned.

```
                         - - -

                     C E R T I F I C A T E

        I hereby certify that the foregoing is an accurate
transcription of proceedings in the above-entitled matter.


                                    /S/PATRICIA SANDERS
_____                      _____
DATE FILED                      PATRICIA SANDERS, RPR
```