UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 22-CR-20191

UNITED STATES OF AMERICA

vs.

ANDREW ALTURO FAHIE

---

ZOOM HEARING HELD 2-20-2024
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE UNITED STATES:   KEVIN GERARDE, A.U.S.A.
                         99 N.E. 4th Street
                         Miami, FL  33132

FOR THE DEFENDANT:       THERESA VAN VLIET, ESQ.
                         200 East Broward Blvd
                         Fort Lauderdale, FL 33301

REPORTED BY:             PATRICIA SANDERS, RPR
                         United States Court Reporter
                         400 North Miami Avenue, Suite 11-3
                         Miami, FL  33128
                         T: 305.523.5528
                         patricia_sanders@flsd.uscourts.gov.

1           THE COURT:  Good morning, everyone.  The Court calls
2    Case No. 22-cr-20191; United States versus Andrew Fahie.
3           Counsel, please announce your appearances for the
4    record starting with the Government.
5           MR. GERARDE:  Good morning, Your Honor, Kevin Gerarde
6    appearing on behalf of the United States.
7           THE COURT:  Good morning, Mr. Gerarde.
8           MS. VAN VLIET:  Good morning, Your Honor, Theresa Van
9    Vliet on behalf Mr. Fahie.  And as previously noted in our
10   correspondence with chambers, we waive Mr. Fahie's appearance
11   at today's Zoom proceeding.
12          THE COURT:  Thank you, Ms. Van Vliet.
13          All right.  I wanted to have a status conference
14   today to see what additional thoughts the parties had.  And,
15   Ms. Van Vliet, when I make my decision I will have Mr. Fahie
16   brought here into the courtroom for my ruling. I would not do
17   so without him.
18          But I had received briefing from the parties, and so
19   I thought it might be a good idea to have some discussion at
20   this time.
21          All right. So I will start with the Rule that governs
22   what the Court can and cannot do in this instance; and that is
23   606(b)(2).
24          There are three listed exceptions:  First, if there's
25   a question as to the verdict the juror may be subject to an

1  inquiry if extraneous prejudicial information was improperly
2  brought to the jury's attention.
3          And subsumed within that, I would imagine, press
4  accounts, someone reaching out to a juror and giving them
5  information about one of the parties; things of that nature.
6          Two, would be an outside influence was improperly
7  brought to bear on a juror. I'd always thought of that as
8  perhaps compensation for a verdict; which would of course be
9  improper.
10         Or, three, a mistake was made in entering the
11 verdict.  That was the case that counsel brought to the Court's
12 attention, the Judge Middlebrooks case in Wilcher, where there
13 was clearly some confusion on the record, in the transcript,
14 and that needed to be attended to.
15         And the fourth exception under the Supreme Court, in
16 Pena Rodriguez, is where a juror makes a clear statement -- one
17 is assuming post verdict -- that he or she relied on racial
18 stereotypes or animus to convict the defendant.
19         And in reviewing the briefing, I am unaware of any of
20 those exceptions to Rule 606 being present in our case.
21         Here what we have are comments by jurors about the
22 verdict on all counts being their verdict.
23         No one suggests that the polling, as it was done in
24 the courtroom, has been inaccurately accounted for. Everyone
25 agrees the questions were asked; the answers came.

1            No one is suggesting that somebody read something in
2   the paper or that type of thing happened.  No one is suggesting
3   any outside influence.
4            So we are in the very awkward position of not having
5   the exceptions evident here or present here.
6            Having said that, in reviewing all of the cases that
7   both sides have provided -- and I am not certain if anyone
8   cited the Snipes case -- it really is not applicable because it
9   was years later that a juror sent an email to the defense
10  attorney.
11           And in that case one of the comments by the Eleventh
12  Circuit was because of the timing, you know, the veracity of
13  the email.  But I looked at that case because in that case a
14  juror identified him or herself through the e-mail to state the
15  issue that he or she had.
16           In all the other cases, the juror's overture was
17  anonymous. And so I want to start today by asking the United
18  States; do you think that anonymity may have been a factor in
19  those cases?
20           In our case the relative immediacy -- although I
21  think it was a good twenty minutes to a half an hour after we
22  left the courtroom -- but the temporal connection and the fact
23  that there was no anonymity involved is that something that
24  takes this outside the ambit of the cases cited?
25

1               And if it doesn't, Mr. Gerarde, is it something we
2    should be concerned about as Officers of the Court?
3               MR. GERARDE:  So, Judge, I don't think that the fact
4    that -- whether or not the information brought to the Court's
5    attention was anonymous or not is determinative.
6               I think that it is something that the Court should
7    consider when the Court is considering how substantial and
8    clear the information is in terms of the allegation of the
9    juror or the jury's impropriety.  But I don't think that it's
10   determinative.
11              I think what the ultimate issue is, which is what the
12   Court started with, is that we only investigate and inquire of
13   jurors to flesh out potential violations -- not violations --
14   but evidence that would fall into one of the Rule 606(b)
15   exceptions.
16              One of those -- the three enumerated -- or the fourth
17   created by the Supreme Court.
18              And in this case, regardless of whether it was -- the
19   information was brought to the Court's attention through an
20   anonymous tip or through a known juror -- the fact remains that
21   the statement that the jury may not have been unanimous on all
22   of the counts, or something to that effect, that fleshing out
23   that issue does not -- there's no reason to believe that would
24   lead to any external influence on the jury.
25

```
 1            I think in this case, it's important to consider the
 2   juror's statement against the evidence that we have on the
 3   record.  And the evidence we have on the record is this verdict
 4   was unanimous.
 5            It was published to the entire jury, and then after it
 6   had been published, the Court asked each juror individually if
 7   this was in fact their verdict.  And the record clearly states
 8   that, yes, it was their verdict.
 9            So there is a record showing a unanimous verdict.
10   And I think that should weigh heavily in the Court's decision
11   whether to inquire further; or whether any further inquiry is
12   necessary.
13            THE COURT:  All right.  First, there appear to have
14   been several requests made by Mr. Fahie in terms of what has
15   occurred here.  And so the difficulty is determining whether
16   anything should be done, and if anything is done what that
17   "anything" is.
18            And let me say upfront, I am denying the request to
19   interview the panel.  I don't believe that is appropriate in
20   this instance; and so I am going to deny that request.
21            My focus is really on figuring out how to proceed in
22   terms of the very strict lanes I must travel in.  And let us
23   assume there is some indication that there was a not guilty on
24   one count and maybe guilty on all the others; then what are you
25   looking to have done?
```

1             Because I honestly don't know that even with that
2    record, I can do anything with this verdict.
3             So, Ms. Van Vliet.
4             MS. VAN VLIET:  First, Judge, as to 606(a) -- I mean,
5    we've all been focusing on (b)(2) but we have not focused on
6    (b)(1).  So (b)(1) talks about the inquiry into the validity of
7    a verdict or indictment -- a verdict here -- a juror may not
8    testify about any statement made or an incident that occurred
9    during the deliberations.
10            We're not looking for that.  Because remember, Judge,
11   all we have asked for is essentially the same procedure that
12   was used in Wilcher.
13            Absolutely not the same circumstances in Wilcher that
14   we have here -- but the point in referring to the procedure and
15   the questions Judge Middlebrook asked -- the republishing of
16   the verdict; are the verdicts as rendered yours?
17            Depending on the answer, it can be a very fast
18   proceeding.  But those questions we know do not talk about any
19   statement made or an incident that occurred during the jury
20   deliberations because they are questions that are asked every
21   day in every courtroom across this land.
22            Number two in 606(b)(1), the effect of anything on
23   that juror or another juror's vote.  Not asking that, just
24   asking what your vote was.
25

1                Number three, any juror's mental process concerning
2    the verdict.  Not asking that; just asking what your verdict
3    is.
4                Then it goes on to say; you may not receive an
5    affidavit or evidence of a juror's statements on those matters
6    either; as opposed to their real testimony.
7                So, I'm looking back to the first part of the
8    equation and whether if the questions that we are proposing
9    that you ask -- essentially a re-polling -- violates any of
10   those.
11               Because if it doesn't violate anything in section
12   (b)(1), we don't have to get to the exceptions to (b)(1).
13               THE COURT:  Let's say we bring in the two jurors one
14   at a time, they have a copy of the verdict form that was given.
15               Is this your verdict?  Answer yes or no.
16               "No."  Okay.
17               As to Count One, is this your verdict?
18               "Yes."  Okay.
19               And of course Count 1 is the count that is really the
20   problematic issue for Mr. Fahie because of the mandatory
21   minimum.
22                It seems to me if it's either yes or no -- I don't
23   know what you would expect to happen next.
24               MS. VAN VLIET:  So Count 1, quite frankly, is the
25   only one that ties the Court to a required sentence.

```
 1              Otherwise, you can do whatever you want in terms of
 2   sentencing.  Obviously in any Constitutional violation -- which
 3   of course we have argued underpinnings of 6th Amendment and due
 4   process violations -- there has to be some kind of prejudice
 5   other than the inherent prejudice in not having a unanimous
 6   verdict.
 7              So, if the Court is tied to a mandatory minimum where
 8   there is an indication that there is no unanimous verdict, it
 9   seems to me that appellate counsel -- obviously I'm assuming in
10   this part of the discussion that the answer to is your verdict
11   as to Count 1 your verdict and the answer is no.
12              If that plays out, Judge, then the prejudice suffered
13   by the defendant is that inherent prejudice in a violation of
14   the 6th and the 5th Amendment guarantees to an impartial jury;
15   of which unanimity is part.
16              But also to the actual practical effect of the Court
17   having no discretion to go around a 10 year minimum mandatory;
18   and so that is a very real and tangible result.
19              THE COURT:  Right.
20              MS. VAN VLIET:  And just playing this out; let's say
21   as to the safety valve exception -- and I confess, Judge, I did
22   consult with a recently retired probation officer who was a
23   supervisor in Palm Beach because I wanted to make sure that I
24   had this right.
25
```

1              Obviously this is something that is unique -- there
2    we go with that word again -- that I wanted to try to get some
3    guidance on this issue as well.
4              And 3553 is, in fact, the only statutorily permitted
5    way for a Court to go below a statutorily imposed mandatory
6    minimum sentence.  The problem with 3553 is that while the
7    Defendant can meet -- and if I could have a moment just to grab
8    my book.
9              THE COURT:  Yes, of course.
10             MS. VAN VLIET:  3553 requires certain findings as to
11   criminal history category and things like that. There is no
12   criminal history category here that's going to affect Mr.
13   Fahie.
14             The Government has said repeatedly, and I think that
15   the recordings bear this out, that there's no evidence of
16   violence or use of a gun or anything of that nature.
17              And so that would take care of subsection one,
18   subsection two, subsection three -- definitely no situation
19   that resulted in a death or serious bodily injury.
20             There is evidence in the record from which the Court
21   could find -- specifically in some of the conversations between
22   the confidential informant and Ms. Maynard -- that she was
23   number one and her son was number two.
24              And that "boy" was not an organizer, leader,
25   manager, or supervisor of the offense.

```
 1              There's evidence in the record upon which I think the
 2   Court could find that with credibility.
 3              But here is the potential issue -- if the Government
 4   does not agree -- no later than the time of the sentencing
 5   hearing the defendant has truthfully provided the Government
 6   all information and evidence the defendant has concerning the
 7   offense or offenses that were part of... blah, blah....
 8              And the fact that the defendant has no relevant or
 9   useful other information to provide, or that the Government is
10   already aware of information.
11              That won't preclude, you, the Court from determining
12   that the defendant has complied with this requirement.
13              The problem is, Judge, for the defendant to go sit
14   down with the Government and effectively make a statement is
15   going to cause a world of issues with any appeal -- subjects
16   him to potential or additional charges if the Government does
17   not believe him.
18              But the whole tenor of Section Five is that he has
19   got to make a proffer -- or not even a proffer -- a statement
20   to the Government.
21              And I think that that's going to put him in a "catch
22   22" situation.  Where he either has to tell the Government what
23   it wants to hear, or he can't get the benefit of the safety
24   valve, and therefore the Court cannot go below a 10 year
25   mandatory minimum.
```

```
 1              Again, this is a unique situation, and this is a case
 2   that has had some real issues.  And I think that it might
 3   behoove us to find out if we have yet another one.
 4              THE COURT:  Let me say this -- I'm not sure if the
 5   parties have discussed some sort of resolution of this issue
 6   outside of further inquiry as to the verdict -- but perhaps
 7   that is something that should be explored.
 8              Because the verdict in some ways -- and the issue that
 9   has arisen -- in some way mirrors this litigation and how it
10   has unfolded in terms of the travails and issues that the
11   parties have confronted.
12              I think that it is an indication of how any panel of
13   jurors might respond to the evidence in terms of Mr. Fahie's
14   guilt or innocence.  It is also an indication of how trials
15   tend to evolve; which is not necessarily consonant with our
16   expectations.
17              So perhaps you should have those discussions; because
18   it appears to me that were the parties to find some avenue of
19   redress or resolution -- obviously both sides would have the
20   ability to present whatever they wished for the Court to
21   consider at sentencing.
22              I also think that -- while not a consideration under
23   the "Rule" -- I think there's always the overarching question
24   of the perception of the integrity of the process.
25
```

1           And I think that it is important that both sides are
2  sensitive to and cognizant of that as well when considering the
3  posture we find ourselves in.
4           So, those are my thoughts; and what I wanted to share
5  that with the parties in terms of our moving forward in any
6  event.
7           All right. I had thought to reconvene in person on
8  Friday; unless of course the parties believe that additional
9  time would be fruitful.
10          MS. VAN VLIET:  Let me say first of all, I appreciate
11 the Court's comments.  Obviously without going into anything
12 that would -- well, I think it's fair to say that Mr. Gerarde
13 and I have had some discussions, and I am hoping to have some
14 further discussions.
15          And I will leave it right there.
16          THE COURT:  Understood.
17          MS. VAN VLIET: With that said, Judge, I think a little
18 more time might be helpful.
19          THE COURT:  All right. Understanding that this matter
20 needs to be resolved sooner rather than later, Ms. Van Vliet,
21 how much time would you like?
22          MS. VAN VLIET:  Judge, I would ask for -- and I know it
23 sounds like a big gap -- if you could give us until March 7th
24 that would be great.
25          THE COURT:  All right.

```
 1              MS. VAN VLIET:  That gives me enough time to have at
 2   least another couple of sessions with Mr. Fahie.
 3              THE COURT:  All right.
 4              Mr. Gerarde, how does that date sound?
 5              MR. GERARDE:  No objection, Your Honor.  Aside from
 6   the Government continuing to speak with the defense does the
 7   Court wish anything further from the parties between now and
 8   then?
 9              THE COURT:  Only if -- I will continue my research --
10   and I'm assuming you will too, if you learn of a decision or
11   you're informed of a case elsewhere then please advise the
12   Court and let opposing counsel know.
13              MR. GERARDE:  Thank you, Your Honor.
14              THE COURT: All right. I have some time in the morning
15   on the the 7th of next month.  So, I will set it down at 10
16   o'clock on March 7th
17              Thank you all for being available this morning.  I
18   appreciate the excellent briefing.  As I said from the start,
19   this has been a very unusual case in many respects.
20              That said, there are still, I think, fairly set rules
21   that govern our situation.  I just want to make certain that we
22   have identified them and that we are charting the appropriate
23   course.
24              And so I thank you for your continued assistance.  I
25   will see everybody on March 7th at 10 o'clock in the morning.
```

- - -

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.


/S/PATRICIA SANDERS

_____                    _____

DATE FILED                    PATRICIA SANDERS, RPR

| / | 15:5 | B | compensation [1] - 3:8 | created [1] - 5:17 |
|---|---|---|---|---|
| /S/PATRICIA [1] - 15:7 | absolutely [1] - 7:13 |  | complied [1] - 11:12 | credibility [1] - 11:2 |
|  | accounted [1] - 3:24 | b)(1 [2] - 7:6, 8:12 | concerned [1] - 5:2 | criminal [2] - 10:11, 10:12 |
| **1** | accounts [1] - 3:4 | b)(1) [2] - 7:6, 8:12 | concerning [2] - 8:1, 11:6 |  |
|  | accurate [1] - 15:4 | b)(2 [1] - 7:5 | conference [1] - 2:13 | **D** |
| 1 [3] - 8:19, 8:24, 9:11 | actual [1] - 9:16 | Beach [1] - 9:23 | confess [1] - 9:21 |  |
| 10 [4] - 9:17, 11:24, 14:15, 14:25 | additional [3] - 2:14, 11:16, 13:8 | bear [2] - 3:7, 10:15 | confidential [1] - 10:22 | DATE [1] - 15:9 |
| 11-3 [1] - 1:18 | advise [1] - 14:11 | behalf [2] - 2:6, 2:9 | confronted [1] - 12:11 | date [1] - 14:4 |
|  | affect [1] - 10:12 | behoove [1] - 12:3 | confusion [1] - 3:13 | death [1] - 10:19 |
| **2** | affidavit [1] - 8:5 | below [2] - 10:5, 11:24 | connection [1] - 4:22 | decision [3] - 2:15, 6:10, 14:10 |
|  | agree [1] - 11:4 | benefit [1] - 11:23 | consider [3] - 5:7, 6:1, 12:21 | defendant [7] - 3:18, 9:13, 11:5, 11:6, 11:8, 11:12, 11:13 |
| 2-20-2024 [1] - 1:9 | agrees [1] - 3:25 | between [2] - 10:21, 14:7 | consideration [1] - 12:22 | Defendant [1] - 10:7 |
| 200 [1] - 1:16 | allegation [1] - 5:8 | big [1] - 13:23 | considering [2] - 5:7, 13:2 | DEFENDANT [1] - 1:15 |
| 22 [1] - 11:22 | ALTURO [1] - 1:6 | blah [1] - 11:7 | consonant [1] - 12:15 | defense [2] - 4:9, 14:6 |
| 22-cr-20191 [1] - 2:2 | ambit [1] - 4:24 | blah... [1] - 11:7 | Constitutional [1] - 9:2 | definitely [1] - 10:18 |
| 22-CR-20191 [1] - 1:3 | Amendment [2] - 9:3, 9:14 | Blvd [1] - 1:16 | consult [1] - 9:22 | deliberations [2] - 7:9, 7:20 |
|  | AMERICA [1] - 1:4 | bodily [1] - 10:19 | continue [1] - 14:9 | deny [1] - 6:20 |
| **3** | Andrew [1] - 2:2 | book [1] - 10:8 | continued [1] - 14:24 | denying [1] - 6:18 |
|  | ANDREW [1] - 1:6 | boy [1] - 10:24 | continuing [1] - 14:6 | determinative [2] - 5:5, 5:10 |
| 305.523.5528 [1] - 1:19 | animus [1] - 3:18 | briefing [3] - 2:18, 3:19, 14:18 | conversations [1] - 10:21 | determining [2] - 6:15, 11:11 |
| 33128 [1] - 1:19 | announce [1] - 2:3 | bring [1] - 8:13 | convict [1] - 3:18 | difficulty [1] - 6:15 |
| 33132 [1] - 1:14 | anonymity [2] - 4:18, 4:23 | brought [6] - 2:16, 3:2, 3:7, 3:11, 5:4, 5:19 | copy [1] - 8:14 | discretion [1] - 9:17 |
| 33301 [1] - 1:16 | anonymous [3] - 4:17, 5:5, 5:20 | Broward [1] - 1:16 | correspondence [1] - 2:10 | discussed [1] - 12:5 |
| 3553 [3] - 10:4, 10:6, 10:10 | answer [3] - 7:17, 9:10, 9:11 | BY [1] - 1:17 | counsel [3] - 3:11, 9:9, 14:12 | discussion [2] - 2:19, 9:10 |
|  | Answer [1] - 8:15 |  | Counsel [1] - 2:3 | discussions [3] - 12:17, 13:13, 13:14 |
| **4** | answers [1] - 3:25 | **C** | Count [4] - 8:17, 8:19, 8:24, 9:11 | DISTRICT [3] - 1:1, 1:2, 1:10 |
|  | appeal [1] - 11:15 |  | count [2] - 6:24, 8:19 | DIVISION [1] - 1:2 |
| 400 [1] - 1:18 | appear [1] - 6:13 | cannot [2] - 2:22, 11:24 | counts [2] - 3:22, 5:22 | done [4] - 3:23, 6:16, 6:25 |
| 4th [1] - 1:13 | appearance [1] - 2:10 | care [1] - 10:17 | couple [1] - 14:2 | down [2] - 11:14, 14:15 |
|  | appearances [2] - 1:12, 2:3 | case [14] - 1:3, 3:11, 3:12, 3:20, 4:8, 4:11, 4:13, 4:20, 5:18, 6:1, 12:1, 14:11, 14:19 | course [6] - 3:8, 8:19, 9:3, 10:9, 13:8, 14:23 | due [1] - 9:3 |
| **5** | appearing [1] - 2:6 | Case [1] - 2:2 | COURT [16] - 1:1, 1:10, 2:1, 2:7, 2:12, 6:13, 8:13, 9:19, 10:9, 12:4, 13:16, 13:19, 13:25, 14:3, 14:9, 14:14 | during [2] - 7:9, 7:19 |
|  | appellate [1] - 9:9 | cases [4] - 4:6, 4:16, 4:19, 4:24 |  |  |
| 5th [1] - 9:14 | applicable [1] - 4:8 | catch [1] - 11:21 |  | **E** |
|  | appreciate [2] - 13:10, 14:18 | category [2] - 10:11, 10:12 |  |  |
| **6** | appropriate [2] - 6:19, 14:22 | certain [3] - 4:7, 10:10, 14:21 | Court [21] - 1:18, 2:1, 2:22, 3:15, 5:2, 5:6, 5:7, 5:12, 5:17, 6:6, 8:25, 9:7, 9:16, 10:5, 10:20, 11:2, 11:11, 11:24, 12:20, 14:7, 14:12 | e-mail [1] - 4:14 |
|  | argued [1] - 9:3 | certify [1] - 15:4 |  | East [1] - 1:16 |
| 606 [1] - 3:20 | arisen [1] - 12:9 | chambers [1] - 2:10 |  | effect [3] - 5:22, 7:22, 9:16 |
| 606(a [1] - 7:4 | Aside [1] - 14:5 | charges [1] - 11:16 |  | effectively [1] - 11:14 |
| 606(b [1] - 5:14 | assistance [1] - 14:24 | charting [1] - 14:22 |  | either [3] - 8:6, 8:22, 11:22 |
| 606(b)(1 [1] - 7:22 | assume [1] - 6:23 | Circuit [1] - 4:12 | Court's [5] - 3:11, 5:4, 5:19, 6:10, 13:11 | Eleventh [1] - 4:11 |
| 606(b)(2) [1] - 2:23 | assuming [3] - 3:17, 9:9, 14:10 | circumstances [1] - 7:13 | courtroom [4] - 2:16, 3:24, 4:22, 7:21 | elsewhere [1] - 14:11 |
| 6th [2] - 9:3, 9:14 | attended [1] - 3:14 | cited [2] - 4:8, 4:24 |  | email [2] - 4:9, 4:13 |
|  | attention [4] - 3:2, 3:12, 5:5, 5:19 | clear [2] - 3:16, 5:8 |  | entering [1] - 3:10 |
| **7** | attorney [1] - 4:10 | clearly [2] - 3:13, 6:7 |  | entire [1] - 6:5 |
|  | available [1] - 14:17 | cognizant [1] - 13:2 |  | entitled [1] - 15:5 |
| 7th [4] - 13:23, 14:15, 14:16, 14:25 | Avenue [1] - 1:18 | comments [3] - 3:21, 4:11, 13:11 |  |  |
|  | avenue [1] - 12:18 |  |  |  |
| **9** | aware [1] - 11:10 |  |  |  |
|  | awkward [1] - 4:4 |  |  |  |
| 99 [1] - 1:13 |  |  |  |  |
|  |  |  |  |  |
| **A** |  |  |  |  |
|  |  |  |  |  |
| A.U.S.A [1] - 1:13 |  |  |  |  |
| ability [1] - 12:20 |  |  |  |  |
| above-entitled [1] - |  |  |  |  |

**enumerated** [1] - 5:16
**equation** [1] - 8:8
**ESQ** [1] - 1:15
**essentially** [2] - 7:11, 8:9
**event** [1] - 13:6
**evidence** [9] - 5:14, 6:2, 6:3, 8:5, 10:15, 10:20, 11:1, 11:6, 12:13
**evident** [1] - 4:5
**evolve** [1] - 12:15
**excellent** [1] - 14:18
**exception** [2] - 3:15, 9:21
**exceptions** [5] - 2:24, 3:20, 4:5, 5:15, 8:12
**expect** [1] - 8:23
**expectations** [1] - 12:16
**explored** [1] - 12:7
**external** [1] - 5:24
**extraneous** [1] - 3:1

**F**

**fact** [6] - 4:22, 5:3, 5:20, 6:7, 10:4, 11:8
**factor** [1] - 4:18
**FAHIE** [1] - 1:6
**Fahie** [7] - 2:2, 2:9, 2:15, 6:14, 8:20, 10:13, 14:2
**Fahie's** [2] - 2:10, 12:13
**fair** [1] - 13:12
**fairly** [1] - 14:20
**fall** [1] - 5:14
**fast** [1] - 7:17
**figuring** [1] - 6:21
**FILED** [1] - 15:9
**findings** [1] - 10:10
**first** [5] - 2:24, 6:13, 7:4, 8:7, 13:10
**Five** [1] - 11:18
**FL** [3] - 1:14, 1:16, 1:19
**flesh** [1] - 5:13
**fleshing** [1] - 5:22
**FLORIDA** [1] - 1:2
**focus** [1] - 6:21
**focused** [1] - 7:5
**focusing** [1] - 7:5
**FOR** [2] - 1:13, 1:15
**foregoing** [1] - 15:4
**form** [1] - 8:14
**Fort** [1] - 1:16
**forward** [1] - 13:5
**fourth** [2] - 3:15, 5:16

**frankly** [1] - 8:24
**Friday** [1] - 13:8
**fruitful** [1] - 13:9

**G**

**gap** [1] - 13:23
**Gerarde** [4] - 2:5, 2:7, 5:1, 13:12
**GERARDE** [5] - 1:13, 2:5, 5:3, 14:5, 14:13
**gerarde** [1] - 14:4
**given** [1] - 8:14
**govern** [1] - 14:21
**Government** [10] - 2:4, 10:14, 11:3, 11:5, 11:9, 11:14, 11:16, 11:20, 11:22, 14:6
**governs** [1] - 2:21
**grab** [1] - 10:7
**great** [1] - 13:24
**guarantees** [1] - 9:14
**guidance** [1] - 10:3
**guilt** [1] - 12:14
**guilty** [2] - 6:23, 6:24
**gun** [1] - 10:16

**H**

**half** [1] - 4:21
**hear** [1] - 11:23
**HEARING** [1] - 1:9
**hearing** [1] - 11:5
**heavily** [1] - 6:10
**HELD** [1] - 1:9
**helpful** [1] - 13:18
**hereby** [1] - 15:4
**herself** [1] - 4:14
**history** [2] - 10:11, 10:12
**honestly** [1] - 7:1
**Honor** [4] - 2:5, 2:8, 14:5, 14:13
**HONORABLE** [1] - 1:9
**hoping** [1] - 13:13
**hour** [1] - 4:21

**I**

**idea** [1] - 2:19
**identified** [2] - 4:14, 14:22
**imagine** [1] - 3:3
**immediacy** [1] - 4:20
**impartial** [1] - 9:14
**important** [2] - 6:1, 13:1
**imposed** [1] - 10:5
**improper** [1] - 3:9

**improperly** [2] - 3:1, 3:6
**impropriety** [1] - 5:9
**inaccurately** [1] - 3:24
**incident** [2] - 7:8, 7:19
**indication** [4] - 6:23, 9:8, 12:12, 12:14
**indictment** [1] - 7:7
**individually** [1] - 6:6
**influence** [3] - 3:6, 4:3, 5:24
**informant** [1] - 10:22
**information** [8] - 3:1, 3:5, 5:4, 5:8, 5:19, 11:6, 11:9, 11:10
**informed** [1] - 14:11
**inherent** [2] - 9:5, 9:13
**injury** [1] - 10:19
**innocence** [1] - 12:14
**inquire** [2] - 5:12, 6:11
**inquiry** [4] - 3:1, 6:11, 7:6, 12:6
**instance** [2] - 2:22, 6:20
**integrity** [1] - 12:24
**interview** [1] - 6:19
**investigate** [1] - 5:12
**involved** [1] - 4:23
**issue** [8] - 4:15, 5:11, 5:23, 8:20, 10:3, 11:3, 12:5, 12:8
**issues** [3] - 11:15, 12:2, 12:10

**J**

**JUDGE** [1] - 1:10
**Judge** [10] - 3:12, 5:3, 7:4, 7:10, 7:15, 9:12, 9:21, 11:13, 13:17, 13:22
**juror** [11] - 2:25, 3:4, 3:7, 3:16, 4:9, 4:14, 5:9, 5:20, 6:6, 7:7, 7:23
**juror's** [5] - 4:16, 6:2, 7:23, 8:1, 8:5
**jurors** [4] - 3:21, 5:13, 8:13, 12:13
**jury** [5] - 5:21, 5:24, 6:5, 7:19, 9:14
**jury's** [2] - 3:2, 5:9

**K**

**KATHLEEN** [1] - 1:9
**Kevin** [1] - 2:5
**KEVIN** [1] - 1:13
**kind** [1] - 9:4
**known** [1] - 5:20

**L**

**land** [1] - 7:21
**lanes** [1] - 6:22
**Lauderdale** [1] - 1:16
**lead** [1] - 5:24
**leader** [1] - 10:24
**learn** [1] - 14:10
**least** [1] - 14:2
**leave** [1] - 13:15
**left** [1] - 4:22
**listed** [1] - 2:24
**litigation** [1] - 12:9
**looked** [1] - 4:13
**looking** [3] - 6:25, 7:10, 8:7

**M**

**mail** [1] - 4:14
**manager** [1] - 10:25
**mandatory** [5] - 8:20, 9:7, 9:17, 10:5, 11:25
**March** [3] - 13:23, 14:16, 14:25
**matter** [2] - 13:19, 15:5
**matters** [1] - 8:5
**Maynard** [1] - 10:22
**mean** [1] - 7:4
**meet** [1] - 10:7
**mental** [1] - 8:1
**mIAMI** [1] - 1:2
**Miami** [3] - 1:14, 1:18, 1:19
**Middlebrook** [1] - 7:15
**Middlebrooks** [1] - 3:12
**might** [4] - 2:19, 12:2, 12:13, 13:18
**minimum** [5] - 8:21, 9:7, 9:17, 10:6, 11:25
**minutes** [1] - 4:21
**mirrors** [1] - 12:9
**mistake** [1] - 3:10
**moment** [1] - 10:7
**month** [1] - 14:15
**morning** [7] - 2:1, 2:5, 2:7, 2:8, 14:14, 14:17, 14:25
**moving** [1] - 13:5
**MR** [4] - 2:5, 5:3, 14:5, 14:13
**MS** [9] - 2:8, 7:4, 8:24, 9:20, 10:10, 13:10, 13:17, 13:22, 14:1
**must** [1] - 6:22

**N**

**N.E** [1] - 1:13
**nature** [2] - 3:5, 10:16
**necessarily** [1] - 12:15
**necessary** [1] - 6:12
**needed** [1] - 3:14
**needs** [1] - 13:20
**next** [2] - 8:23, 14:15
**North** [1] - 1:18
**noted** [1] - 2:9
**Number** [3] - 1:3, 7:22, 8:1
**number** [2] - 10:23

**O**

**o'clock** [2] - 14:16, 14:25
**objection** [1] - 14:5
**obviously** [5] - 9:2, 9:9, 10:1, 12:19, 13:11
**occurred** [3] - 6:15, 7:8, 7:19
**OF** [2] - 1:2, 1:4
**of..** [1] - 11:7
**offense** [2] - 10:25, 11:7
**offenses** [1] - 11:7
**officer** [1] - 9:22
**Officers** [1] - 5:2
**one** [13] - 3:5, 3:16, 3:23, 4:1, 4:2, 4:11, 5:14, 6:24, 8:13, 8:25, 10:17, 10:23, 12:3
**One** [2] - 5:16, 8:17
**opposed** [1] - 8:6
**opposing** [1] - 14:12
**organizer** [1] - 10:24
**Otherwise** [1] - 9:1
**ourselves** [1] - 13:3
**outside** [4] - 3:6, 4:3, 4:24, 12:6
**overarching** [1] - 12:23
**overture** [1] - 4:16

**P**

**Palm** [1] - 9:23
**panel** [2] - 6:19, 12:12
**paper** [1] - 4:2
**part** [4] - 8:7, 9:10, 9:15, 11:7
**parties** [9] - 2:14, 2:18, 3:5, 12:5, 12:11, 12:18, 13:5, 13:8, 14:7

**PATRICIA** [2] - 1:17, 15:9
**patricia_sanders@ flsd.uscourts.gov** [1] - 1:20
**Pena** [1] - 3:16
**perception** [1] - 12:24
**perhaps** [3] - 3:8, 12:6, 12:17
**permitted** [1] - 10:4
**person** [1] - 13:7
**playing** [1] - 9:20
**plays** [1] - 9:12
**point** [1] - 7:14
**polling** [2] - 3:23, 8:9
**position** [1] - 4:4
**post** [1] - 3:17
**posture** [1] - 13:3
**potential** [3] - 5:13, 11:3, 11:16
**practical** [1] - 9:16
**preclude** [1] - 11:11
**prejudice** [4] - 9:4, 9:5, 9:12, 9:13
**prejudicial** [1] - 3:1
**present** [3] - 3:20, 4:5, 12:20
**press** [1] - 3:3
**previously** [1] - 2:9
**probation** [1] - 9:22
**problem** [2] - 10:6, 11:13
**problematic** [1] - 8:20
**procedure** [2] - 7:11, 7:14
**proceed** [1] - 6:21
**proceeding** [2] - 2:11, 7:18
**proceedings** [1] - 15:5
**process** [3] - 8:1, 9:4, 12:24
**proffer** [2] - 11:19
**proposing** [1] - 8:8
**provide** [1] - 11:9
**provided** [2] - 4:7, 11:5
**published** [2] - 6:5, 6:6
**put** [1] - 11:21

**Q**

**questions** [5] - 3:25, 7:15, 7:18, 7:20, 8:8
**quite** [1] - 8:24

**R**

**racial** [1] - 3:17
**rather** [1] - 13:20

**re** [1] - 8:9
**re-polling** [1] - 8:9
**reaching** [1] - 3:4
**read** [1] - 4:1
**real** [3] - 8:6, 9:18, 12:2
**really** [3] - 4:8, 6:21, 8:19
**reason** [1] - 5:23
**receive** [1] - 8:4
**received** [1] - 2:18
**recently** [1] - 9:22
**reconvene** [1] - 13:7
**record** [9] - 2:4, 3:13, 6:3, 6:7, 6:9, 7:2, 10:20, 11:1
**recordings** [1] - 10:15
**redress** [1] - 12:19
**referring** [1] - 7:14
**regardless** [1] - 5:18
**relative** [1] - 4:20
**relevant** [1] - 11:8
**relied** [1] - 3:17
**remains** [1] - 5:20
**remember** [1] - 7:10
**rendered** [1] - 7:16
**repeatedly** [1] - 10:14
**REPORTED** [1] - 1:17
**Reporter** [1] - 1:18
**republishing** [1] - 7:15
**request** [2] - 6:18, 6:20
**requests** [1] - 6:14
**required** [1] - 8:25
**requirement** [1] - 11:12
**requires** [1] - 10:10
**research** [1] - 14:9
**resolution** [2] - 12:5, 12:19
**resolved** [1] - 13:20
**respects** [1] - 14:19
**respond** [1] - 12:13
**result** [1] - 9:18
**resulted** [1] - 10:19
**retired** [1] - 9:22
**reviewing** [2] - 3:19, 4:6
**Rodriguez** [1] - 3:16
**RPR** [2] - 1:17, 15:9
**Rule** [4] - 2:21, 3:20, 5:14, 12:23
**rules** [1] - 14:20
**ruling** [1] - 2:16

**S**

**safety** [2] - 9:21, 11:23

**SANDERS** [3] - 1:17, 15:7, 15:9
**section** [1] - 8:11
**Section** [1] - 11:18
**see** [2] - 2:14, 14:25
**sensitive** [1] - 13:2
**sent** [1] - 4:9
**sentence** [2] - 8:25, 10:6
**sentencing** [3] - 9:2, 11:4, 12:21
**serious** [1] - 10:19
**sessions** [1] - 14:2
**set** [2] - 14:15, 14:20
**several** [1] - 6:14
**share** [1] - 13:4
**showing** [1] - 6:9
**sides** [3] - 4:7, 12:19, 13:1
**sit** [1] - 11:13
**situation** [4] - 10:18, 11:22, 12:1, 14:21
**Snipes** [1] - 4:8
**someone** [1] - 3:4
**son** [1] - 10:23
**sooner** [1] - 13:20
**sort** [1] - 12:5
**sound** [1] - 14:4
**sounds** [1] - 13:23
**sOUTHERN** [1] - 1:2
**specifically** [1] - 10:21
**start** [3] - 2:21, 4:17, 14:18
**started** [1] - 5:12
**starting** [1] - 2:4
**state** [1] - 4:14
**statement** [7] - 3:16, 5:21, 6:2, 7:8, 7:19, 11:14, 11:19
**statements** [1] - 8:5
**STATES** [4] - 1:1, 1:4, 1:10, 1:13
**states** [1] - 6:7
**States** [4] - 1:18, 2:2, 2:6, 4:18
**status** [1] - 2:13
**statutorily** [2] - 10:4, 10:5
**stereotypes** [1] - 3:18
**still** [1] - 14:20
**Street** [1] - 1:13
**strict** [1] - 6:22
**subject** [1] - 2:25
**subjects** [1] - 11:15
**subsection** [3] - 10:17, 10:18
**substantial** [1] - 5:7
**subsumed** [1] - 3:3
**suffered** [1] - 9:12

**suggesting** [2] - 4:1, 4:2
**suggests** [1] - 3:23
**Suite** [1] - 1:18
**supervisor** [2] - 9:23, 10:25
**Supreme** [2] - 3:15, 5:17

**T**

**talks** [1] - 7:6
**tangible** [1] - 9:18
**temporal** [1] - 4:22
**tend** [1] - 12:15
**tenor** [1] - 11:18
**terms** [7] - 5:8, 6:14, 6:22, 9:1, 12:10, 12:13, 13:5
**testify** [1] - 7:8
**testimony** [1] - 8:6
**THE** [17] - 1:9, 1:13, 1:15, 2:1, 2:7, 2:12, 6:13, 8:13, 9:19, 10:9, 12:4, 13:16, 13:19, 13:25, 14:3, 14:9, 14:14
**therefore** [1] - 11:24
**Theresa** [1] - 2:8
**THERESA** [1] - 1:15
**thoughts** [2] - 2:14, 13:4
**three** [5] - 2:24, 3:10, 5:16, 8:1, 10:18
**tied** [1] - 9:7
**ties** [1] - 8:25
**timing** [1] - 4:12
**tip** [1] - 5:20
**today** [2] - 2:14, 4:17
**today's** [1] - 2:11
**transcript** [1] - 3:13
**transcription** [1] - 15:5
**travails** [1] - 12:10
**travel** [1] - 6:22
**trials** [1] - 12:14
**truthfully** [1] - 11:5
**try** [1] - 10:2
**twenty** [1] - 4:21
**Two** [1] - 3:6
**two** [4] - 7:22, 8:13, 10:18, 10:23
**type** [1] - 4:2

**U**

**ultimate** [1] - 5:11
**unanimity** [1] - 9:15
**unanimous** [5] - 5:21, 6:4, 6:9, 9:5, 9:8

**unaware** [1] - 3:19
**under** [2] - 3:15, 12:22
**underpinnings** [1] - 9:3
**understood** [1] - 13:16
**unfolded** [1] - 12:10
**unique** [2] - 10:1, 12:1
**UNITED** [3] - 1:1, 1:4, 1:13
**uNITED** [1] - 1:10
**United** [4] - 1:18, 2:2, 2:6, 4:17
**unless** [1] - 13:8
**unusual** [1] - 14:19
**upfront** [1] - 6:18
**useful** [1] - 11:9

**V**

**validity** [1] - 7:6
**valve** [2] - 9:21, 11:24
**VAN** [10] - 1:15, 2:8, 7:4, 8:24, 9:20, 10:10, 13:10, 13:17, 13:22, 14:1
**Van** [5] - 2:8, 2:12, 2:15, 7:3, 13:20
**veracity** [1] - 4:12
**verdict** [25] - 2:25, 3:8, 3:11, 3:17, 3:22, 6:3, 6:7, 6:8, 6:9, 7:2, 7:7, 7:16, 8:2, 8:14, 8:15, 8:17, 9:6, 9:8, 9:10, 9:11, 12:6, 12:8
**verdicts** [1] - 7:16
**versus** [1] - 2:2
**violate** [1] - 8:11
**violates** [1] - 8:9
**violation** [2] - 9:2, 9:13
**violations** [3] - 5:13, 9:4
**violence** [1] - 10:16
**VLIET** [10] - 1:15, 2:8, 7:4, 8:24, 9:20, 10:10, 13:10, 13:17, 13:22, 14:1
**Vliet** [5] - 2:9, 2:12, 2:15, 7:3, 13:20
**vote** [2] - 7:23, 7:24
**vs** [1] - 1:5

**W**

**waive** [1] - 2:10
**wants** [1] - 11:23
**ways** [1] - 12:8
**weigh** [1] - 6:10

**whole** [1] - 11:18
**Wilcher** [3] - 3:12, 7:12, 7:13
**WILLIAMS** [1] - 1:9
**wish** [1] - 14:7
**wished** [1] - 12:20
**word** [1] - 10:2
**world** [1] - 11:15

### Y

**year** [2] - 9:17, 11:24
**years** [1] - 4:9

### Z

**ZOOM** [1] - 1:9
**Zoom** [1] - 2:11