UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
<u>MIAMI DIVISION</u>
CASE NUMBER 22-CR-20191-KMW

UNITED STATES OF AMERICA

    **vs.**

ANDREW ALTURO FAHIE

---

<u>HEARING HELD 3-7-2024</u>
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

<u>APPEARANCES:</u>

FOR THE UNITED STATES:    **Kevin Gerarde, A.U.S.A.**
                                         **Sean McLaughlin, A.U.S.A.**

FOR THE DEFENDANT:       Theresa M. Van Vliet, ESQ.
                                         **Joyce Delgado, ESQ.**

REPORTED BY:              PATRICIA SANDERS, RPR
                               United States Court Reporter
                               400 North Miami Avenue, Suite 11-3
                               Miami, FL 33128
                               T: 305.523.5528
                               patricia_sanders@flsd.uscourts.gov.

1          THE COURT:  The Court calls Case No. 22-20191,

2     United States versus Fahie.

3          Counsel, please announce your appearances for the

4     record.

5          MR. GERARDE:  Good morning, Your Honor.  Kevin

6     Gerarde and Jonathan Colan appearing on behalf of the

7     Government.

8          THE COURT:  Good morning.

9          MS. VAN VLIET:  Good morning, Your Honor, Theresa

10    Van Vliet and Joyce Delgado appearing on behalf of defendant

11    Fahie who is present in court.

12         THE COURT:  Good morning.  Good morning, Mr. Fahie.

13    All right.  We're here today for a final hearing on our, for

14    lack of a better characterization, our 606 juror issue.

15    Parties have briefed the matter and I have heard argument.  So

16    I think it's appropriate to recap what got us here, which I

17    believe there are no disputes -- there is no dispute.

18         As to the facts on Thursday, February 8th, late

19    afternoon, early evening, the jury in this matter returned a

20    verdict finding Mr. Fahie guilty on all accounts of the

21    indictment.

22         After the verdict was announced, the Government, I

23    think it was you, Mr. Gerarde, asked that I poll the jury.  I

24    did so, and each juror answered, yes, this is my verdict.

25    After the jury was discharged, Ms. Van Vliet pointed out for

1   the record that she and Ms. Delgado had observed Juror number

2   11 -- number 11, Ms. Garcia, had hesitated before she answered.

3          I think the record will show that I acknowledged that

4   fact.  I had observed a hesitation, but I remarked that it was

5   confident with her deportment as I had observed it the two

6   weeks we were here in trial.

7          Now I don't -- I don't think we discussed this at

8   length.  I think there was an observation, but I think it

9   important now to catalog is one thing I don't think anyone

10  disputes when Juror number 12, Mr. Bowen was asked, is this

11  your verdict?

12         He did not hesitate and answered.  Yes.  So after,

13  again, the jurors were discharged, Government lawyers were

14  packing boxes, retrieving evidence, as was the defense.

15         We've discussed what time elapsed.  Various periods

16  have been given.  I'm going to rely on record corroboration,

17  but I think it was closer to a half an hour because I was ready

18  to get in the elevator and leave.

19         It was brought to my attention by Mr. Santorufo.

20  Jurors 11 and 12 had stayed behind.  He, of course was going in

21  and out of the jury room, getting materials for the Government

22  and their certificates.

23         They had stayed behind and started a conversation

24  with him about the verdict, suggesting it wasn't unanimous as

25  to all counts.

1              He stopped that conversation.  He found me as I was

2     going to leave.  And I found all of you and I think Ms. Van

3     Vliet was almost to her car.

4              In any event, that's not really germane.  We all

5     reconvened.  And after discussion with the parties brought the

6     jurors in and I discharged them stating that we might be

7     reaching out to the jury for further inquiry and investigation

8     bringing us to today.

9              Does anyone have any dispute about how I've cited our

10    record and the facts underlying the record?

11             MR. GERARDE:  Judge, not from the Government as to

12    that.  I think it's also important to note that Juror 12 had

13    left a voice mail for the defense.

14             THE COURT:  Okay.

15             MR. GERARDE:  I'm not sure that's been made a part of

16    the record yet.

17             THE COURT:  Yes, you're right.  That is a voice mail

18    I have not reviewed, I've asked the parties to review and

19    that'll bring us to the factors under 606.

20             But, yes, and it was that evening.  And then the next

21    day, Ms. Delgado picked up the phone thinking it was a law

22    firm, realized who it was and essentially said, oh, I can't

23    speak to you.

24             MS. VAN VLIET:  Judge, that's basically correct.

25    There were phone calls to Ms. Delgado's phone who was standing

5

```
 1    right next to me, and she can correct me if I'm wrong or later

 2    herself.  The evening of the verdict, after we had returned,

 3    they were unanswered.

 4              THE COURT:  Okay.

 5              MS. VAN VLIET:  The next day there was a phone call

 6    sometime in the morning hours before 1 o'clock or so in the

 7    afternoon, a phone call at -- again, unanswered and a

 8    voice-mail left.  She had not listened to the voice mail.

 9              There were multiple phone calls, the phone call in

10    the morning of the day after the verdict, that'd be Friday, and

11    voice mail left, not listened to.

12              Another phone call early in the afternoon.  At this

13    point in time, Ms. Delgado answers thinking it is not a law,

14    but an associate of Mr. Fahie, Devon Osborne, who we've been

15    dealing with.  He's not a lawyer.

16              THE COURT:  Okay.

17              MS. VAN VLIET:  Oh, sorry.  She didn't answer that

18    call.  She then called the number back thinking it was Mr.

19    Osborne.  The only other addition that I would have to the

20    Court's factual recitation, which based on my recollection by

21    the way is accurate is that Ms. Garcia is indeed, we caught her

22    looking at it during the polling.

23              THE COURT:  Okay.

24              MS. VAN VLIET:  But I, again, saw her look back at me

25    over her shoulder as she was leaving after she's already been
```

1    discharged.  I'm  not sure it makes a difference.

2              THE COURT:  Right.  And we are engaged in this

3    because at least from my perspective, I want parties, the

4    public, everyone, to be assured that this matter was fully

5    addressed within the bounds of the law, of course.

6              And while I didn't see that, and I don't know that

7    Mr. Gerarde saw it, I don't think anyone disputes either you or

8    Ms. Delgado in your recitation of what transpired.

9              So I think that can go under the non-disruptive

10   category. All right.  And then, so -- so with those facts, I

11   ask, as I said earlier, the parties to breach the matter.

12             I think in large part again, the governing law is not

13   disputed.  We -- we would start our review here of what next

14   steps, if any, to take under rule 606 B2, which prohibits any

15   inquiry into the internal processes of a jury, but provides

16   three exceptions to that.

17             And that is where extraneous prejudicial information

18   was improperly brought to the jury's attention, when an outside

19   influence was improperly brought to bear on any juror or see a

20   mistake was made in entering the verdict on the verdict

21   form.

22             So I view that as, you know, undue publicity being

23   part of the jury deliberative process or somebody going to --

24   to the Google and outside influence, meaning some kind of

25   benefit being offered to a juror to vote in a certain way and a

7

1    mistake was made. And we all look to Judge Middlebrooks case,

2    which the defense cited is an example of that.  A fourth

3    exception exists under a Supreme Court interpretation of the

4    parameters of Rule 606; And that's Pena Rodriguez.

5         When a juror makes clear that he or she relied on

6    racial stereotypes or animus to convict the defendant.  I

7    believe there is no dispute about, again, the parameters of 606

8    and the Court's capacity to go behind the verdict.

9         I believe that none of the four factors are evident

10   in this case.  With that, Ms. Van Vliet raised a constitutional

11   dimension to the verdict with regard to Count I and the

12   mandatory minimum.

13        Now I know the Government has responded.  Again, I

14   don't think there's any dispute that some of the cases they

15   cited where Courts have said it was appropriate for a court or

16   it would've been inappropriate for a court to go behind the

17   verdict.

18        It was appropriate for the court not to in those

19   instances, and they involved mandatory minimums.  But as Ms.

20   Van Vliet countered this particular issue, as best any of us

21   can tell, has not been addressed.

22        So with that, I ask the parties, I think I have

23   accurately summarized the legal landscape.  Does anyone have

24   any dispute about what I've summarized?

25

1          MR. GERARDE:  Your Honor, the Government doesn't

2     dispute the law that the Court has summarized.  But just to

3     reiterate, the Government's position from the start has been

4     that since there is no reasonable belief that any further

5     inquiry of these two jurors would lead to any evidence that

6     would fall into one of the three enumerated exceptions of 606 B

7     for the -- the fourth Pena Rodriguez exception.  Our position

8     is that any further inquiry of these jurors is inappropriate.

9          THE COURT:  Okay.

10          MS. VAN VLIET:  Judge, I think you accurately set

11     forth the lay of the land legally on the Rule 606 and Pena

12     Rodriguez exception.

13          Obviously we've suggested a different path, a much

14     more narrow path that we don't think is in implicated by Rule

15     606.  I don't know whether that's chapter two of the Court's

16     recitation but --

17          THE COURT:  Yes.  I just want to make sure, again,

18     because we had so many miscues.  I just want to make sure in

19     both a factual context and the legal context, we are all on the

20     same page in terms of what had been presented, what was not

21     disputed. And then chapter two will be where we go from that.

22          MS. VAN VLIET:  Judge, I do want to note for the

23     record, that we reserve on the potential argument in an

24     appellate setting, that if that perhaps a situation could arise

25     under the Sixth Amendment, where another judicially engrafted

```
 1   exception dealing with unanimity -- a unanimous birth verdict
 2   may obtain.  But I don't think that we're here -- that's here
 3   right now.  I just don't want there to be any confusion that we
 4   reserve to make that argument on the back end, depending on
 5   what the court answers.
 6            THE COURT:  Okay.
 7            MS. VAN VLIET:  Chapter two.
 8            THE COURT:  I think I understand, but you might have
 9   to clarify that in a moment, Ms. Van Vliet.
10            MS. VAN VLIET:  Will do.
11            THE COURT:  All right.  So that, as I said, brings us
12   to today.  I have received additional filings from the
13   Government.  I only have one question about that.
14            The supplement with the Government file, the
15   Government is not asking me, I hope, to ask the questions that
16   were asked in what was the case, United States versus Norwood.
17   Because I think Mr. Gerarde, we had all agreed, if there were
18   any questions asked, they would be maybe three or four, and
19   they were very limited.
20            But nobody wants me to ask, what did you call about?
21   Is there anything else you'd like to add?  You're not saying I
22   should do that, right?
23            MR. GERARDE:  Your Honor, I agree.
24            THE COURT:  Okay.
25
```

```
 1              MR. GERARDE:  We are not asking for a wide ranging
 2    inquiry into these jurors.
 3              THE COURT:  Okay.
 4              MR. GERARDE:  Well, I guess we'll get to what
 5    questions the Court is going to ask.
 6              THE COURT:  I just wanted to make sure I understood
 7    that.  So bringing us to today, my understanding, Ms. Van
 8    Vliet, is Ms. Garcia has been subpoenaed and Mr. Santorufo, is
 9    she here?  All right.  Ms. Garcia is here, and Mr. Bowen,
10    however, he's an elusive fellow.  Or perhaps not even here,
11    perhaps on vacation.  We don't know.  Okay.
12              MS. VAN VLIET:  That's correct, Judge.
13              THE COURT:  All right.  Well, here's what I propose
14    to do and consonant with what we have discussed at the previous
15    two hearings.  And it's I think consonant with the law that
16    states clearly, and let me make it formally part of the record.
17              The law that prohibits a Court from considering
18    post-verdict, post discharge communications that discuss
19    various internal deliberations of the jury, pressures coercions
20    of the deliberative process.
21              And that's United States versus Foster 878 F.3d 1297.
22    The Courts, I believe engage in rare unanimity that the
23    internal workings of a jury are not to be explored
24    post-verdict.
25
```

1           And the hesitancy and the prohibition stems from the

2     concern that attacking verdicts -- post-verdict in an

3     interrogation of jurors, an investigation would allow inquiries

4     in the hope of invalidating verdicts.

5           Jurors would not only be as I think the Court in the

6     United States versus Siegelman, and that is 640 F.3d 1159 poses

7     the concern that jurors would be deceived and harassed by the

8     defeated party in an effort to secure some basis to set a

9     verdict aside.

10          It would also operate to give jurors the appropriate

11    and unwarranted idea that the process they engage in with their

12    fellow jurors can somehow be unilaterally done by their

13    expression of either remorse, hesitation or some way of

14    purging, I guess their conscience of what they find troubling.

15          All of that is behind Rule 606.  But I think all of

16    us agreed at an earlier hearing, not as to this course of

17    action, but as to the very limited inquiry I could make, was to

18    whether or not verdict was Ms. Garcia's verdict and receive her

19    answer and get no more.

20          And so with that in mind, I want to share with the

21    parties what I propose to do.  See if I understand your

22    objections, you don't have to reiterate what we've talked

23    about.

24          I just want to know in this narrow window if there is

25    a problem with the way or the questions I propose.

1      I propose bringing Ms. Garcia in.  I propose advising

2  her that we are following up on matters that happened after the

3  verdict was rendered.

4      I will of course have sworn her in. I will tell her

5  I'm going to ask her just three questions.  She's only to

6  answer yes or no, to give me no other answer.

7      I'll ask her if she served as a juror.  I'll ask her

8  if she recalls that they returned a verdict in open Court on

9  Thursday, February 8th.

10      I'll ask her does she recall I polled each of the

11  jurors as to their verdict and that I am going to again, read

12  the verdict and ask if it is her verdict.

13       So those are my first questions.

14      Does anyone have any issue with that?

15      MS. VAN VLIET:  No, Your Honor,

16      MR. GERARDE:  Judge, the Government is fine up until

17  the last part, and I think the -- the timing is important.

18      THE COURT:  Okay.

19      MR. GERARDE:  I think the question is, when you were

20  polled was this your verdict?  It's not, is this your verdict

21  today?

22      Because what the juror or any juror thinks about

23  their verdict today is irrelevant. What's important is what the

24  juror's verdict was when they walked out of the room and when

25  they were polled.

1              THE COURT:  Okay.  But I think that's valid that I am

2    going to ask her.  When she was polled, she indicated that the

3    verdict was hers.  And I want her to affirm that.

4              So I'll ask her at that time did you answer, did you

5    answer correctly?  I had a lot of time thinking about this

6    people.

7              MR. GERARDE:  Judge, can you repeat the question

8    you're going to ask about the prior poll?

9              THE COURT:  You will recall I polled each of you, I

10   asked each of you individually if that is your verdict,

11   correct?

12             Yes.

13             You'll recall you answered yes, correct?

14             Yes.

15             Was that, in fact, your verdict, Ms. Garcia?  If she

16   says no, then I'll go to Count I.

17             MR. GERARDE:  Right.

18             THE COURT: And her answer to Count 1 is that -- is

19   where we stopped.  If she says yes, then -- then we really --

20   we don't have anything to talk about.

21             MR. GERARDE:  I understand, Judge.  I think from the

22   Government's position, what's important is that Ms. Garcia

23   acknowledged what her verdict was at the time the verdict was

24   published and she was polled.

25

```
1            THE COURT: Let me be clear, the reason I did not -- I

2    wasn't going to ask her that, is because that was one of the

3    facts that wasn't in dispute.

4            We all agreed she said yes.  The record shows she

5    said yes, so okay.

6            Government, if that's where you want to go, that's

7    the way I'll go.  But there's no dispute about that now.

8            Anything further, Ms. Van Vliet?

9            MS. VAN VLIET:  Other than no, we don't have any

10   objection.

11           THE COURT:  All right..  Let me make sure -- and it's

12   been a few weeks -- if indeed she says, no, that wasn't my

13   verdict, and I go over the verdict form with her, should she

14   have a copy of the indictment, I don't know that she would

15   recall what Count I was.

16           MR. COLAN:  Perhaps it might make more sense just to

17   give her a copy of the verdict form because that sets forth it

18   in Count I he's charged with X, Y, Z.

19           MR. GERARDE:  Judge, I concur, I was going to suggest

20   the verdict form as well.

21           THE COURT: All right.  With that is everyone ready?

22           MS. VAN VLIET:  Yes, ma'am.

23           MR. GERARDE:  Yes, Judge.

24           THE COURT:  All right.  Bring in Ms. Garcia.

25
```

1           THE COURTROOM DEPUTY:  All rise.

2           THE COURT:  Everyone may be seated.  Ms. Garcia, if

3    you would raise your right hand.  Mr. Santorufo is going to

4    swear you in.

5                    WITNESS SWORN

6           THE COURT: Go ahead and be seated.  Good morning.

7           MS. GARCIA:  Good morning.

8           THE COURT:  If you would just, again, for the record,

9    please state your full name.

10          MS. GARCIA:  Sabrina Garcia.

11          THE COURT:  All right.  Ms. Garcia, I've asked you in

12   today because I want to ask you a few questions that arose

13   after the verdict given in this case.

14          And the questions are all designed so that you can

15   very simply answer yes or no.  So let's start with the fact

16   that you served as a juror in the matter of United States

17   versus Andrew Fahie about three or four weeks ago; is that

18   correct.

19          MS. GARCIA:  Yes.

20          THE COURT:  Okay.  And my recollection, and I looked

21   at the record, on Thursday, February 8th, late afternoon, early

22   evening, the jury returned a verdict in the matter; is that

23   correct?

24          MS. GARCIA:  Correct.

25

1          THE COURT:  Okay.  And you'll recall, I -- I brought

2    the jury in, the verdict was delivered and afterward I polled,

3    I asked each juror whether or not that was their verdict.  And

4    do you recall that?

5          MS. GARCIA:  Correct.

6          THE COURT:  Okay.  And at the time that I asked you,

7    was that your verdict you answered yes; is that correct?

8          MS. GARCIA:  Yes.

9          THE COURT:  I am going to ask you again, Ms. Garcia,

10   at the time -- well, let me just ask you again, the verdict

11   that was rendered on February 8th, was that your verdict?

12         MS. GARCIA:  Yes.  At the time that I answered that.

13         THE COURT:  Okay.  All right.  Then let me ask you to

14   step out and I don't think I'll have any more questions, but I

15   might.  So if you would give us a moment.

16         THE COURTROOM DEPUTY: All rise.

17         THE COURT:  Everyone may be seated.  Well, I think --

18   I think we're done.  I think it was important to brief this

19   matter.  I think it was important to explore this matter and I

20   think it was important to be totally transparent in this

21   matter.

22         But with the, yes, there is no room at all to

23   maneuver and I don't propose we do.  So, Ms. Van Vliet, I know

24   you will have an objection or some argument, but --

25

1           MS. VAN VLIET:  I'm just going to reserve something

2   if I might, Judge.

3           THE COURT:  Sure.

4           MS. VAN VLIET:  I am just reserving on stopping the

5   inquiry because that wasn't, at least as I recall, the

6   questions that the Court was going to do.  And once again, Ms.

7   Garcia is throwing I believe a monkey wrench into things.

8           Because she said yes, delayed, and then said at the

9   time and not appropriately, the conversation ended right there

10  because as we had all agreed, it was supposed to be yes or no.

11          But we are going to reserve on filing on that issue.

12  I don't have any other arguments to make.  I wouldn't think

13  that the Court is going to entertain any right now anyway, so

14          THE COURT:  As far as anything else you believe that

15  needs to be done or -- or discussed with Ms. Garcia here?

16          MR. GERARDE:  No, Judge.  Thank you.

17          THE COURT:  All right.  Would the parties like me to

18  discharge her in open court or should I just discharge her from

19  the jury room?

20          MS. VAN VLIET:  I'm fine with that, Judge, if she's

21  discharged from the jury room. And that would give her an

22  opportunity feel comfortable as she departs.

23          THE COURT:  All right.  I will ask Mr. Santorufo and

24  Ms. Singh to go back together and tell her thank you so much

25  and do not allow any conversation.

```
1              Just tell Ms. Garcia we appreciate it and she may go.
2   All right.  With that I think this moots the Government's
3   motion with regard to the foreperson, but again, one of the
4   reasons I did not think it at all necessary to bring the
5   foreperson in is because there was no question that that was
6   going to be the foreperson's answer to the questions.
7              I don't think we need to speak with -- although I am
8   perplexed as to Mr. Bowen's absence -- I am perplexed; I will
9   just leave it at that.  He was like a lesser player in this --
10  in this saga.  He did not hesitate to answer yes.  So I don't
11  know that I am going to reconvene to hear from the elusive Mr.
12  Bowen.
13             MS. VAN VLIET:  Your Honor, I hear what you're
14  saying.  Again, we'll reserve on that.  I recognize the Court
15  has not heard the voice mail, so, you know, we'll be filing, I
16  expect to swift in consistent ruling, but we'll preserve the
17  record in that manner.
18             THE COURT:  I asked the parties to review it, not for
19  again, finding any underlying processes or content, but to see
20  if it fell in one of the four categories because that I think
21  would've been important to consider.  But I did not hear that
22  from the parties, so I'm not sure...
23             MS. VAN VLIET:  Understood, Judge.  I don't know
24  whether, frankly, I apologize, I don't know whether you were on
25  the bench when I said that.
```

1        It appears that Mr. Bowen's truck has been in the

2   same place in his driveway -- the truck hasn't moved -- so it

3   appears we may be dealing with a vacation kind of thing rather

4   than evasion of service.  And I just wanted to put that on the

5   record as well.

6        THE COURT:  Oh, okay.

7        MS. VAN VLIET:  So I did not want any suggestion that

8   he's actively trying to evade service.

9        THE COURT:  Got it.

10        MS. VAN VLIET:  Thank you, Your Honor.

11        That is all I have.

12        THE COURT: Mr. Gerarde, anything else on behalf of

13   the United States?

14        MR. GERARDE:  Nothing, Judge.

15        THE COURT: All right.  I will set a schedule

16   accordingly as to post verdict motions as well as a sentencing

17   date.  We are adjourned on this particular matter.

18                HEARING CONCLUDED

19

20

21

22

23

24

25

```
 1

 2                              -   -   -

 3                    C E R T I F I C A T E

 4         I hereby certify that the foregoing is an accurate

 5   transcription of proceedings in the above-entitled matter.

 6

 7                                    /S/PATRICIA SANDERS

 8   _____                 _____

 9   DATE FILED                  PATRICIA SANDERS, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/S/PATRICIA** [1] - 20:7

## 1

**1** [2] - 5:6, 13:18
**11** [3] - 3:2, 3:20
**11-3** [1] - 1:17
**1159** [1] - 11:6
**12** [3] - 3:10, 3:20, 4:12
**1297** [1] - 10:21

## 2

**22-20191** [1] - 2:1
**22-CR-2019-KMW** [1] - 1:2

## 3

**3-7-2024** [1] - 1:8
**305.523.5528** [1] - 1:18
**33128** [1] - 1:17

## 4

**400** [1] - 1:17

## 6

**606** [9] - 2:14, 4:19, 6:14, 7:4, 7:7, 8:6, 8:11, 8:15, 11:15
**640** [1] - 11:6

## 8

**878** [1] - 10:21
**8th** [4] - 2:18, 12:9, 15:21, 16:11

## A

**A.U.S.A** [2] - 1:12, 1:12
**above-entitled** [1] - 20:5
**absence** [1] - 18:8
**accordingly** [1] - 19:16
**accounts** [1] - 2:20
**accurate** [2] - 5:21, 20:4
**accurately** [2] - 7:23, 8:10
**acknowledged** [2] - 3:3, 13:23

**action** [1] - 11:17
**actively** [1] - 19:8
**add** [1] - 9:21
**addition** [1] - 5:19
**additional** [1] - 9:12
**addressed** [2] - 6:5, 7:21
**adjourned** [1] - 19:17
**advising** [1] - 12:1
**affirm** [1] - 13:3
**afternoon** [2] - 2:19, 5:7, 5:12, 15:21
**ago** [1] - 15:17
**agree** [1] - 9:23
**agreed** [4] - 9:17, 11:16, 14:4, 17:10
**ahead** [1] - 15:6
**allow** [2] - 11:3, 17:25
**almost** [1] - 4:3
**ALTURO** [1] - 1:6
**Amendment** [1] - 8:25
**AMERICA** [1] - 1:3
**Andrew** [1] - 15:17
**ANDREW** [1] - 1:6
**animus** [1] - 7:6
**announce** [1] - 2:3
**announced** [1] - 2:22
**answer** [10] - 5:17, 11:19, 12:6, 13:4, 13:5, 13:18, 15:15, 18:6, 18:10
**answered** [6] - 2:24, 3:2, 3:12, 13:13, 16:7, 16:12
**answers** [2] - 5:13, 9:5
**anyway** [1] - 17:13
**apologize** [1] - 18:24
**appearances** [2] - 1:11, 2:3
**appearing** [2] - 2:6, 2:10
**appellate** [1] - 8:24
**appreciate** [1] - 18:1
**appropriate** [4] - 2:16, 7:15, 7:18, 11:10
**appropriately** [1] - 17:9
**argument** [4] - 2:15, 8:23, 9:4, 16:24
**arguments** [1] - 17:12
**arise** [1] - 8:24
**arose** [1] - 15:12
**aside** [1] - 11:9
**associate** [1] - 5:14
**assured** [1] - 6:4
**attacking** [1] - 11:2
**attention** [2] - 3:19, 6:18
**Avenue** [1] - 1:17

## B

**B2** [1] - 6:14
**based** [1] - 5:20
**basis** [1] - 11:8
**bear** [1] - 6:19
**behalf** [3] - 2:6, 2:10, 19:12
**behind** [5] - 3:20, 3:23, 7:8, 7:16, 11:15
**belief** [1] - 8:4
**bench** [1] - 18:25
**benefit** [1] - 6:25
**best** [1] - 7:20
**better** [1] - 2:14
**birth** [1] - 9:1
**bounds** [1] - 6:5
**Bowen** [3] - 3:10, 10:9, 18:12
**Bowen's** [2] - 18:8, 19:1
**boxes** [1] - 3:14
**breach** [1] - 6:11
**brief** [1] - 16:18
**briefed** [1] - 2:15
**bring** [2] - 4:19, 18:4
**Bring** [1] - 14:24
**bringing** [3] - 4:8, 10:7, 12:1
**brings** [1] - 9:11
**brought** [5] - 3:19, 4:5, 6:18, 6:19, 16:1
**BY** [1] - 1:16

## C

**capacity** [1] - 7:8
**car** [1] - 4:3
**case** [6] - 1:2, 2:1, 7:1, 7:10, 9:16, 15:13
**cases** [1] - 7:14
**catalog** [1] - 3:9
**categories** [1] - 18:20
**category** [1] - 6:10
**caught** [1] - 5:21
**certain** [1] - 6:25
**certificates** [1] - 3:22
**certify** [1] - 20:4
**Chapter** [1] - 9:7
**chapter** [2] - 8:15, 8:21
**characterization** [1] - 2:14
**charged** [1] - 14:18
**cited** [3] - 4:9, 7:2, 7:15
**clarify** [1] - 9:9
**clear** [2] - 7:5, 14:1

**clearly** [1] - 10:16
**closer** [1] - 3:17
**coercions** [1] - 10:19
**Colan** [1] - 2:6
**COLAN** [1] - 14:16
**comfortable** [1] - 17:22
**communications** [1] - 10:18
**concern** [2] - 11:2, 11:7
**CONCLUDED** [1] - 19:18
**concur** [1] - 14:19
**confident** [1] - 3:5
**confusion** [1] - 9:3
**conscience** [1] - 11:14
**consider** [1] - 18:21
**considering** [1] - 10:17
**consistent** [1] - 18:16
**consonant** [2] - 10:14, 10:15
**constitutional** [1] - 7:10
**content** [1] - 18:19
**context** [2] - 8:19
**conversation** [4] - 3:23, 4:1, 17:9, 17:25
**convict** [1] - 7:6
**copy** [2] - 14:14, 14:17
**correct** [8] - 4:24, 5:1, 10:12, 13:11, 13:13, 15:18, 15:23, 16:7
**Correct** [2] - 15:24, 16:5
**correctly** [1] - 13:5
**corroboration** [1] - 3:16
**Counsel** [1] - 2:3
**Count** [5] - 7:11, 13:16, 13:18, 14:15, 14:18
**countered** [1] - 7:20
**counts** [1] - 3:25
**course** [4] - 3:20, 6:5, 11:16, 12:4
**court** [6] - 2:11, 7:15, 7:16, 7:18, 9:5, 17:18
**COURT** [47] - 1:1, 1:9, 2:1, 2:8, 2:12, 4:14, 4:17, 5:4, 5:16, 5:23, 6:2, 8:9, 8:17, 9:6, 9:8, 9:11, 9:24, 10:3, 10:6, 10:13, 12:18, 13:1, 13:9, 13:18, 14:1, 14:11, 14:21,

14:24, 15:2, 15:6, 15:8, 15:11, 15:20, 16:1, 16:6, 16:9, 16:13, 16:17, 17:3, 17:14, 17:17, 17:23, 18:18, 19:6, 19:9, 19:12, 19:15
**Court** [11] - 1:16, 2:1, 7:3, 8:2, 10:5, 10:17, 11:5, 12:8, 17:6, 17:18, 18:14
**Court's** [3] - 5:20, 7:8, 8:15
**COURTROOM** [2] - 15:1, 16:16
**Courts** [2] - 7:15, 10:22

## D

**date** [1] - 19:17
**DATE** [1] - 20:9
**dealing** [3] - 5:15, 9:1, 19:3
**deceived** [1] - 11:7
**defeated** [1] - 11:8
**DEFENDANT** [1] - 1:14
**defendant** [2] - 2:10, 7:6
**defense** [3] - 3:14, 4:13, 7:2
**delayed** [1] - 17:8
**Delgado** [6] - 1:14, 2:10, 3:1, 4:21, 5:13, 6:8
**Delgado's** [1] - 4:25
**deliberations** [1] - 10:19
**deliberative** [2] - 6:23, 10:20
**delivered** [1] - 16:2
**departs** [1] - 17:22
**deportment** [1] - 3:5
**DEPUTY** [2] - 15:1, 16:16
**designed** [1] - 15:14
**Devon** [1] - 5:14
**difference** [1] - 6:1
**different** [1] - 8:13
**dimension** [1] - 7:11
**discharge** [3] - 10:18, 17:18
**discharged** [5] - 2:25, 3:13, 4:6, 6:1, 17:21
**discuss** [1] - 10:18
**discussed** [4] - 3:7, 3:15, 10:14, 17:15
**discussion** [1] - 4:5
**dispute** [8] - 2:17, 4:9,

7:7, 7:14, 7:24, 8:2, 14:3, 14:7

**disputed** [2] - 6:13, 8:21

**disputes** [3] - 2:17, 3:10, 6:7

**disruptive** [1] - 6:9

**DISTRICT** [3] - 1:1, 1:1, 1:9

**DIVISION** [1] - 1:2

**done** [3] - 11:12, 16:18, 17:15

**driveway** [1] - 19:2

**during** [1] - 5:22

## E

**early** [3] - 2:19, 5:12, 15:21

**effort** [1] - 11:8

**either** [2] - 6:7, 11:13

**elapsed** [1] - 3:15

**elevator** [1] - 3:18

**elusive** [2] - 10:10, 18:11

**end** [1] - 9:4

**ended** [1] - 17:9

**engage** [2] - 10:22, 11:11

**engaged** [1] - 6:2

**engrafted** [1] - 8:25

**entering** [1] - 6:20

**entertain** [1] - 17:13

**entitled** [1] - 20:5

**enumerated** [1] - 8:6

**ESQ** [2] - 1:14, 1:14

**essentially** [1] - 4:22

**evade** [1] - 19:8

**evasion** [1] - 19:4

**evening** [4] - 2:19, 4:20, 5:2, 15:22

**event** [1] - 4:4

**evidence** [2] - 3:14, 8:5

**evident** [1] - 7:9

**example** [1] - 7:2

**exception** [4] - 7:3, 8:7, 8:12, 9:1

**exceptions** [2] - 6:16, 8:6

**exists** [1] - 7:3

**expect** [1] - 18:16

**explore** [1] - 16:19

**explored** [1] - 10:23

**expression** [1] - 11:13

**extraneous** [1] - 6:17

## F

**F.3d** [2] - 10:21, 11:6

**fact** [3] - 3:4, 13:15, 15:15

**factors** [2] - 4:19, 7:9

**facts** [4] - 2:18, 4:10, 6:10, 14:3

**factual** [2] - 5:20, 8:19

**FAHIE** [1] - 1:6

**Fahie** [6] - 2:2, 2:11, 2:12, 2:20, 5:14, 15:17

**fall** [1] - 8:6

**far** [1] - 17:14

**February** [4] - 2:18, 12:9, 15:21, 16:11

**fell** [1] - 18:20

**fellow** [2] - 10:10, 11:12

**few** [2] - 14:12, 15:12

**file** [1] - 9:14

**FILED** [1] - 20:9

**filing** [2] - 17:11, 18:15

**filings** [1] - 9:12

**final** [1] - 2:13

**fine** [2] - 12:16, 17:20

**firm** [1] - 4:22

**first** [1] - 12:13

**FL** [1] - 1:17

**FLORIDA** [1] - 1:1

**following** [1] - 12:2

**FOR** [2] - 1:12, 1:14

**foregoing** [1] - 20:4

**foreperson** [2] - 18:3, 18:5

**foreperson's** [1] - 1:16

**form** [4] - 6:21, 14:13, 14:17, 14:20

**formally** [1] - 10:16

**forth** [2] - 8:11, 14:17

**Foster** [1] - 10:21

**four** [4] - 7:9, 9:18, 15:17, 18:20

**fourth** [2] - 7:2, 8:7

**frankly** [1] - 18:24

**Friday** [1] - 5:10

**full** [1] - 15:9

**fully** [1] - 6:4

## G

**Garcia** [15] - 3:2, 5:21, 10:8, 10:9, 12:1, 13:15, 13:22, 14:24, 15:2, 15:10, 15:11, 16:9, 17:7, 17:15, 18:1

**GARCIA** [7] - 15:7, 15:10, 15:19, 15:24, 16:5, 16:8, 16:12

**Garcia's** [1] - 11:18

**Gerarde** [6] - 1:12, 2:6, 2:23, 6:7, 9:17, 19:12

**GERARDE** [16] - 2:5, 4:11, 4:15, 8:1, 9:23, 10:1, 10:4, 12:16, 12:19, 13:7, 13:17, 13:21, 14:19, 14:23, 17:16, 19:14

**germane** [1] - 4:4

**given** [2] - 3:16, 15:13

**Google** [1] - 6:24

**governing** [1] - 6:12

**Government** [12] - 2:7, 2:22, 3:13, 3:21, 4:11, 7:13, 8:1, 9:13, 9:14, 9:15, 12:16, 14:6

**Government's** [3] - 8:3, 13:22, 18:2

**guess** [2] - 10:4, 11:14

**guilty** [1] - 2:20

## H

**half** [1] - 3:17

**hand** [1] - 15:3

**harassed** [1] - 11:7

**hear** [3] - 18:11, 18:13, 18:21

**heard** [2] - 2:15, 18:15

**HEARING** [2] - 1:8, 19:18

**hearing** [2] - 2:13, 11:16

**hearings** [1] - 10:15

**HELD** [1] - 1:8

**hereby** [1] - 20:4

**herself** [1] - 5:2

**hesitancy** [1] - 11:1

**hesitate** [2] - 3:12, 18:10

**hesitated** [1] - 3:2

**hesitation** [2] - 3:4, 11:13

**Honor** [7] - 2:5, 2:9, 8:1, 9:23, 12:15, 18:13, 19:10

**HONORABLE** [1] - 1:9

**hope** [2] - 9:15, 11:4

**hour** [1] - 3:17

**hours** [1] - 5:6

## I

**idea** [1] - 11:11

**implicated** [1] - 8:14

**important** [9] - 3:9, 4:12, 12:17, 12:23,

13:22, 16:18, 16:19, 16:20, 18:21

**improperly** [2] - 6:18, 6:19

**inappropriate** [2] - 7:16, 8:8

**indeed** [2] - 5:21, 14:12

**indicated** [1] - 13:2

**indictment** [2] - 2:21, 14:14

**individually** [1] - 13:10

**influence** [2] - 6:19, 6:24

**information** [1] - 6:17

**inquiries** [1] - 11:3

**inquiry** [7] - 4:7, 6:15, 8:5, 8:8, 10:2, 11:17, 17:5

**instances** [1] - 7:19

**internal** [3] - 6:15, 10:19, 10:23

**interpretation** [1] - 7:3

**interrogation** [1] - 11:3

**invalidating** [1] - 11:4

**investigation** [2] - 4:7, 11:3

**involved** [1] - 7:19

**irrelevant** [1] - 12:23

**issue** [4] - 2:14, 7:20, 12:14, 17:11

## J

**Jonathan** [1] - 2:6

**Joyce** [2] - 1:14, 2:10

**Judge** [16] - 4:11, 4:24, 7:1, 8:10, 8:22, 10:12, 12:16, 13:7, 13:21, 14:19, 14:23, 17:2, 17:16, 17:20, 18:23, 19:14

**JUDGE** [1] - 1:9

**judicially** [1] - 8:25

**juror** [10] - 2:14, 2:24, 6:19, 6:25, 7:5, 12:7, 12:22, 15:16, 16:3

**Juror** [3] - 3:1, 3:10, 4:2

**juror's** [1] - 12:24

**jurors** [10] - 3:13, 4:6, 8:5, 8:8, 10:2, 11:3, 11:7, 11:10, 11:12, 12:11

**Jurors** [2] - 3:20, 11:5

**jury** [13] - 2:19, 2:23, 2:25, 3:21, 4:7, 6:15, 6:23, 10:19, 10:23,

15:22, 16:2, 17:19, 17:21

**jury's** [1] - 6:18

## K

**KATHLEEN** [1] - 1:9

**Kevin** [2] - 1:12, 2:5

**kind** [2] - 6:24, 19:3

## L

**lack** [1] - 2:14

**land** [1] - 8:11

**landscape** [1] - 7:23

**large** [1] - 6:12

**last** [1] - 12:17

**late** [2] - 2:18, 15:21

**law** [7] - 4:21, 5:13, 6:5, 6:12, 8:2, 10:15, 10:17

**lawyer** [1] - 5:15

**lawyers** [1] - 3:13

**lay** [1] - 8:11

**lead** [1] - 8:5

**least** [2] - 6:3, 17:5

**leave** [3] - 3:18, 4:2, 18:9

**leaving** [1] - 5:25

**left** [3] - 4:13, 5:8, 5:11

**legal** [2] - 7:23, 8:19

**legally** [1] - 8:11

**length** [1] - 3:8

**lesser** [1] - 18:9

**limited** [2] - 9:19, 11:17

**listened** [2] - 5:8, 5:11

**look** [2] - 5:24, 7:1

**looked** [1] - 15:20

**looking** [1] - 5:22

## M

**ma'am** [1] - 14:22

**mail** [6] - 4:13, 4:17, 5:8, 5:11, 18:15

**mandatory** [2] - 7:12, 7:19

**maneuver** [1] - 16:23

**manner** [1] - 18:17

**materials** [1] - 3:21

**matter** [11] - 2:15, 2:19, 6:4, 6:11, 15:16, 15:22, 16:19, 16:21, 19:17, 20:5

**matters** [1] - 12:2

**McLaughlin** [1] - 1:12

**meaning** [1] - 6:24

**mIAMI** [1] - 1:2

**Miami** [2] - 1:17, 1:17

**Middlebrooks** [1] - 7:1
**might** [5] - 4:6, 9:8,
  14:16, 16:15, 17:2
**mind** [1] - 11:20
**minimum** [1] - 7:12
**minimums** [1] - 7:19
**miscues** [1] - 8:18
**mistake** [2] - 6:20, 7:1
**moment** [2] - 9:9,
  16:15
**monkey** [1] - 17:7
**moots** [1] - 18:2
**morning** [9] - 2:5, 2:8,
  2:9, 2:12, 5:6, 5:10,
  15:6, 15:7
**motion** [1] - 18:3
**motions** [1] - 19:16
**moved** [1] - 19:2
**MR** [17] - 2:5, 4:11,
  4:15, 8:1, 9:23, 10:1,
  10:4, 12:16, 12:19,
  13:7, 13:17, 13:21,
  14:16, 14:19, 14:23,
  17:16, 19:14
**MS** [27] - 2:9, 4:24,
  5:5, 5:17, 5:24, 8:10,
  8:22, 9:7, 9:10,
  10:12, 12:15, 14:9,
  14:22, 15:7, 15:10,
  15:19, 15:24, 16:5,
  16:8, 16:12, 17:1,
  17:4, 17:20, 18:13,
  18:23, 19:7, 19:10
**multiple** [1] - 5:9

# N

**name** [1] - 15:9
**narrow** [2] - 8:14,
  11:24
**necessary** [1] - 18:4
**need** [1] - 18:7
**needs** [1] - 17:15
**next** [4] - 4:20, 5:1,
  5:5, 6:13
**nobody** [1] - 9:20
**non** [1] - 6:9
**non-disruptive** [1] -
  6:9
**none** [1] - 7:9
**North** [1] - 1:17
**Norwood** [1] - 9:16
**note** [2] - 4:12, 8:22
**Nothing** [1] - 19:14
**Number** [1] - 1:2
**number** [5] - 2:1, 3:1,
  3:2, 3:10, 5:18

# O

**o'clock** [1] - 5:6
**objection** [2] - 14:10,
  16:24
**objections** [1] - 11:22
**observation** [1] - 3:8
**observed** [3] - 3:1,
  3:4, 3:5
**obtain** [1] - 9:2
**Obviously** [1] - 8:13
**OF** [2] - 1:1, 1:3
**offered** [1] - 6:25
**once** [1] - 17:6
**one** [6] - 3:9, 8:6, 9:13,
  14:2, 18:3, 18:20
**open** [2] - 12:8, 17:18
**operate** [1] - 11:10
**opportunity** [1] -
  17:22
**Osborne** [2] - 5:14,
  5:19
**outside** [2] - 6:18,
  6:24

# P

**packing** [1] - 3:14
**page** [1] - 8:20
**parameters** [2] - 7:4,
  7:7
**part** [5] - 4:15, 6:12,
  6:23, 10:16, 12:17
**particular** [2] - 7:20,
  19:17
**Parties** [1] - 2:15
**parties** [9] - 4:5, 4:18,
  6:3, 6:11, 7:22,
  11:21, 17:17, 18:18,
  18:22
**party** [1] - 11:8
**path** [2] - 8:13, 8:14
**PATRICIA** [1] - 1:16,
  20:9
**patricia_sanders@**
  **flsd.uscourts.gov**
  [1] - 1:18
**Pena** [3] - 7:4, 8:7,
  8:11
**people** [1] - 13:6
**perhaps** [4] - 8:24,
  10:10, 10:11, 14:16
**periods** [1] - 3:15
**perplexed** [1] - 18:8
**perspective** [1] - 6:3
**phone** [8] - 4:21, 4:25,
  5:5, 5:7, 5:9, 5:12
**picked** [1] - 4:21
**place** [1] - 19:2
**player** [1] - 18:9

**point** [1] - 5:13
**pointed** [1] - 2:25
**poll** [2] - 2:23, 13:8
**polled** [7] - 12:10,
  12:20, 12:25, 13:2,
  13:9, 13:24, 16:2
**polling** [1] - 5:22
**poses** [1] - 11:6
**position** [3] - 8:3, 8:7,
  13:22
**post** [1] - 10:18,
  10:24, 11:2, 19:16
**post-verdict** [3] -
  10:18, 10:24, 11:2
**potential** [1] - 8:23
**prejudicial** [1] - 6:17
**present** [1] - 2:11
**presented** [1] - 8:20
**preserve** [1] - 18:16
**pressures** [1] - 10:19
**previous** [1] - 10:14
**problem** [1] - 11:25
**proceedings** [1] - 20:5
**process** [3] - 6:23,
  10:20, 11:11
**processes** [2] - 6:15,
  18:19
**prohibition** [1] - 11:1
**prohibits** [2] - 6:14,
  10:17
**propose** [6] - 10:13,
  11:21, 11:25, 12:1,
  16:23
**provides** [1] - 6:15
**public** [1] - 6:4
**publicity** [1] - 6:22
**published** [1] - 13:24
**purging** [1] - 11:14
**put** [1] - 19:4

# Q

**questions** [9] - 9:15,
  9:18, 10:5, 11:25,
  12:5, 12:13, 15:12,
  15:14, 16:14, 17:6,
  18:6

# R

**racial** [1] - 7:6
**raise** [1] - 15:3
**raised** [1] - 7:10
**ranging** [1] - 10:1
**rare** [1] - 10:22
**rather** [1] - 19:3
**reaching** [1] - 4:7
**read** [1] - 12:11
**ready** [2] - 3:17, 14:21
**realized** [1] - 4:22

**really** [2] - 4:4, 13:19
**reason** [1] - 14:1
**reasonable** [1] - 8:4
**reasons** [1] - 18:4
**recap** [1] - 2:16
**receive** [1] - 11:18
**received** [1] - 9:12
**recitation** [3] - 5:20,
  6:8, 8:16
**recognize** [1] - 18:14
**recollection** [2] - 5:20,
  15:20
**reconvene** [1] - 18:11
**reconvened** [1] - 4:5
**record** [14] - 2:4, 3:1,
  3:3, 3:16, 4:10, 4:16,
  8:23, 10:16, 14:4,
  15:8, 15:21, 18:17,
  19:5
**regard** [2] - 7:11, 18:3
**reiterate** [2] - 8:3,
  11:22
**relied** [1] - 7:5
**rely** [1] - 3:16
**remarked** [1] - 3:4
**remorse** [1] - 11:13
**rendered** [2] - 12:3,
  16:11
**repeat** [1] - 13:7
**REPORTED** [1] - 1:16
**Reporter** [1] - 1:16
**reserve** [5] - 8:23, 9:4,
  17:1, 17:11, 18:14
**reserving** [1] - 17:4
**responded** [1] - 7:13
**retrieving** [1] - 3:14
**returned** [4] - 2:19,
  5:2, 12:8, 15:22
**review** [3] - 4:18, 6:13,
  18:18
**reviewed** [1] - 4:18
**right.** [1] - 14:11
**rise** [2] - 15:1, 16:16
**Rodriguez** [3] - 7:4,
  8:7, 8:12
**room** [5] - 3:21, 12:24,
  16:22, 17:19, 17:21
**RPR** [2] - 1:16, 20:9
**rule** [1] - 6:14
**Rule** [4] - 7:4, 8:11,
  8:14, 11:15
**ruling** [1] - 18:16

# S

**Sabrina** [1] - 15:10
**saga** [1] - 18:10
**SANDERS** [3] - 1:16,
  20:7, 20:9
**Santorufo** [4] - 3:19,

**10:8, 15:3, 17:23
**saw** [2] - 5:24, 6:7
**schedule** [1] - 19:15
**Sean** [1] - 1:12
**seated** [3] - 15:2, 15:6,
  16:17
**secure** [1] - 11:8
**see** [3] - 6:6, 6:19,
  18:19
**See** [1] - 11:21
**sense** [1] - 14:16
**sentencing** [1] - 19:16
**served** [2] - 12:7,
  15:16
**service** [2] - 19:4, 19:8
**set** [3] - 8:10, 11:8,
  19:15
**sets** [1] - 14:17
**setting** [1] - 8:24
**share** [1] - 11:20
**shoulder** [1] - 5:25
**show** [1] - 3:3
**shows** [1] - 14:4
**Siegelman** [1] - 11:6
**simply** [1] - 15:15
**Singh** [1] - 17:24
**situation** [1] - 8:24
**Sixth** [1] - 8:25
**sometime** [1] - 5:6
**sorry** [1] - 5:17
**sOUTHERN** [1] - 1:1
**standing** [1] - 4:25
**start** [3] - 6:13, 8:3,
  15:15
**started** [1] - 3:23
**state** [1] - 15:9
**STATES** [4] - 1:1, 1:3,
  1:9, 1:12
**states** [1] - 10:16
**States** [7] - 1:16, 2:2,
  9:16, 10:21, 11:6,
  15:16, 19:13
**stating** [1] - 4:6
**stayed** [2] - 3:20, 3:23
**stems** [1] - 11:1
**step** [1] - 16:14
**steps** [1] - 6:14
**stereotypes** [1] - 7:6
**stopped** [2] - 4:1,
  13:19
**stopping** [1] - 17:4
**subpoenaed** [1] - 10:8
**suggest** [1] - 14:19
**suggested** [1] - 8:13
**suggesting** [1] - 3:24
**suggestion** [1] - 19:7
**Suite** [1] - 1:17
**summarized** [3] -
  7:23, 7:24, 8:2

**supplement** [1] - 9:14
**supposed** [1] - 17:10
**Supreme** [1] - 7:3
**sure..** [1] - 18:22
**swear** [1] - 15:4
**swift** [1] - 18:16
**sworn** [1] - 12:4
**SWORN** [1] - 15:5

## T

**terms** [1] - 8:20
**that'd** [1] - 5:10
**that'll** [1] - 4:19
**THE** [50] - 1:9, 1:12,
1:14, 2:1, 2:8, 2:12,
4:14, 4:17, 5:4, 5:16,
5:23, 6:2, 8:9, 8:17,
9:6, 9:8, 9:11, 9:24,
10:3, 10:6, 10:13,
12:18, 13:1, 13:9,
13:18, 14:1, 14:11,
14:21, 14:24, 15:1,
15:2, 15:6, 15:8,
15:11, 15:20, 16:1,
16:6, 16:9, 16:13,
16:16, 16:17, 17:3,
17:14, 17:17, 17:23,
18:18, 19:6, 19:9,
19:12, 19:15
**Theresa** [2] - 1:14, 2:9
**thinking** [4] - 4:21,
5:13, 5:18, 13:5
**thinks** [1] - 12:22
**three** [5] - 6:16, 8:6,
9:18, 12:5, 15:17
**throwing** [1] - 17:7
**Thursday** [3] - 2:18,
12:9, 15:21
**timing** [1] - 12:17
**today** [7] - 2:13, 4:8,
9:12, 10:7, 12:21,
12:23, 15:12
**together** [1] - 17:24
**totally** [1] - 16:20
**transcription** [1] -
20:5
**transparent** [1] -
16:20
**transpired** [1] - 6:8
**trial** [1] - 3:6
**troubling** [1] - 11:14
**truck** [2] - 19:1, 19:2
**trying** [1] - 19:8
**two** [6] - 3:5, 8:5, 8:15,
8:21, 9:7, 10:15

## U

**unanimity** [2] - 9:1,
10:22
**unanimous** [2] - 3:24,
9:1
**unanswered** [2] - 5:3,
5:7
**under** [5] - 4:19, 6:9,
6:14, 7:3, 8:25
**underlying** [2] - 4:10,
18:19
**Understood** [1] -
18:23
**understood** [1] - 10:6
**undue** [1] - 6:22
**unilaterally** [1] - 11:12
**UNITED** [3] - 1:1, 1:3,
1:12
**uNITED** [1] - 1:9
**United** [7] - 1:16, 2:1,
9:16, 10:21, 11:6,
15:16, 19:13
**unwarranted** [1] -
11:11
**up** [3] - 4:21, 12:2,
12:16

## V

**vacation** [2] - 10:11,
19:3
**valid** [1] - 13:1
**Van** [10] - 1:14, 2:10,
2:25, 4:2, 7:10, 7:20,
9:9, 10:7, 14:8,
16:23
**VAN** [20] - 2:9, 4:24,
5:5, 5:17, 5:24, 8:10,
8:22, 9:7, 9:10,
10:12, 12:15, 14:9,
14:22, 17:1, 17:4,
17:20, 18:13, 18:23,
19:7, 19:10
**Various** [1] - 3:15
**various** [1] - 10:19
**verdict** [45] - 2:20,
2:22, 2:24, 3:11,
3:24, 5:2, 5:10, 6:20,
7:8, 7:11, 7:17, 9:1,
10:18, 10:24, 11:2,
11:9, 11:18, 12:3,
12:8, 12:11, 12:12,
12:20, 12:23, 12:24,
13:3, 13:10, 13:15,
13:23, 14:13, 14:17,
14:20, 15:13, 15:22,
16:2, 16:3, 16:7,
16:10, 16:11, 19:16
**verdicts** [2] - 11:2,
11:4
**versus** [5] - 2:2, 9:16,
10:21, 11:6, 15:17

**view** [1] - 6:22
**VLIET** [20] - 2:9, 4:24,
5:5, 5:17, 5:24, 8:10,
8:22, 9:7, 9:10,
10:12, 12:15, 14:9,
14:22, 17:1, 17:4,
17:20, 18:13, 18:23,
19:7, 19:10
**Vliet** [10] - 1:14, 2:10,
2:25, 4:3, 7:10, 7:20,
9:9, 10:7, 14:8,
16:23
**voice** [6] - 4:13, 4:17,
5:8, 5:11, 18:15
**voice-mail** [1] - 5:8
**vote** [1] - 6:25
**vs** [1] - 1:5

## W

**walked** [1] - 12:24
**wants** [1] - 9:20
**weeks** [3] - 3:6, 14:12,
15:17
**wide** [1] - 10:1
**WILLIAMS** [1] - 1:9
**window** [1] - 11:24
**WITNESS** [1] - 15:5
**workings** [1] - 10:23
**would've** [2] - 7:16,
18:21
**wrench** [1] - 17:7